**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| **LYDIA E. VEGA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 13-CV-451** |
| | ) | |
| **v.** | ) | **Judge James V. Zagel** |
| | ) | |
| **CHICAGO PARK DISTRICT,** | ) | **Magistrate Judge Daniel G. Martin** |
| | ) | |
| **Defendant.** | ) | |

**ANSWER AND AFFIRMATIVE DEFENSES
TO THE AMENDED COMPLAINT**

**ANSWER**

NOW COMES the Defendant, Chicago Park District (Park District or Defendant), by and through its attorneys, Beka Reierson and Nelson A. Brown, Jr., and answers Plaintiff, Lydia Vega's, Amended Complaint, as follows:

**Nature of the Action**

1.  This is an action to redress unlawful discrimination based on national origin (Hispanic) and gender (female); gender (sex stereotyping); and to redress unlawful retaliation for Plaintiff's complaints about discrimination and harassment.

   Answer:    The Park District admits that Plaintiff's federal claims of discrimination and retaliation are represented in Counts I through V of the Amended Complaint.

2.  These acts of discrimination and retaliation are in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, as amended by the Civil Rights Act of 1991 ("Title VII"), and 42 U.S.C. § 1981, both of which prohibit discrimination and retaliation.

   Answer:    The Park District admits that Plaintiff has brought claims under these provisions of federal law.

3.  In addition, Plaintiff seeks redress for intrusion upon seclusion, and violation of the

1

Illinois Eavesdropping Act, 720 ILCS 5-14/1 *et seq.*

Answer:     The Park District admits that the Plaintiff originally brought claims under these provisions of state law; however, the trial court granted summary judgment to the Park District on the Eavesdropping Act claim and dismissed some of the claims for intrusion into seclusion.

## Jurisdiction and Venue

4.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 2000e-5(f)(3).

Answer:     The Park District admits the allegations of this paragraph.

5.     Plaintiff filed charges against Defendant with the Equal Employment Opportunity Commission ("EEOC") on or about October 12, 2012, asserting the acts of discrimination based on gender/sexual orientation, age, and national origin, and was issued a Right to Sue letter by the Chicago office of the EEOC on October 22, 2012, which letter Plaintiff received on or about October 24, 2012. [A copy of Plaintiff's Charge No. 846-201301829 and the EEOC Right to Sue letter are attached hereto as Exhibit A.]

Answer:     The Park District admits that the allegations of this paragraph.

6.     Plaintiff filed a second charge against Defendant with the EEOC on or about November 21, 2012, asserting that Defendant had engaged in acts of retaliation against Plaintiff, which charge was assigned Charge No. 440-2013-00798 and referred by EEOC to the Justice Department, which department issued a Right to Sue letter to Plaintiff dated December 21, 2012. [A copy of Plaintiff's Charge No. 440-2013-0798 and the Right to Sue letter issued by the Justice Department are attached hereto as Exhibit B.]

Answer:     The Park District admits the allegations of this paragraph

7.     Plaintiff filed her Complaint in this action on January 18, 2013.

Answer:     The Park District admits the allegations of this paragraph.

8.    This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C.

§ 1367.

Answer:    The Park District admits the allegations of this paragraph as to the state law claim of intrusion into seclusion.  The eavesdropping claim is no longer before the Court.

9.    Venue is proper because the unlawful conduct alleged herein was committed within the boundaries of the United States District Court for the Northern District of Illinois, Eastern Division, making venue in this district proper pursuant to 28 U.S.C. § 1391(b).

Answer:    The Park District admits the allegations of this paragraph.

## Parties

10.    Plaintiff is a forty-two year old Hispanic female who is openly lesbian.

Answer:    The Park District admits that Plaintiff is both Hispanic and female. The Park District remains without sufficient information to ascertain the truth or falsity of the allegation about her being openly lesbian.  The Park District further states the allegation that Plaintiff is openly lesbian should be stricken as irrelevant to this lawsuit because none of the federal claims protect a plaintiff  asserting discrimination or protesting discrimination based on sexual orientation. The allegation that the Plaintiff is forty-two years old should also be stricken as irrelevant because Plaintiff has no claim for age discrimination.

11.    Plaintiff is and, at all times relevant hereto, was, a resident of the state of Illinois, with a present resident address in Chicago, Illinois.

Answer:    The Park District admits the allegations in this paragraph.

12.    Defendant, on information and belief, is a municipal agency of the City of Chicago, with a principal place of business at 541 North Fairbanks Court, Chicago, Illinois 60611, and is therefore a resident of the jurisdiction.

Answer:    The Park District denies that it is an agency of the City of Chicago.  The Park District is a separate municipal entity under 70 ILCS 1505 et. seq.

13.    At all times relevant hereto, Defendant was and is an "employer" within the meaning of Title VII and 42 U.S.C. § 1981.

Answer:        The Park District admits the allegations of this paragraph.

14.     Defendant is not a federal government agency.

Answer:        The Park District admits the allegations of this paragraph.

**Plaintiff's Employment History**

15.     Plaintiff was first employed by Defendant in July of 1990.

Answer:        The Park District admits  the allegations in this paragraph.

16.     Plaintiff was appointed to the position of park supervisor at Bessemer Park in 2003 and

held that position during the entire time relevant to the acts complained of herein.

Answer:        The Park District admits the allegations of this paragraph.

17.     Plaintiff's duties as park supervisor at Bessemer Park included, among other tasks,

overseeing park operations and programs, supervising employees and volunteers, training

employees, outreach and networking with the community, and attending meetings and

conferences throughout the city and occasionally out of state.

Answer:        The Park District admits these allegations, but denies that Plaintiff was
terminated for such activity.  She was terminated for engaging in non-Park
District and personal business away from her park when according to her
time sheets, she was engaged in Park District business.

18.     Plaintiff's job duties regularly required her to work at locations other than Bessemer

Park, including, but not limited to, other parks within the South Region, and also to

attend district meetings, regional meetings, and other meetings.

Answer:        The Park District admits that Vega was occasionally required to perform
Park District duties away from her park.   The Park District denies that
Plaintiff was terminated for such activity.   She was terminated for
engaging in non-Park District or personal business away from her park
when according to her time sheets, she was engaged in Park District
business.

19.     During her twenty-two year career at Defendant, Plaintiff consistently received

satisfactory or better performance reviews.

4

Answer: Performance evaluations for park supervisors were given only between 1996 and 2000. None have been given since then. Vega has three performance evaluations in her file (1) 1/1/96-6/30/96 average rating of 3.8 out of 5 (2) 7/1/96-6/30/97 average rating of 3.2 out of 5 (3) 1/1/97-6/30/97 average rating of 3 out of 5. Meets expectations is 3, exceeds expectations is 4.

20. Prior to her termination, Plaintiff was never disciplined by Defendant.

Answer: The Park District admits that Plaintiff had not received any previous discipline from the Park District.

21. At all times relevant to this Complaint, Plaintiff met Defendant's legitimate expectations of employment.

Answer: The Park District denies the allegations of this paragraph. The Plaintiff's engaging in non-Park District or personal business while representing on her timesheet that she was engaged only in Park District business fails to meet the legitimate expectations of the Park District.

**22.** Plaintiff is a member of the union that has a collective bargaining agreement with Defendant, SEIU Local 73 ("Union Contract").

Answer: The Park District admits the allegations of this paragraph.

## CPD Statistics

23. The CPD divides its facilities into "regions," and its "regions" are further divided into "areas."

Answer: The Park District admits the allegations of this paragraph.

24. On information and belief, each park within an area that has a Class A or Class B facility has a park supervisor position.

Answer: The Park District admits that Class A and Class B parks have Park Supervisors. The Park District denies, however, that Class A and B parks serve as a proper basis for determining types of park supervisory personnel for purposes of this lawsuit. The Class designation of a park is determined by the District's Planning and Development Department for capital improvement and planning purposes, not for staffing or personnel considerations. The Park District categorizes park supervisors either as

Park Supervisors of Recreation (Park Supervisors) or as Playground Supervisors (collectively referred to as "park supervisory personnel"). Park Supervisors usually oversee larger parks with a fieldhouse The proper point of reference for this case involves all park supervisory personnel, whether Park Supervisors or Playground Supervisors.

25.    On information and belief, all park supervisors within an area report to the same area

manager, regardless of whether the park is Class A or Class B.

    Answer:    The Park District admits that both Park Supervisors and Playground Supervisors in the same area report to one area manager. See Answer to paragraph 24.

26.    On information and belief, from January 1, 2008 to the present, Defendant has

employed approximately seventy-six (76) Class A park supervisors in the CPD.

    Answer:    The Park District denies these allegations. The Park District denies the accuracy of the allegations in this paragraph. The Park District has approximately 108 Class A facilities. The Park District admits that it has 142 Park Supervisor positions and 64 Playground Supervisor positions for a total of potentially 206 employee positions with some type of park supervisory responsibility. See Answer to paragraph 24.

27.    On information and belief, from January 1, 2008 to the present, Defendant has

employed approximately twenty-eight (28) Class B park supervisors in the CPD.

    Answer:    The Park District admits that it has approximately 33 Class B park locations. The Park District denies relevance of the allegation that the Park District has 28 Class B supervisors. See the Park District's answers to paragraphs 24, 25 and 26. Moreover, the supervisors come and go, so there will be more supervisors than locations over the five year period.

28.    In 2008, Defendant investigated and terminated Maria Ortiz ("Ortiz"), a Hispanic

female Class A park supervisor at Dvorak Park.

    Answer:    The Park District admits that it investigated and terminated Ortiz as a Park Supervisor June 24, 2008; however, the Park District denies that it terminated Ortiz for falsifying her timesheets. Ortiz was terminated primarily because after continued coaching and training, she repeatedly violated the Park District's Cash Management Policies and Procedures. She was also terminated for continuing to show up for work at her park while she was on a five-day suspension for failing to follow cash management procedures.

29.     Ortiz is presently contesting her termination by Defendant.

        Answer:         The Park District admits that Ortiz is contesting her termination.  Her
                        termination was upheld by a Hearing Officer and the Park District's
                        Personnel Board; however she currently has a petition in administrative
                        review in the Chancery Division of the Circuit Court of Cook County (13
                        Ch 09440) appealing her termination.

30.     On information and belief, during 2010, Defendant employed four (4) Class A park

        supervisors in all areas who were both Hispanic and female.

        Answer:         The Park District denies that the proper group to examine to
                        establish any point of comparison of treatment involves using the
                        rubric of Class A park supervisors who are both Hispanic and
                        female.   The proper point of comparison should examine the
                        treatment of all Hispanic park supervisory personnel and the
                        treatment of all female park supervisory personnel.  To the extent
                        that the proper point of comparison involves Hispanic females, the
                        proper comparison involves examining all Park District Hispanic
                        female park supervisory personnel, not some subset of that group.
                        The Park District admits that in December of 2010, the Park District
                        employed nine Hispanic female park supervisory personnel, five
                        Park Supervisors and four Playground Supervisors.

31.     On information and belief, during 2010, Defendant employed three (3) Class B park

        supervisors in all areas who were both Hispanic and female.

        Answer:         The Park District denies that the proper group to examine to
                        establish any point of comparison of treatment involves using the
                        rubric of Class B park supervisors who are both Hispanic and
                        female.   The proper point of comparison should examine the
                        treatment of all Hispanic park supervisory personnel and the
                        treatment of all female park supervisory personnel.  To the extent
                        that the proper point of comparison involves Hispanic females, the
                        proper comparison involves examining all Park District Hispanic
                        female park supervisory personnel, not some subset of that group.
                        The Park District admits that in December of 2010, the Park District
                        employed nine Hispanic female park supervisory personnel, five
                        Park Supervisors and four Playground Supervisors.

32.     Between 2010 and September of 2012, Defendant has investigated and terminated two (2)

        of the four Hispanic female Class A park supervisors, Plaintiff and Nereida Avile.

        Answer:         The Park District admits that these two Park Supervisors were terminated
                        for violating the Park District's Code of Conduct. The Park District admits

that it investigated and terminated Aviles [not Avile]; however, the Park District denies that Aviles was investigated for falsifying her own timesheets. She was terminated for several reasons, including, but limited to, using unauthorized volunteers to watch children and endangering their safety, taking unauthorized vacations without the approval of her Area Manager, Cynthia Rosario [a Hispanic female], and submitting financial records untimely. She was also terminated for her unauthorized approval of overtime for employees and then for her approval of employee timesheets reflecting this unauthorized overtime.

33. In 2011, Defendant was in the process of investigating a third Hispanic female Class B supervisor, Martha Ramirez ("Ramirez").

> Answer: The Park District denies that Ramirez supervised a Class B facility: Rowan Park was a Class A facility. Based on a review of its records, the Park District denies that the Park District investigated Martha Ramirez in 2011. The Park District further denies that the proper group to examine to establish any point of comparison of treatment involves using the rubric of Class B park supervisors who are both Hispanic and female. The proper point of comparison should examine the treatment of all Hispanic park supervisory personnel and the treatment of all female park supervisory personnel. To the extent that the proper point of comparison involves only Hispanic females, the proper comparison involves examining all Park District Hispanic female park supervisory personnel, not some subset of that group.

34. Ramirez experienced severe health issues as a result of the manner in which Defendant investigated her.

> Answer: The Park denies that it conducted an investigation of Ramirez. See the Park District answer to paragraph 33. The Park District denies that any actions it undertook was the cause any "severe health issues" she had. Further, the Park District has no knowledge of any "severe health issues" that she experienced and thus can neither admit nor deny that she had such issues when she retired.

35. As a result of those her health problems, Ramirez was forced to retire on September 30, 2011.

> Answer: The Park District admits that Ramirez retired. The Park District denies that it forced her to retire. The Park District is without sufficient personal information about Ramirez either to admit or to deny whether any health problems led her to retire.

36.     In late 2012, one other Hispanic female Class B park supervisor, Letitia Tremain, retired.

    Answer:        The Park District admits that Tremaine [not Tremain] retired. But this allegation should be stricken because the mere retirement of Tremaine does not suggest that discrimination or retaliation against a Hispanic female led to her resignation. See answer to paragraph 31. Both Tremaine and Ramirez have been with the District since the early 80's so their retirement should not be viewed as unusual.

37.     Of the Hispanic female Class A and Class B park supervisors who were terminated or retired from 2008 to the present, none was replaced by a Hispanic female supervisor.

    Answer:        The Park District denies that using Class A and Class B Park Supervisors represents an appropriate group to use as a point of comparison to show that comparably situated employees outside the protected class were treated more favorably. The appropriate point of comparison is all Hispanic female park supervisory personnel. The Park District admits that it currently has seven park district supervisory personnel who are Hispanic females, three Park Supervisors and four Playground Supervisors. The Park District denies that it has not selected any Hispanic female candidates for park supervisory positions since 2008. The Park District currently employees twenty-one (21) Hispanic park supervisory personnel, seven women and fourteen males. The Park District also admits that it has appointed non-Hispanic females and male Hispanics to park supervisory positions since 2008. The Park District also asserts that these allegations should be stricken because the issue in Vega's case involves discriminatory discipline or retaliation related to either females or Hispanics, or perhaps to the category of Hispanic females. Nothing in Vega's actual claim against the Park District relates to her hiring and promotion or to any general pattern of hiring or of promotion discriminating or retaliating against Hispanic females.

38.     On information and belief, since 2008, Defendant has not appointed to any Class A or Class B park facility a supervisor who was both Hispanic and female.

    Answer:        The Park District denies that using Class A and Class B Park Supervisors represents an appropriate group on which to use as a point of comparison to show that comparably situated employees outside the protected class were treated more favorably. The appropriate point of comparison is all Hispanic female park supervisory personnel. The Park District admits that it currently has seven park district supervisory personnel who are Hispanic females, three Park Supervisors and four Playground Supervisors. The Park District admits that it has selected Hispanic female candidates for park supervisory positions since 2008. The Park District currently employees twenty-one (21) Hispanic park

supervisory personnel, seven women and fourteen males.  The Park District also admits that it has selected non-Hispanic females and male Hispanics to park supervisory positions since 2008. The Park District also asserts that these allegations should be stricken because the issue in Vega's case involves discriminatory discipline or retaliation related to either females or Hispanics, or perhaps to the category of Hispanic females.  Nothing in Vega's actual claim against the Park District relates to her hiring and promotion or to any general pattern of hiring or of promotion.

39. Defendant's acts described above demonstrate a pattern and practice of discriminating against Hispanic female Class A and Class B Park Supervisor employees.

Answer:    The Park District denies the allegations in this paragraph. See the Park District's answer to paragraph 38.

## South Region, Area 6

40. On information and belief, at all times relevant to the acts complained of herein, Defendant employed four (4) Class A and six (6) Class B park supervisors in Defendant's South Region, Area 6.

Answer:    The Park District admits that in 2010, there were eight (8) Class A parks in Area 6. The Park District admits that there was one Class B park in Area 6 run by a Park Supervisor.  There were also four (4) Class D parks run by Playground Supervisors.  There was one Class J park run by a Park Supervisor. The Park District denies that the composition of park supervisory personnel in Area 6 represents an appropriate area for comparing Plaintiff's treatment with other women and Hispanics or with comparably situated employees in non-protected categories.  Instead, the appropriate area for comparison remains the entire Park District. See the answers to paragraphs 24, 30 and 31.

41. The Class A and Class B park supervisors in Defendant's South Region, Area 6 report to the same area manager.

Answer:    The Park District admits that all Park Supervisors and Playground Supervisors in Area 6 report to the same Area Manager.

42. Bessemer Park, to which Plaintiff was assigned from 2003 until her termination, was at all times relevant to the facts complained of herein, and is one of four parks considered

by Defendant to be a Class A park in Defendant's South Region, Area 6.

> Answer: The Park District admits that Bessemer Park is designated as a Class A Park. The Park District denies that Area 6 has four Class A parks: it has eight (8). The Park District also asserts that the proper comparison for the treatment of Hispanic and female park supervisory personnel or for the distinct category of Hispanic female park supervisory personnel should be the entire Park District, not just Area 6. Vega has pled nothing specific that would limit any claim of discrimination or of retaliation just to Area 6.

43.  On January 1, 2010 and for some years prior, Defendant employed in the South Region,

Area 6, only one Hispanic female as the supervisor of a Class A park facility, Plaintiff.

> Answer: The Park District cannot fully respond to these allegations because it is not certain what "for some years prior" means. The Park District admits that in 2010, there were two Hispanic females Class A Park Supervisors in Area 6, Plaintiff and Ramirez. There was also one Hispanic female Playground Supervisor in Area 6 at Wolf Park who in 2010 was replaced by another Hispanic female as Playground Supervisor. See the Park District's answers to paragraphs 41 and 42.

44.  On January 1, 2010 and for some years prior, Defendant employed in the South Region,

Area 6, only one Hispanic female as the supervisor of a Class B park facility, Ramirez.

> Answer: The Park District denies that Ramirez supervised a Class B facility: instead, she supervised Rowan Park, a Class A facility. See the Park District's answer to paragraph 43.

45.  In 2011 and 2012, Defendant initiated and pursued investigations of Plaintiff and

Ramirez.

> Answer: The Park District denies that it initiated or pursued an investigation of Ramirez in 2011 and 2012. The Park District admits that it started and pursued an investigation of the Plaintiff.

46.  Plaintiff was terminated on September 10, 2012 as a result of Defendant's investigation,

and was replaced by an African American male.

> Answer: The Park District admits the allegations in this paragraph. The allegation that she was replaced by an African-American male, however, should be stricken because discriminatory discipline and retaliation for protesting protected rights violations remain the relevant issues here, not a failure to hire or to promote.

47.     Ramirez retired and was replaced a Caucasian female.

   Answer:     The Park District admits the allegations of this paragraph. These allegations should be stricken, however, because discriminatory discipline and retaliation for protesting protested rights violations remain the relevant issues here, not a failure to hire or to promote.

48.     On information and belief, no other Park A or Park B supervisor in South Region, Area 6 has been investigated in the past five (5) years.

   Answer:     The Park District denies that it initiated and conducted an investigation of Ramirez related to time sheet violations in 2011 or ever.  In 2008, the Park District conducted an investigation about whether a private group had misused its position at Rowan Park.  No charges were sustained against the private group or against Ramirez. The Park District admits that it has not yet found any other investigations of park supervisory personnel for timesheet violations in Area 6 other than Plaintiff's. For the entire Park District, the Park District has conducted a number of investigations on timesheet violations on employees of both sexes and of various national origins. The Park District denies that the composition of park supervisory personnel in Area 6 represents an appropriate area for comparing Plaintiff's treatment with comparably situated employees.  Instead, the appropriate area for comparison remains the entire Park District.

49.     Plaintiff and Ramirez were treated differently than similarly situated CPD employees and experienced adverse employment actions as a result.

   Answer:     The Park District is uncertain about how to fully answer the allegations in this paragraph because the meaning of "treated differently than similarly situated CPD employees" remains unexplained.  The Park District admits that Plaintiff was terminated for time-sheet falsification and that Ramirez resigned for whatever reason, but denies that they were in any way treated differently than similarly situated Park District employees who were male and non-Hispanic.  The Park District denies that it treated similarly situated employees who were either female or Hispanic or who were Hispanic females differently than employees outside of any protected class if the Park District had reason to believe that an employee had violated the Code of Conduct for time-sheet falsification or for any other Code violation.

50.     Defendant's decisions to investigate only the Hispanic female Class A and Class B park supervisor employees in South Region, Area 6, and to terminate Plaintiff, demonstrate a pattern and practice of discriminating against Hispanic female employees in South Region,

Area 6.

Answer: The Park District denies that it started or conducted any investigation of Ramirez. The only park supervisory person investigated and terminated in Area 6 for a timesheet violation was the Plaintiff. The Park District denies that any of its actions showed a pattern and practice of discrimination against either Hispanics or females, or against Hispanic females. Moreover, the correct area for comparison should be the entire Park District, not some small subsection of the Park District because Plaintiff has not pled any facts that would single out Area 6 for special consideration.

## **Complaints about Plaintiff**

51. On information and belief, Defendant's investigation of Plaintiff was admittedly motivated in part on the fact that it received two complaints from African American individuals about Plaintiff.

Answer: The Park District admits that it received hotline tips about Plaintiff's possible wrong doing, but denies that it initially knew the national origin or racial characteristics of the callers. This reference to race about the callers should be stricken because it remains irrelevant and blatantly prejudicial to any issue in this case. Moreover, unless the Plaintiff is maintaining the discriminatory position that any complaint by an African-American against any Hispanic female should inherently lack any credibility with the Park District, the Park District would have first to investigate before determining whether such complaints had validity.

52. The first complaint was made by a poorly performing African American subordinate of Plaintiff, Sherece Childs, who called Defendant's "hotline" and complained that Plaintiff was often absent from work.

Answer: The Park District admits that it received hotline tips about Plaintiff's possible wrongdoing, but denies that it initially knew the national origin or racial characteristics of this caller. The Park District also moves to strike the reference to the race of the callers because this remains irrelevant and prejudicial for any issue in this case. The Park District further moves to strike the reference to "a poorly performing African American subordinate" because it remains both irrelevant and prejudicial for any resulting decision to investigate the Plaintiff. See the Park District's answer to paragraph No. 51.

13

53.     On information and belief, Defendant also investigated Plaintiff after receiving a

complaint from Mr. Kenneth Teal, a friend of Ms. Childs, who complained about African

American children's access to park facilities that were used by a Hispanic organization

("Teal's complaint").

> Answer:     The Park District admits that it received hotline tips about Plaintiff's
> possible denial of African-American children's access to park
> facilities, but denies that it initially knew the national origin or racial
> characteristics of this caller. The Park District also moves to strike
> the reference to the race of this caller because this remains irrelevant
> to any issue in this case. The Park District further moves to strike
> the reference to "a friend of Ms. Childs" because it remains both
> irrelevant and prejudicial for any resulting decision to investigate the
> Plaintiff. See the Park District's answer to paragraph No. 52.

54.     On information and belief, only African American individuals have complained to

Defendant about Plaintiff.

> Answer:     The Park District admits that it received hotline tips about Plaintiff's
> possible wrong doing, but denies that it initially knew the national
> origin or racial characteristics of the callers. The Park District also
> moves to strike the reference to the race of the callers because this
> remains irrelevant and prejudicial for any issue in this case. See the
> Park District's answer to paragraph No. 53.

55.     On information and belief, Defendant assigned at least two African American

investigators, Michael Hester and Leroi Catlin ("Hester" and "Catlin," or Investigators"),

to investigate Plaintiff after the "hotline" call.

> Answer:     The Park District admits that Chicago Police Officers detailed to the
> Chicago Park District, Hester and Catlin, both African Americans,
> investigated the allegations that Plaintiff was falsifying her
> timesheets, but denies that only African Americans were involved in
> her investigation. The Park District further moves to strike
> references to the race of the investigators because it remains
> irrelevant and prejudicial both to the decision to investigate Plaintiff
> and to the manner in which the investigation was conducted. See
> the answer to paragraph No. 51.

56.     On information and belief, in approximately July of 2012, Defendant received another

call to its "hotline" from an African American woman who reported a false complaint

alleging Plaintiff's park was unorganized and had lost a child at the park's day camp.

Answer: The Park District admits that it received a hotline tip about Plaintiff's park not being organized, but denies that it initially knew the national origin or racial characteristics of this caller. The Park District denies that it had any reason to initially believe the complaint was false. The reference to race about the callers should be stricken because this remains both irrelevant and prejudicial to any issue in this case.

57. On approximately September 4, 2012, a female called the Inspector General of the

CPD, Heather Keil, to falsely report Bessemer Park was not open an hour after the

scheduled opening time.

Answer: The Park District admits that a female called to complain about Bessemer Park not being open, but is without sufficient actual knowledge to determine whether the complaint was legitimate or not. Further, the Park District denies that it knew the race of the caller. The Park District denies that Keil was the Inspector General of the Park District. This allegation should be stricken as irrelevant because Plaintiff's CAM to consider disciplinary action was first held on July 26, 2012 and the last one was held on August 23, 2012.

58. At the time the call was placed, and when Heather Keil contacted Plaintiff to inform her

of the call, Plaintiff was at the open entrance to the park.

Answer: The Park District admits that Ms. Keil contacted Plaintiff, but remains without sufficient knowledge to admit or deny where Plaintiff was when Ms. Keil called her.

59. Heather Keil provided Plaintiff with the telephone number from which the call was

placed.

Answer: The Park District admits that Keil provided the Plaintiff with the telephone number from which the call originated, but the Park District denies that Kiel knew the race of the caller.

60. The telephone number belonged to an African American female subordinate of Plaintiff

who was employed by Defendant as a monthly attendant at Bessemer Park.

Answer:     The Park District is without sufficient knowledge to form a reasonable belief about the accuracy of the allegation that an African American female subordinate called Ms. Keil at the time of call. The Park District moves to strike reference to the race of the caller because this remains both irrelevant and prejudicial to any issue in this case. The Park District further notes that the investigation of Plaintiff and the disciplinary CAMs were completed by August 23, 2012, and thus this call was not a cause of any decision to investigate Plaintiff. See the Park District's answer to paragraph No. 51.

61.    From the start, Defendant's investigation of Plaintiff was based on the complaints of

individuals who were racially motivated in making their complaints.

Answer:     The Park District denies that the race of anyone complaining about Plaintiff has any relevance to the Park District's decision to investigate Plaintiff or about how any investigation was conducted. All allegations about the race of people complaining and the motives of the complainants should be stricken as both prejudicial and irrelevant to any issue in this case. Moreover, unless the Plaintiff is maintaining the discriminatory position that any complaint by an African-American against any Hispanic female should inherently lack any credibility with the Park District, the Park District would have first to investigate before determining whether such complaints had validity. See the Park District's answer to paragraph No. 51.

62.    At Plaintiff's final corrective action meeting, Plaintiff was represented by an African

American union representative, Ron Lee, who is a friend of Ms. Childs.

Answer:     The Park District admits that Ron Lee represented Plaintiff at the Corrective Action Meeting (CAM) where the Park District confronted Plaintiff with charges of falsifying her timesheets. The Park District is without sufficient knowledge to admit or deny the relationship between Mr. Lee and Ms. Childs. Further, this entire paragraph should be stricken because Mr. Lee's race is irrelevant and because he was Plaintiff's union representative, thus removing him from any decision-making role in deciding to investigate Plaintiff, about how to conduct the investigation and about whether to terminate her.

63.    After Defendant terminated Plaintiff's employment, Mr. Lee went to Bessemer Park

and made derogatory remarks and critical statements about Plaintiff to CPD employees

at Bessemer Park.

Answer:     The Park District remains without sufficient knowledge to plead to the truth or falsity of these allegations. Moreover, Mr. Lee was Plaintiff's

union representative, and in no way can be represented as an agent of the Park District. The Park District further moves to strike the allegations of this paragraph because Mr. Lee was not a Park District employee, let alone a decisionmaker for the Park District, thus making his actions irrelevant to the Park District's decision to investigate, to its decision about how the investigation should be conducted and to its decision to terminate her employment.

**The Reasons Given for Plaintiff's Termination Were Pretextual and Discriminatory**

64. Plaintiff was allegedly terminated for: failure to be present for duty at assigned times and places, failure to be truthful in all statements signed by her in connection with CPD employment, and failure to be truthful in any testimony or other statements made during a disciplinary hearing, pre-suspension meetings, or any other proceeding at any point in the disciplinary process. [A copy of the September 10, 2012 Corrective Action Meeting Disposition letter is attached hereto as Exhibit C.]

> Answer: The Park District admits that the Plaintiff was terminated for the reasons stated CAM Disposition letter.

65. The reasons given for Plaintiff's termination were pretextual, discriminatory, and admittedly not supported by the report of Defendant's Investigators.

> Answer: The Park District denies all allegations in this paragraph.

66. The reasons given for Plaintiff's termination were not reasons for termination under the Defendant's own published disciplinary guidelines.

> Answer: The Park District denies all allegations in this paragraph.

67. The reasons given for Plaintiff's termination were not reasons for termination of any Union member under the Union contract between Defendant and the Union.

> Answer: The Park District denies the allegations of this paragraph. The Plaintiff's Union contract incorporates both the Park District's Code of Conduct and its Disciplinary Rules that provide the basis for Plaintiff's termination for falsifying her timesheets.

68. The reasons given for Plaintiff's termination were discriminatory because Defendant

could have terminated all Class A and Class B park supervisors in the South Region, Area 6 (and other regions and areas) for the same alleged infractions for which Plaintiff was terminated.

Answer:     The Park District denies that the allegations in this paragraph accurately represent the real reasons for Plaintiff's termination. The Park District admits that it terminated her employment for representing on her timesheets that she was engaged in Park District business at certain times when in fact she was engaged in non-Park District or personal business at those times. The Park District denies that it was aware that any other park supervisors of any race, national origin or gender were falsifying their timesheets by misrepresenting that they were doing Park District business when in fact they were engaged in non-Park District or personal business, but that it then failed to investigate such possible misconduct.

## **Timesheets**

69.     On information and belief, Defendant had a manual, paper system for employees to fill out time sheets, and had a "one sheet only" custom for time sheets, meaning that each employee received only one time sheet per pay period, and the "one sheet" time sheet was located at the employee's assigned permanent location.

Answer:     The Park District admits the allegations in this paragraph are generally accurate, but there may occasionally be an exception.

70.     On information and belief, for many years, all of the South Region Area 6 employees, including Class A and Class B park supervisors, used the manual, paper time sheets and followed the "one sheet only" custom.

Answer:     The Park District admits the allegations in this paragraph are generally accurate for all park supervisory personnel.

71.     Defendant's time sheet custom and practice often required employees to complete time sheets prior to the time that they actually worked the full pay period, which meant employees were required to anticipate their hours for the remainder of the pay period.

Answer:     The Park District denies that the allegations in this paragraph bear any relationship to the timesheet violations Plaintiff committed when she

signed that she had worked for the Park District during certain hours, but had in truth been engaged in non-Park District or personal business during those signed-in hours. The Park District admits that in certain situations dealing with working employees unavailability to sign their timesheets on the timesheet turn-in day or when timesheets had to be turned in completed on the turn-in day before the end of that day, employees might sign their time sheets in advance, subject to later correction if those hours were not actually worked for some reason. This later situation, however, has nothing to do with the timesheet falsification charges against Plaintiff.

72. From the time she became a salaried employee of Defendant, Plaintiff sometimes filled out her time sheet in accordance with the custom and practice of many of Defendant's supervisor employees, by recording eight hour work days, such as by writing 9:00 a.m. as her starting time each day, and 5:00 p.m. as her ending time each day that she was not on vacation or other approved leave.

> Answer: The Park District admits that employees, including Plaintiff, who worked on Park District business from 9:00 a.m. until 5:00 p.m. should sign their time sheet saying they had worked those hours. The Park District further denies that the scenario presented in this paragraph has any relevance to the disciplinary charges brought against the Plaintiff. See answer to Paragraph 71.

73. On many of the days when Plaintiff entered an eight-hour day, she worked substantially in excess of eight hours per day and did not seek overtime pay although she was entitled to it.

> Answer: The Park District is without sufficient knowledge to plead as to the truth or falsity of these allegations. The Park District further denies that this scenario has any relevance to the disciplinary charges brought against the Plaintiff. See answers to Paragraphs 71 and 72.

74. On information and belief, many similarly situated employees who are not Hispanic and/or female also submitted manual, paper time sheets, and were similarly required to submit their time sheets early, before the pay period had ended.

> Answer: The Park District denies that this scenario has any relevance to the disciplinary charges brought against the Plaintiff. See the Park District's answer to paragraphs 71, 72 and 73.

75.     On information and belief, other Class A and Class B park supervisors in the South

        Region, Area 6 who were not female and Hispanic, worked hours other than those

        recorded on their timesheets, and were not investigated or terminated.

        Answer:         The Park District cannot answer these allegations directly because they
                        are confusing. Plaintiff seems to be claiming that non-Hispanic males
                        worked more than their official work hours, but did not record this
                        overtime on their timesheets. The Park District denies that this scenario
                        has any relevance to the disciplinary charges brought against the
                        Plaintiff.  The Park District admits that all employees are required to
                        record the actual hours worked on their timesheet as long as they are
                        doing Park District business.  See the Park District's answer to
                        paragraph 71 through 74.

<u>Alleged Failure to be at Assigned Location</u>

76.     Defendant listed in its termination letter certain dates on which it alleged Plaintiff was not

        at work.

        Answer:         The Park District admits the allegations of this paragraph.

77.     The basis for Defendant's allegation that Plaintiff was not at Bessemer Park is the

        Investigators' report that they could not find her car at Bessemer Park.

        Answer:         The Park District admits that one basis, but not the only one, for finding
                        that Plaintiff was not at Bessemer Park involved the failure to find any
                        vehicle identified as one she used being found there a various times.

78.     Plaintiff's responsibilities took her away from Bessemer Park.

        Answer:         The Park District admits that occasionally the Plaintiff could have been
                        away from Bessemer Park on Park District business; however, the Park
                        District states that on an unacceptable number of times, Plaintiff was at
                        her home or away from the park on non-Park District and personal
                        business, but signed her timesheet representing that she was away from
                        her park on Park District business.

79.     Plaintiff documented the fact that she was working on all of the dates in question, and her

        whereabouts, with documents and the names of witnesses.

        Answer:         The Park District denies the allegations of this paragraph.

80.    On information and belief, other Class A and Class B park supervisors in the South Region Area 6 who were not Hispanic and female, worked away from the parks to which they were assigned as well.

    Answer:    The Park District admits that on occasion, all park supervisors, not just those in Area 6, may be away from their parks, but still performing duties for the Park District. The Park District denies that it was aware of any non-Hispanic or female park supervisory personnel suspected of being away from their parks conducting non-Park District or personal business on Park District time, but that it then failed to investigate or to take appropriate disciplinary action when it had reason to believe they had falsified their timesheets.

81.    On information and belief, between 2003 and 2012, the only Class A and Class B park supervisors in the South Region Area 6 who were investigated by Defendant for time sheet accuracy and failure to be at their assigned park were Plaintiff and Ramirez.

    Answer:    The Park District admits it conducted an investigation of Plaintiff for timesheet falsification. The Park District denies that it started and conducted an investigation of Ramirez for timesheet falsification in 2011 or 2012, or at any other time. The Park District also denies that the proper geographic area to determine whether the Park District investigated only Hispanic or female employees, or even Hispanic female employees, for various potential disciplinary problems is Area 6. Instead, any comparison of treatment between protected categories and comparable non-protected categories should extend to the entire Park District. Such a comparison would show that many other investigations for timesheet falsification have been undertaken against employees of different genders and of different national origins.

82.    On information and belief, no white or African American Area 6 Class A or Class B park supervisors were investigated or terminated for failure to be as their assigned park while performing CPD responsibilities at other locations or because their vehicles were not in the parking lot of the park at which they worked.

    Answer:    The Park District has to elaborate on its answer to these allegations because they rest upon a false set of assumptions. The Park District would not investigate any park supervisor in Area 6 or anywhere based on the simple facts that they were away from their park or that their car was not in the parking lot. The Park District would only investigate any park

supervisory personnel if it has a reasonable suspicion that those personnel were either at their park but not doing Park District business or away from their park performing non-Park District or personal business while claiming to be on Park District time in their timesheet. The Park District admits that it would not investigate or terminate any park supervisory personnel who were away from their assigned parks, but who were performing Park District business while away.

## **Creation of a Hostile and Abusive Work Environment**

83.   On information and belief, Defendant, through its Department of Legal Investigators, began covert surveillance of Plaintiff at least as early as September 2011.

   Answer:   The Park District admits that on or about September 2011, it began an investigation of the Plaintiff.

84.   Defendant engaged in discriminatory conduct when it decided to investigate Plaintiff based on unfounded complaints to the "hotline" and, subsequently, created a hostile and abusive work environment during the course of its lengthy investigation of Plaintiff by the Investigators.

   Answer:   The Park District denies that its decision to begin to investigate Plaintiff arose from its discriminatory motives or conduct. The Park District remains without sufficient information to plead about whether these unspecified complaints leading to the investigation were unfounded. Further, the Park District's investigation showed that such complaints were not unfounded because Plaintiff was in fact signing her timesheet for times when she was not conducting Park District business. The Park District additionally asserts that these allegations are irrelevant and should be stricken because the Park District cannot know that charges have any basis until it conducts an investigation. The Park District admits that "hotline" complaints can serve as basis for beginning an investigation. The Park District denies any remaining allegations.

85.   Defendant did not provide Plaintiff with advanced notice of the investigation, schedule a Corrective Action Meeting, or discipline Plaintiff within the time frames set forth in the Union Contract.

   Answer:   The Park District denies that it is obligated to give advance notice to employees or to immediately set up a CAM when it begins an initial investigation of them for violations of the Code of Conduct. The Park District denies any remaining allegations.

86. Defendant's investigation included, among other things, the surveillance of Plaintiff by following Plaintiff and various vehicles believed by Defendant to be owned by Plaintiff, and using audio and video recording devices to record Plaintiff and vehicles believed by Defendant to be owned by Plaintiff at home and at work.

> Answer: The Park District admits that its investigators conducted an investigation of her, sometimes using surveillance of Plaintiff by, among other things, observing her locations, her movements and the various automobiles thought to be used by her. The Park District admits that it made videotapes of some of Plaintiff's movements and locations, but denies that it made any audio recordings of her at any time.

87. The Investigators regularly engaged in such activities and peering through the windows of Plaintiff's home and following and observing Plaintiff, her home and her vehicle for many months.

> Answer: The Park District denies that the investigators peered through the windows of Plaintiff's home. The Park District does not respond to the allegations about "following and observing Plaintiff, her home and her vehicle for many months" because Judge James Zagel ruled in a July 25, 2013 order that these allegations do not support the common-law tort of intrusion on seclusion.

88. Defendant's Investigators engaged in sex stereotyping of Plaintiff during their investigation, which is demonstrated by their remark on one of the surveillance recordings where an Investigator makes derogatory remarks about Plaintiff and her appearance, stating, among other things, "she looks like a guy."

> Answer: The Park District denies that it engaged in sex stereotyping both in deciding to begin an investigation of Plaintiff, in the conduct of the investigation and in its decision to terminate her employment. The Park District admits that one of its investigators said something like the quoted remark to another investigator when he was attempting to identify the Plaintiff during surveillance while he was attempting to determine whether the person he saw was the same person in a picture of her he had. The Park District denies this remark represented gender stereotyping. At the Plaintiff's administrative hearing challenging her termination, the Park District's attorney asked Plaintiff questions about the length of her hair to

clarify whether the investigators had observed Plaintiff or someone else who had used her personal vehicle because the investigators were unsure if they were observing the right person.

89. Defendant's investigation of Plaintiff was intrusive of Plaintiff's privacy and created hostility and embarrassment for Plaintiff among other CPD employees at Bessemer Park and other locations.

Answer: The Park District cannot admit or deny about the Plaintiff's mental state because this remains outside of its ability to access directly. The Park District denies that it conducted anything other than a professional, legitimate and lawful investigation of Plaintiff's suspected violations of the Code of Conduct. The Park District denies any remaining allegations. Further, the only alleged conduct instituting an intrusion according to Judge Zagel was the claim that investigators peered in her window. Judge James Zagel ruled in a July 25, 2013 order that allegations other than peering through the window do not support the common-law tort of intrusion on seclusion.

90. Defendant's investigation was not done in good faith.

Answer: The Park District denies this allegation.

91. Defendant's Investigators told various CPD employees, including those who had nothing to do with their investigation, that Plaintiff was not working all the hours she claimed to have worked, creating a greater hostile environment at work for Plaintiff among other CPD employees.

Answer: The Park District cannot respond to the general allegations that investigators spoke with various unnamed Park District employees about her investigation because no names or other specifics are given. The Park District admits that the investigators spoke with relevant people the Park District's Law Department and Human Resources Department about the results of their investigation. The Park District is without sufficient information to know whether Plaintiff perceived herself to be in a hostile work environment for any reason. The Park District denies that anything its investigators did would have created a hostile work environment. This paragraph should be stricken because Judge James Zagel ruled in a July 25, 2013 order that these allegations do not support the common-law tort of intrusion on seclusion. Moreover, Plaintiff's allegations should be stricken for discrimination and retaliation claims because nowhere in her Amended Complaint does she allege that any employees outside her protected class under investigation were treated more favorably.

24

92. On or about February 9, 2012, the Investigators went to Bessemer Park and spoke disparagingly of Plaintiff to her subordinates, then went a second park where Plaintiff was involved in scheduled computer training, pulled Plaintiff out of training in front of a number of CPD employees and told several employees at this park that Plaintiff was "not at work."

   Answer:     The Park District denies the allegations in this paragraph. Moreover, these allegations be stricken because they relate to the state-law tort of intrusion into seclusion. Judge Zagel struck all allegations related to this tort except for peering through the window. July 25, 2013 Memorandum Opinion and Order, p. 21. Further, Plaintiff's allegations should be stricken because nowhere in her Amended Complaint does she allege that any employees outside her protected class under investigation were treated more favorably.

93. Prior to February 26, 2012, Plaintiff was scheduled to meet with Investigators and her union representative on or about March 12, 2012.

   Answer:     The Park District admits that a meeting was scheduled on or about March 12, 2012.

94. In February 26, 2012, Hester met with Plaintiff and her area manager at Bessemer Park and told Plaintiff in front of her manager: "Well, I got you, I got you. So do you want to say something before I leave, because after I leave, I am closing the case and that's it."

   Answer:     The Park District denies the allegations in this paragraph. Further, these allegations should be stricken because they relate to the state-law tort of intrusion into seclusion. Judge Zagel struck all allegations related to this tort except for peering through the window. July 25, 2013 Memorandum Opinion and Order ("Mem."), p. 21. Moreover, Plaintiff's allegations should be stricken because nowhere in her discrimination claims in her Amended Complaint does she allege that any employees outside her protected class under investigation were treated more favorably.

95. On Monday, March 12, 2012, Defendant's Investigators interviewed Plaintiff at CPD headquarters and she provided documentation for her whereabouts on most dates in question.

> Answer:  The Park District denies that Plaintiff provided adequate documentation for her whereabouts on any dates in question at the March 12th meeting.

96. After the March 12, 2012 interview, one of the Investigators followed Plaintiff back to Bessemer Park to "ask her one more question" that he had failed to ask during the interview.

> Answer:  The Park District denies this allegation. Further, these allegations should be stricken because they relate to the state-law tort of intrusion into seclusion. Judge Zagel struck all allegations related to this tort except for peering through the window. July 25, 2013 Memorandum Opinion and Order ("Mem."), p. 21. Moreover, Plaintiff's allegations should be stricken because nowhere in her discrimination claims in her Amended Complaint does she allege that any employees outside her protected class under investigation were treated more favorably.

97. At each the three investigative meetings, Defendant's Investigators displayed hostile, dismissive and aggressive attitudes, and, at one, asked, among other things, intrusive and inappropriate questions about Plaintiff's friends and family and their vehicles.

> Answer:  The Park District admits that its investigators had several investigatory meetings with Plaintiff. The Park District denies the remaining allegations. These allegations should be stricken because they relate to the state-law tort of intrusion into seclusion. Judge James Zagel struck all allegations related to this tort except for peering through the window. July 25, 2013 Memorandum Opinion and Order ("Mem."), p. 21. Moreover, Plaintiff's allegations should be stricken because nowhere in her Amended Complaint does she allege in her discrimination claims that employees outside her protected class under investigation were treated more favorably in comparable investigations.

98. Defendant's conduct throughout the investigation unreasonably interfered with Plaintiff's work performance.

> Answer:  The Park District denies that the investigation unreasonably interfered with Plaintiff's actual work for the Park District. These allegations should be stricken because they relate to the state-law tort of intrusion into seclusion. Judge Zagel struck all allegations related to this tort except for peering through the window. July 25, 2013 Memorandum Opinion and Order ("Mem."), p. 21. Moreover, Plaintiff's allegations should be stricken because nowhere in her Amended Complaint does she allege that employees outside her protected class under investigation were

treated more favorably in comparable investigations.

99. Plaintiff was upset, distressed, and embarrassed by the discriminatory and harassing treatment by Defendant and its Investigators, and particularly by the invasive nature of the long-term surveillance by the Investigators and their hostile attitude at interviews of herself and statements to other CPD employees with whom Plaintiff worked.

Answer: The Park District denies that it committed any discriminatory and harassing treatment on the Plaintiff while conducting its investigation. The Park District remains without sufficient information about Plaintiff's state of mind to either admit or deny these assertions. The Park District denies any remaining allegations. These allegations should be stricken because they relate to the state-law tort of intrusion into seclusion. Judge Zagel struck all allegations related to this tort except for peering through the window. July 25, 2013 Memorandum Opinion and Order ("Mem."), p. 21. Moreover, Plaintiff's allegations should be stricken because nowhere in her Amended Complaint does she allege that any employees outside her protected class under investigation were treated more favorably in comparable situations.

100. As a result of Defendant's creation of a hostile work environment during the investigation, Plaintiff experienced severe health repercussions, including spiking blood sugar levels and blood pressure, headaches, sleeplessness, nausea, depression, and anxiety.

Answer: The Park District is without sufficient knowledge to either admit or deny the allegations in this paragraph related to Plaintiff's mental and physical health. The Park District denies that its investigation created a hostile work environment.

101. In the orders of her physician, due to the health repercussions set forth in paragraph 100 above, Plaintiff took FMLA leave from March 20, 2012 until May 25, 2012, by which time her physical condition had improved.

Answer: The Park District admits that the Plaintiff took FMLA leave during the period stated. The Park District is without sufficient knowledge about Plaintiff's mental and physical conditions to either admit or deny the remaining allegations. See the Park District's answer to paragraph 100.

27

**Corrective Action Meetings and Termination**

102.    On July 13, 2012, Defendant issued a Corrective Action Meeting Notice to Plaintiff, notifying her of a Corrective Action Meeting scheduled for July 26, 2012, concerning her purported failure to be at her assigned location at the assigned time and/or falsification of time sheets on fourteen dates from October 18, 2011 through January 31, 2012.

>    Answer:        The Park District admits the allegations of this paragraph.

103.    Plaintiff attended the July 26, 2012 meeting with her union representative and provided written documentation verifying her work times and activities, including providing names of witnesses, for each of the dates in question.

>    Answer:        The Park District admits that the Plaintiff came to a July 26, 2012 CAM meeting,  but denies that the Plaintiff presented adequate evidence to refute the charges brought against her.

104.    On August 8, 2012, Defendant issued a second Corrective Action Meeting Notice to Plaintiff, notifying her of a Corrective Action Meeting scheduled for August 23, 2012, concerning purported failure to be at her assigned location at the assigned time on October 11, 2011, a date that had been "overlooked" at the first Corrective Action Meeting.

>    Answer:        The Park District admits that a second CAM was called for August 23, 2012 to consider an additional charge of falsifying her time sheet as reflected in the second CAM Notice.

105.    Plaintiff attended the August 23, 2013 meeting with a union representative and provided written documentation verifying her work times and activities, including providing names of witnesses, for October 11, 2011.

>    Answer:        The Park District denies that the Plaintiff presented adequate evidence to refute the charges against her.

106.    On information and belief, Defendant discounted and dismissed Plaintiff's documentation of her presence at work on all the days in question.

Answer:     The Park District admits that it did not find the evidence presented at the August 23rd CAM to be persuasive.

107.    On September 10, 2012, Defendant issued a Corrective Action Meeting Disposition letter, which terminated Plaintiff's employment. [Exhibit C.]

Answer:     The Park admits the allegations in this paragraph.

108.    The investigation, Corrective Action Meetings, and termination of Plaintiff's employment have caused Plaintiff severe physical and emotional distress.

Answer:     The Park District remains without sufficient information to either admit or deny the allegations in this paragraph related to her mental and physical health about which the Park District has no direct knowledge. The Park District denies that there was anything improper about the investigation, about the CAM or about her termination.

### Plaintiff's Complaints to Defendant about Discrimination/Harassment and Retaliation by Defendant

109.    On or about February 28, 2012, while the investigation of Plaintiff by Defendant was still ongoing, counsel for Plaintiff contacted Defendant's corporate counsel, Brian Flores, to inquire about what appeared to be unprofessional and prejudicial behavior of the Investigators and to state that Plaintiff felt she was experiencing discriminatory treatment.

Answer:     The Park District admits that on or about the date stated, Plaintiff's counsel called Brian Flores to complain about the investigation of her. The Park District denies that the investigation was conducted improperly or was discriminatory.

110.    On September 4, 2012, Plaintiff sent a letter, regarding "Employee Complaint about Discrimination and Harassment," to Michael Simpkins, Director of Human Resources, and Alison Perona, Inspector General of the Chicago Park District ("the Letter"). [A copy of this letter is attached hereto as Exhibit D.]

Answer:     The Park District admits the allegations of this paragraph.

111.    In the Letter, Plaintiff explained that she believed Defendant was harassing her and

discriminating against her national origin, Hispanic, because African Americans made the complaints and two African Americans conducted Defendant's investigation.

Answer:    The Park District admits that the letter speaks for itself.

112. The Letter specifically requested an investigation of her complaint, and asked that the discrimination and harassment cease, and Plaintiff not be subjected to any retaliation because of her complaint of discrimination.

Answer:    The Park District admits that the letter speaks for itself.

113. Plaintiff opposed Defendant's unlawful discriminatory practices on the basis of national origin when her counsel contacted Defendant's counsel on February 28, 2012, and the Letter.

Answer:    The Park District denies that it committed any discriminatory practices as alleged in this paragraph and elsewhere in the Amended Complaint. The Park District admits that Plaintiff's counsel verbally complained of discriminatory practices. The Park District denies that Plaintiff's complaints were directed to "unlawful discriminatory practices."

114. Plaintiff explicitly stated she believed Defendant was discriminating against her.

Answer:    The Park District admits that the Plaintiff has claimed discrimination in the investigation of her, but denies that it was discriminating against her. See the Park District's answer to paragraph No. 113.

115. Upon receipt of the phone call and the letter, Defendant had a duty to make any further inquiries into the facts supporting Plaintiff's claims of discrimination, and to properly investigate such claims.

Answer:    The Park District denies that it has a duty to conduct a separate investigation of all complaints by employees regarding pending disciplinary action against them. The Park District's Law Department and Department of Human Resources already were aware of the investigation of the Plaintiff and its legitimate origin. It was already known that the investigation was not begun or carried out in a discriminatory fashion.

116. On information and belief, no investigations of Plaintiff's complaints were ever initiated

by Defendant either after the February 28, 2012 phone call by counsel to Mr. Flores, or

after the Letter from Plaintiff.

> Answer: The Park District denies that it has a duty to conduct a separate investigation of all complaints by employees regarding pending disciplinary action against them. The Park District's Law Department and Department of Human Resources already were aware of the investigation of the Plaintiff and its legitimate origin. It was already known that the investigation was not begun or carried out in a discriminatory fashion.

117. Defendant violated Title VII when it failed to investigate Plaintiff's claims.

> Answer: The Park District denies the allegations in this paragraph.

118. Defendant violated Title VII and retaliated against Plaintiff when it took adverse action

against Plaintiff by terminating her employment because she complained of and

reported an employment practice, namely discrimination and harassment on the basis of

gender and national origin, which is unlawful under 42 U.S.C. § 1981.

> Answer: The Park District denies that it discriminated or retaliated against her for any reason. The Park District denies any remaining allegations in this paragraph.

119. The action taken by Defendant against Plaintiff would deter a person of ordinary firmness

from continuing to engage in reporting acts of discrimination.

> Answer: The Park District denies that it took any action in retaliation for Plaintiff's complaint about the investigation. The Park District denies that in fact Plaintiff's complaint against the investigation reflected a right protected under Title VII. The Park District denies any remaining allegations.

**Post Termination Appeal Hearing - Gender (Sex Stereotyping)**

120. At the Appeal Hearing, Defendant's counsel asked Plaintiff numerous questions about the

length and style of her hair and about her style of dress.

> Answer: The Park District admits that the Park District's attorney asked questions about the length and style of her hair and about the style of her dress; however, the Park District denies that these questions indicated any gender stereotyping. Instead, this questions represented an effort to be certain

31

that investigators had identified her as the person in a video when Plaintiff was claiming that people other than herself had used her vehicle.

## COUNT I

### Discrimination on the Basis of National Origin in Violation of 42 U.S.C. § 1981

121. Plaintiff re-alleges and incorporates by reference paragraphs 1-120 of this Complaint as if those paragraphs were fully set forth herein.

    Answer:    The Park District reincorporates its answers to paragraphs 1 through 120 as its answers to those paragraphs in Count I.

122. Plaintiff was discriminated against on the basis of her national origin, Hispanic.

    Answer:    The Park District denies the allegations of this paragraph.

123. By reason of the foregoing, Defendant has violated 42 U.S.C. § 1981.

    Answer:    The Park District denies the allegations in this paragraph.

## Count I - Prayer for Relief

WHEREFORE, Plaintiff prays for judgment against Defendant in the form of:

a) a finding that Defendant has injured Plaintiff in violation of 42 U.S.C. § 1981;

b) reinstatement of Plaintiff in her position of Park Supervisor at Bessemer Park;

c) an injunction prohibiting Defendant from engaging in future acts of discrimination or retaliation against Plaintiff;

d) any other appropriate injunctive relief;

e) back pay and the value of benefits Plaintiff would have received from the date Plaintiff was terminated through present, including any benefits that were available to her prior to termination;

f) front pay, any additional lost wages, compensatory damages for pecuniary and non-pecuniary losses, including humiliation and emotional and physical distress, prejudgment interest, and post-judgment interest;

g) costs and reasonable attorneys' fees;

h) interest;

i) any further relief to which Plaintiff is entitled under 42 U.S.C. § 1981; and

**j)** such other and further relief as this Court deems proper and just.

Answer:     The Park District denies that Plaintiff is entitled to any of the relief requested.

WHEREFORE, the Defendant, Chicago Park District,  prays that this Court enter judgment for it and against Plaintiff,  Lydia Vega.  This Court should grant such other relief as is just including court costs and other covered expenses.

## COUNT II

### Retaliation in Violation of 42 U.S.C. § 1981

124.    Plaintiff re-alleges and incorporates by reference paragraphs 1-120 of this Complaint as if those paragraphs were fully set forth herein.

Answer:     The Park District reincorporates its answers to paragraphs 1 through 120 as its answers to those paragraphs in Count II.

125.    By reason of the foregoing, Defendant has violated 42 U.S.C. § 1981.

Answer:     The Park District denies the allegations of this paragraph.

### Count II – Prayer for Relief

WHEREFORE, Plaintiff prays for judgment against Defendant in the form of:

a) a finding that Defendant has injured Plaintiff in violation of 42 U.S.C. § 1981;

b) reinstatement of Plaintiff in her position of Park Supervisor at Bessemer Park;

c) an injunction prohibiting Defendant from engaging in future acts of discrimination or retaliation against Plaintiff;

d) any other appropriate injunctive relief;

e) back pay and the value of benefits Plaintiff would have received from the date

Plaintiff was terminated through present, including any benefits were available to her prior to termination;

f) front pay, any additional lost wages, compensatory damages for pecuniary and non-pecuniary losses, including humiliation and emotional and physical distress, prejudgment interest, and post-judgment interest;

g) costs and reasonable attorneys' fees;

h) interest;

i) any further relief to which Plaintiff is entitled under 42 U.S.C. § 1981; and

**j)** such other and further relief as this Court deems proper and just.

Answer:     The Park District denies that Plaintiff is entitled to any of the relief requested.

WHEREFORE, the Defendant, Chicago Park District,  prays that this Court enter judgment for it and against Plaintiff,  Lydia Vega.  This Court should grant such other relief as is just including court costs and other covered expenses.

### COUNT III
### Discrimination on the Basis of National Origin (Hispanic)
### and Gender (female) in Violation of Title VII

126.    Plaintiff re-alleges and incorporates by reference paragraphs 1-120 of this Complaint as if those paragraphs were fully set forth herein.

Answer:     The Park District reincorporates its answers to paragraphs 1 through 120 as its answers to those paragraphs in Count III.

127.    Defendant discriminated against Plaintiff on the basis of her national origin, Hispanic, and gender, female.

Answer:     The Park District denies the allegations of this paragraph.

128.    Defendant has a pattern and practice of discriminating against Hispanic female Class A

and Class B park supervisors in its employ.

Answer: The Park District denies the allegations of this paragraph and further denies that Class A and Class B Park Supervisors represent the proper point of comparison to determine both individual and policy created discrimination.

129. Plaintiff suffered adverse employment action in the form of the investigation and termination.

Answer: The Park District admits that Plaintiff's employment was terminated, but denies that the Park District violated any law in investigating her and in terminating her employment.

130. The discriminatory motive and actions of the individuals who complained about Plaintiff influenced Defendant and resulted in Plaintiff's termination, which constitutes employment discrimination in violation of Title VII.

Answer: The Park District denies that the motives of individuals who complained had any bearing on the Park District's decision to investigate and to terminate Plaintiff. The Park District also denies that it was privy to the motivations of anyone complaining about Plaintiff. This paragraph should be stricken because the allegations are irrelevant to any issue in this case, as well as prejudicial. See paragraph No. 51.

131. The discriminatory motive and actions of the individuals investigated Plaintiff influenced Defendant and resulted in Plaintiff's termination, which constitutes employment discrimination in violation of Title VII.

Answer: The Park District denies the allegations of this paragraph. See the Park District's answer to paragraph No. 130.

**132.** By reason of the foregoing, Defendant has violated 42 U.S.C. § 2000e *et. seq.*

Answer: The Park District denies the allegations of this paragraph.

### Count III - Prayer for Relief

WHEREFORE, Plaintiff prays for judgment against Defendant in the form of:

a) a finding that Defendant has injured Plaintiff in violation of 42 U.S.C. §§ 2000e *et*

*seq.*;

b) reinstatement of Plaintiff in her position of Park Supervisor at Bessemer Park;

c) an injunction prohibiting Defendant from engaging in future acts of discrimination or retaliation against Plaintiff;

d) any other appropriate injunctive relief;

e) back pay and the value of benefits Plaintiff would have received from the date Plaintiff was terminated through present, including any benefits were available to her prior to termination;

f) front pay, any additional lost wages, compensatory damages for pecuniary and non-pecuniary losses, including humiliation and emotional and physical distress, prejudgment interest, and post-judgment interest;

g) costs and reasonable attorneys' fees;

h) interest;

i) any further relief to which Plaintiff is entitled under 42 U.S.C. §§ 2000e *et seq.*; and

j) such other and further relief as this Court deems proper and just.

Answer: The Park District denies that Plaintiff is entitled to the relief requested.

WHEREFORE, the Defendant, Chicago Park District, prays that this Court enter judgment for it and against Plaintiff, Lydia Vega. This Court should grant such other relief as is just including court costs and other covered expenses.

## COUNT IV

## Discrimination on the Basis of Gender (Sex Stereotyping) in Violation of Title VII

133. Plaintiff re-alleges and incorporates by reference paragraphs 1-120 of this Complaint as if those paragraphs were fully set forth herein.

Answer: The Park District reincorporates its answers to paragraphs 1 through 120

as its answers to those paragraphs in Count IV.

134.   Defendant also discriminated against Plaintiff on the basis of gender, sex stereotyping, because Plaintiff's appearance does not conform to the female stereotype as she does not dress or maintain her hair in stereotypical female styles.

   Answer:   The Park District denies that Park District discriminated against Plaintiff on the basis of gender or sex stereotyping.

135.   Further, as a result of Defendant's discrimination on the bases of gender, sex stereotyping, Defendant has violated 42 U.S.C. § 2000e *et. seq.*

   Answer:   The Park District denies that it discriminated against Plaintiff for any reason, including sex and sex stereotyping.

### Count IV - Prayer for Relief

WHEREFORE, Plaintiff prays for judgment against Defendant in the form of:

a.   a finding that Defendant has injured Plaintiff in violation of 42 U.S.C. §§ 2000e *et seq.*;

b.   reinstatement of Plaintiff in her position of Park Supervisor at Bessemer Park;

c.   an injunction prohibiting Defendant from engaging in future acts of discrimination or retaliation against Plaintiff;

d.   any other appropriate injunctive relief;

e.   back pay and the value of benefits Plaintiff would have received from the date Plaintiff was terminated through present, including any benefits were available to her prior to termination;

f.   front pay, any additional lost wages, compensatory damages for pecuniary and non-pecuniary losses, including humiliation and emotional and physical distress, prejudgment interest, and post-judgment interest;

g. costs and reasonable attorneys' fees;

h. interest;

i. any further relief to which Plaintiff is entitled under 42 U.S.C. §§ 2000e *et seq.*; and

**j.** such other and further relief as this Court deems proper and just.

Answer:    The Park District denies that the Plaintiff to the relief sought.

WHEREFORE, the Defendant, Chicago Park District,  prays that this Court enter judgment for it and against Plaintiff,  Lydia Vega.  This Court should grant such other relief as is just including court costs and other covered expenses.

## COUNT V

### Retaliation in Violation of Title VII

136.    Plaintiff re-alleges and incorporates by reference paragraphs 1-120 of this Complaint as if those paragraphs were fully set forth herein.

Answer:    The Park District reincorporates its answers to paragraphs 1 through 120 as its answers to those paragraphs in Count V.

137.    Defendant acted willfully and in bad faith in retaliating against Plaintiff by failing to investigate her claims of discrimination and harassment when she reasonably reported and opposed employment practices made illegal by Title VII.

Answer:    The Park District denies that any of its actions were taken in bad faith. The Park District asserts that Plaintiff should have incorporated any claim of the Park District's alleged Title VII violation in her administrative hearing over her termination held in December of 2012 and January of 2013.  The Park District denies that it violated any legal obligation it had to her after receiving any oral or written complaints from Plaintiff about the investigation of her.

138.    Defendant acted willfully and in bad faith in retaliating against Plaintiff by terminating her employment when she reasonably reported and opposed employment practices made illegal by Title VII.

Answer: The Park District denies that it acted in bad faith in any of its actions. The Park District denies that it retaliated against Plaintiff when she made oral or written complaints about her investigation.

139. By reason of the foregoing, Defendant has violated 42 U.S.C. § 2000e *et. seq.*

Answer: The Park District denies the allegations in this paragraph.

## **Count V - Prayer for Relief**

WHEREFORE, Plaintiff prays for judgment against Defendant in the form of:

a) a finding that Defendant has injured Plaintiff in violation of 42 U.S.C. § 200e *et seq.*;

b) reinstatement of Plaintiff in her position of Park Supervisor at Bessemer Park;

c) an injunction prohibiting Defendant from engaging in future acts of discrimination or retaliation against Plaintiff;

d) any other appropriate injunctive relief;

e) back pay and the value of benefits Plaintiff would have received from the date Plaintiff was terminated through present, including any benefits were available to her prior to termination;

f) front pay, any additional lost wages, compensatory damages for pecuniary and non-pecuniary losses, including humiliation and emotional and physical distress, prejudgment interest, and post-judgment interest;

g) costs and reasonable attorneys' fees;

h) interest;

i) any further relief to which Plaintiff is entitled under 42 U.S.C. § 2000e *et seq.*; and such other and further relief as this Court deems proper and just.

Answer: The Park District denies that Plaintiff is entitled to the relief requested.

WHEREFORE, the Defendant, Chicago Park District, prays that this Court enter judgment for it and against Plaintiff, Lydia Vega. This Court should grant such other

relief as is just including court costs and other covered expenses.

## COUNT VI

### Intrusion Upon Seclusion

140.   Plaintiff re-alleges and incorporates by reference paragraphs 1-120 of this Complaint as if those paragraphs were fully set forth herein.

    Answer:    The Park District reincorporates its answers to paragraphs 1 through 120 as its answers to those paragraphs in Count VI.

141.   Defendant intentionally and unlawfully intruded upon Plaintiff's seclusion in their investigation.

    Answer:    The Park District denies the allegations of this paragraph.

142.   The Investigators were acting at the instruction of Defendant and investigating Plaintiff on behalf of Defendant.

    Answer:    The Park District admits that the investigators worked on behalf of the Park District.   The Park District denies that the investigators conducted an unfair or unlawful investigation.

143.   Plaintiff has a reasonable expectation of privacy in her own home.

    Answer:    The Park District admits that Illinois recognizes the common-law tort of intrusion upon seclusion, including a reasonable expectation of privacy in one's home.

144.   The acts of Defendant's investigators in peering into her home were offensive and objectionable to Plaintiff and would be to any reasonable person.

    Answer:    The Park District denied that the investigators peered into her home.  The Park District denies that any of its investigators' surveillance would be objectionable to a reasonable person.

145.   A reasonable person would find the intrusion of tracking an individual's off-duty personal affairs, such as going to the gym before or after work, offensive and objectionable.

    Answer:    The Park District does not respond to the allegations in this complaint

because Judge James Zagel ruled in a July 25, 2013 order that these allegations represented a permissible investigation on personal matters, not an impermissible one about private matters.

146. Plaintiff and any reasonable person would find inquiry into the names and vehicles and activities of her family and friends offensive and objectionable.

Answer: The Park District does not respond to the allegations in this complaint because Judge James Zagel ruled in a July 25, 2013 Memorandum Opinion and Order that these allegations represented a permissible investigation on personal matters, not an impermissible one about private matters.

147. Plaintiff and any reasonable person would find the tenor of interviews of Plaintiff by Defendant's investigators both offensive and objectionable.

Answer: The Park District does not respond to the allegations in this complaint because Judge James Zagel ruled in a July 25, 2013 Memorandum Opinion and Order that these allegations represented a permissible investigation on personal matters, not an impermissible one about private matters.

148. Plaintiff and any reasonable person would find the acts of Defendant's investigators in telling other CPD employees that Plaintiff was not working the hours she claimed to be objectionable and offensive.

Answer: The Park District does not respond to the allegations in this complaint because Judge James Zagel ruled in a July 25, 2013 Memorandum Opinion and Order that these allegations represented a permissible investigation on personal matters, not an impermissible one about private matters.

149. A reasonable person would find the length of Defendant's surveillance over at least a five-month period of time, both offensive and objectionable.

Answer: The Park District does not respond to the allegations in this complaint because Judge James Zagel ruled in a July 25, 2013 Memorandum Opinion and Order that these allegations represented a permissible investigation on personal matters, not an impermissible one about private matters.

150. Plaintiff found the activities of Defendant's investigators both offensive and

objectionable.

Answer:     The Park District remains without sufficient knowledge of Plaintiff's mental state to either admit or deny this allegation. The Park District denies that its investigation was discriminatory and offensive and objectionable.

151.   As a result of the intrusions, Plaintiff suffered physical manifestations of anguish and suffering.

Answer:     The Park District remains without sufficient knowledge of Plaintiff's mental state to either admit or deny this allegation.

## Count VI – Prayer for Relief

WHEREFORE, Plaintiff prays for judgment against Defendant in the form of:

a)   an injunction against further intrusion upon seclusion of Plaintiff by Defendant;

b)   compensatory damages; and

**c)**   such other and further relief as this Court deems proper and just.

Answer:     The Park District denies that the Plaintiff is entitled to any of the relief sought.

WHEREFORE, the Defendant, Chicago Park District, prays that this Court enter judgment for it and against Plaintiff, Lydia Vega. This Court should grant such other relief as is just including court costs and other covered expenses.

## COUNT VII

## Violation of the Illinois Eavesdropping Act

152.   Plaintiff re-alleges and incorporates by reference paragraphs 1-120 of this Complaint as if those paragraphs were fully set forth herein.

Answer:     The Park District does not respond to the allegations in this paragraph because in a Second July 25, 2013 Memorandum Opinion and Order, Judge James Zagel granted summary judgment for the Park District on Count VII.

153.    Between as early as September 2011 and February 1, 2012, Defendant's Investigators used a device that recorded both visible movements and audible sounds to collect information about Plaintiff in the form of video and audio recordings.

    Answer:    The Park District does not respond to the allegations in this paragraph because in a Second July 25, 2013 Memorandum Opinion and Order, Judge James Zagel granted summary judgment for the Park District on Count VII.

154.    An eavesdropping device under the Illinois Eavesdropping Act, 720 ILCS 5-14/1 *et seq.* is "any device capable of being used to hear or record oral conversation or intercept, retain, or transcribe electronic communications whether such conversation or electronic communication is conducted in person, by telephone, or by any other means..." 720 ILCS 5-14/1.

    Answer:    The Park District does not respond to the allegations in this paragraph because in a Second July 25, 2013 Memorandum Opinion and Order, Judge James Zagel granted summary judgment for the Park District on Count VII.

155.    A person violates the Illinois Eavesdropping Act when he knowingly uses an eavesdropping device without the consent of the person who is being subjected to eavesdropping, *or* when the eavesdropper "uses or divulges ... any information which he knows or reasonably should know was obtained through the use of an eavesdropping device." 720 ILCS 5-14/2.

156.    Plaintiff did not consent to being video or audio recorded.

    Answer:    The Park District does not respond to the allegations in this paragraph because in a Second July 25, 2013 Memorandum Opinion and Order, Judge James Zagel granted summary judgment for the Park District on Count VII.

157.    Defendant and its Investigators knew that they were eavesdropping on Plaintiff for more than five months.

Answer:     The Park District does not respond to the allegations in this paragraph because in a Second July 25, 2013 Memorandum Opinion and Order, Judge James Zagel granted summary judgment for the Park District on Count VII.

## **Count VII – Prayer for Relief**

WHEREFORE, Plaintiff prays for judgment against Defendant in the form of:

a)  a finding that Defendant has injured Plaintiff in violation of the Illinois

Eavesdropping Act, 720 ICLS 5-14/1 *et seq.*;

b)  an injunction against the use of any videotapes/disks/recordings obtained by

Defendant, which attempt to capture Plaintiff's words, actions, or property for any

reason;

c)  an order requiring the destruction of any videotapes/disks/recordings obtained by

Defendant, which attempt to capture Plaintiff's words, actions, or property; and

d)  such other and further relief as this Court deems proper and just.

Answer:     The Park District does not respond to the allegations in this paragraph because in a Second July 25, 2013 Memorandum Opinion and Order, Judge James Zagel granted summary judgment for the Park District on Count VII.

**************************************************************************************************

## **AFFIRMATIVE DEFENSES**

1.      With respect to claims for monetary relief, Defendant is entitled to a set off from

any liability sums earned by Plaintiff since her termination.

2.      Plaintiff is obligated to mitigate her alleged damages with respect to claims for

monetary relief. Those claims should be barred or, in the alternative, reduced to the extent

Plaintiff has failed to mitigate her damages.

WHEREFORE, the Park District prays that any award of damages that the Plaintiff might

obtain be reduced by the sums earned by Plaintiff in any employment since her termination and

by any proven failure on Plaintiff's part to take appropriate steps to mitigate her damages.

CHICAGO PARK DISTRICT

By: /s/ Nelson A. Brown, Jr.
One of Its Attorneys

Rebecca Reierson (6270299)
Deputy General Counsel
Nelson A. Brown, Jr. (3123202)
Senior Counsel
Nicholas Thompson
Legal Intern
CHICAGO PARK DISTRICT
541 North Fairbanks Ct.
Chicago, IL  60611
(312) 742-4609
(312) 742-4610

## <u>CERTIFICATION OF SERVICE</u>

I, Nelson A. Brown, Jr., an attorney, hereby certify that on  August 28, 2013, I caused to be served a copy of the foregoing **CHICAGO PARK DISTRICT'S ANSWER AND AFFIMRATIVE DEFENSES TO THE AMENDED COMPLAINT**, in the above-captioned matter to be filed with the Clerk of the District Court and served on the parties of record, including those listed below, by operation of the Court's CM/ECF electronic filing system, addressed to:

Catherine Simmons-Gill, Esq.
Offices of Catherine Simmons-Gill, LLC
111 West Washington Street
Suite 1051
Chicago, Illinois 60602
Tel: (312) 609-6611
simmonsgill@gmail.com

Respectfully submitted,
Chicago Park District

By:        /s/ Nelson A. Brown, Jr.

45