**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LYDIA E. VEGA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No: 13 C 451 |
| | ) | |
| v. | ) | Magistrate Judge Daniel G. Martin |
| | ) | |
| CHICAGO PARK DISTRICT, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

For the reasons stated below, Plaintiff's Motion to Compel and Motion for Limited Sanctions [93] is denied. Status hearing set for 4/21/2015 at 9:30 a.m. stands.

## STATEMENT

Plaintiff Lydia E. Vega ("Vega") has sued her former employer, the Chicago Park District (the "Park District"), for employment discrimination based on gender, national origin, and sex-stereotyping, as well as for intrusion on seclusion during the Park District's investigation of Vega. The parties are proceeding with oral discovery. Vega now moves to compel the Park District to produce the total compensation received by individual CPD Park Supervisors in Class A, B, C, and D parks between 2005 and the present as well as "appropriate institutional designees" (doc. 93 at 1) in response to Vega's Rule 30(b)(6) Notice of Deposition.[1] The Court addresses each issue in turn below.

A.   **Total Actual Compensation of Park Supervisors**

In the Court's order dated September 24, 2014, it overruled the Park District's relevancy objection to production of salary and benefits information for other Park Supervisors at Class A, B, C, and D parks for the years 2005 through the present. (Doc. 79 at 7-8). Vega argues that the Park District has refused to provide total actual compensation of Park District Supervisors in violation of that Order. Vega says the Park District has provided a chart of the base salaries by individual without specification of the year for the salary figure, and the Union-negotiated list of bonuses by park to which each bonus applies. Vega believes the Park District is suggesting that she add the base salary (unspecified as to year), determine from other provided charts which dates which supervisors at which parks worked part or all of a year, then add the bonus number for that park or parks to the base salary to arrive at a final figure. According to Vega, it is not reasonable to require her to do this and it will not provide evidence of actual compensation. Finally, Vega states that the Park District has not provided any

---

[1] The other two issues raised by Vega's motion to compel regarding surveillance videos and exhibits from Vega's administrative hearing are denied as moot.

information on other bonuses such as longevity bonuses or figures on overtime pay.

The Park District responds that it has substantially complied with Vega's request for Park Supervisor compensation data from January 2005 through November 2014. The Park District had already provided Vega with the collective bargaining agreement between the Service Employees International Union (SEIU) and the Park District, which substantially provides the basis for calculating the total compensation for all Park Supervisors from 2009 through November 2014 ("Union Agreement"). The Park District also provided the relevant compensation provisions of the collective bargaining agreement between the Park District and the SEIU effective from January of 2005 through December 2008 ("Union Agreement I"). The affidavit of Laurie Kirshenbaum, the Park District's Acting Deputy Director of Human Resources, explains how total base compensation for Park Supervisors under Union Agreement I and Union Agreement can be determined. (Doc. 99-3 at ¶ 2). As explained in Kirshenbaum's affidavit, the Union Agreement also provides that certain supervisors at various parks receive a bonus on top of the base salary depending on the particular park supervised and that information has been produced. Id. at ¶ 3. In addition to a base salary and a possible park bonus, the Union Agreement provided for longevity pay, which Kirshenbaum explains. Id. ¶ 4. Thus, to obtain any particular Park Supervisor's total compensation, one would have to individually add the base salary, the park bonus, and any possible longevity pay. Id. at ¶¶ 5-6.

As for overtime pay, Kirshenbaum states that payment of overtime for park supervisory personnel is "very unusual." (Doc. 99-3 at ¶ 9). The Park District is unable to produce a spreadsheet showing all overtime for all park supervisory personnel over a several-year period. Kirshenbaum explains that the only way to determine if any supervisory personnel received overtime pay would be to go through each supervisor's payroll record for each of twenty-six pay periods a year to see if overtime was accumulated. Id. at ¶ 8. For one year, this would require going through the twenty-six pay periods for each of the 313 current and former Park Supervisors and Playground Supervisors. Id.

The Park District argues that requiring it to provide the total compensation for all 313 listed park supervisory personnel from 2005 to 2012 would impose an unreasonable burden on it. The Park District does not have a database that can produce total compensation for Park Supervisors in a single spreadsheet format. To determine individual total compensation for each of the 313 park supervisory personnel, the Park District would have to look individually at all of the twenty-six pay periods for each person for each year from 2005 through 2012, which would involve several thousand searches. In addition, the Park District does not have the database capacity to produce a single spreadsheet showing the amount of overtime pay that all supervisors received in any one year. (Doc. 99-3 at ¶ 8). Any requirement to produce overtime pay information would similarly require thousands of individual searches. Given the above information that the Park District has provided, the Park District asserts that Vega can substantially determine the total compensation for an individual Park Supervisor by adding the base salary, the longevity pay, and any park bonus.

At the time the Court's prior ruling was made, the record contained no evidence as to the precise burden of producing total compensation for park supervisory personnel. Based upon a fuller record and balancing the costs and potential benefits of the additional compensation discovery Vega seeks, the Court concludes that the Park District has sufficiently complied with the

Court's September 24, 2014 discovery order regarding total compensation for Park Supervisors. Melendez v. Illinois Bell Tel. Co., 79 F.3d 661, 670-71 (7th Cir. 1996) (district court has broad discretion to determine whether a party has complied with discovery orders). As to burden, the Park District has articulated precisely how Vega's request for total compensation for all 313 park supervisory personnel from 2005 to 2012 would be unduly burdensome. Against this explanation of burden, the Court has considered the limited relevance of the total actual compensation by year for Park Supervisors at Class A, B, C, and D parks for the years 2005 through 2014 to Vega's overall case. Vega does not allege a separate disparate pay claim. The Court recognizes that there is some marginal relevance to information about the Park District's compensation of other Park Supervisors. It might tend to prove Vega's general allegation that the Park District has a pattern and practice of discriminating against Hispanic female Class A and Class B Park Supervisors or it may assist her in identifying similarly situated employees who are directly comparable to Vega in material respects. Vega has received significant information regarding the compensation of Park Supervisors. The information provided allows Vega to substantially determine the total compensation for any individual Park Supervisor. This is sufficient. On balance, the amount of time it would take the Park District to produce the further compensation information Vega seeks is vastly out of proportion to its marginal relevance. Nevertheless, if Vega needs actual total compensation information for a few specific, allegedly better-treated Park Supervisors to support her claim that they are similarly situated to her, the Court will allow Vega to discover such limited information.[2]

**B.     Park District's Response to Vega's Rule 30(b)(6) Notice**

Vega's 30(b)(6) Notice to the Park District identified eight broad topics and 45 sub-topics. In response, the Park District designated 18 witnesses and set out the matters on which each person designated will testify. (Doc. 93 at Exh. 3).[3] Vega contends that the Park District has failed to comply with its duties under Rule 30(b)(6) in two ways. First, Vega argues that designating numerous witnesses to testify about a single designated subject area when one witness should be sufficient is contrary to the purpose of the rule, which is to streamline the discovery process. Vega claims that the Park District is shirking its duty to prepare its deponents by designating "every conceivably relevant fact witness in lieu of a reasonable number of appropriate 30(b)(6) designees." (Doc. 93 at 11). Vega believes that the Park District should be compelled to designate no more than one deponent per Rule 30(b)(6) topic. (Doc. 93 at 14). Second, Vega complains that not all the proposed 30(b)(6) deponents are qualified to give binding testimony on the Park District's behalf. The Park District responds that Vega's 30(b)(6) topics and sub-topics contain sweeping and very specific requests for all types of information allegedly relevant to her case and that it has

---

[2] Vega's suggestion that the Park District produce Federal W-2 documents for all Park Supervisors for each year going back several years is rejected given the burden and expense of producing such information and because W-2s only document taxable income, not total compensation. See Doc. 99-3 at ¶ 7.

[3] Vega says the Park District's Response lists twenty-two (22) persons. The Court counted 18 designees: (1) Michael Simpkins, (2) Alison Perona, (3) Edward Skerrett, (4) Leroi Catlin, (5) Michael Hester, (6) Matt Marino, (7) Cynthia Moreno, (8) Beka Reierson, (9) Martin Drumm; (10) Mary Saieva; (11) Michael Thompson, (12) Kenneth Tassone, (13) Russ Needler, (14) Heather Keil, (15) Patrick Townsend, (16) Anita Glikey, (17) Cynthia Rosario, and (18) Maria Castaneda. (Doc. 93, Exh. 3).

tried in good faith to comply with her massive requests. The Park District argues that if Vega wants few designees, she should not make such sweeping 30(b)(6) requests.

Federal Rule of Civil Procedure 30(b)(6) governs deposition notices directed to an organization. It provides that a deposition notice to an organization "must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). The named organization "must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." Id. The organization must prepare its designated individuals to "testify about information known or reasonably available to the organization." Id.

Vega first argues that the Park District designated an unreasonable number of witnesses in response to her Rule 30(b)(6) notice. The Court finds that the Park District has complied with its Rule 30(b)(6) obligations and does not have excessive witness designations. As an initial matter, Rule 30(b)(6) expressly contemplates that more than one person may be needed to satisfy the named organization's 30(b)(6) responsibilities. Fed. R. Civ. P. 30(b)(6) (stating named organization "must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf."). "To satisfy Rule 30(b)(6), the corporate deponent has an affirmative duty to make available 'such number of persons as will' be able 'to give complete, knowledgeable, and binding answers' on its behalf." Reilly v. Natwest Markets Group, Inc., 181 F.3d 253, 268 (2d Cir. 1999).

Second, the eight topics identified in Vega's Rule 30(b)(6) Notice are broad in scope: (1) investigations of Park Supervisors conducted between January 1, 2009 to the present and the results of those investigations; (2) the Park District's policies and practices regarding the production, collection, maintenance, and use of employee timesheets from January 1, 2010 to July 31, 2012; (3) all disciplinary actions and investigations involving Vega; (4) the workings of the Park District's anonymous whistleblower hotline generally and as to calls concerning Vega and other calls to the Park District's administrative officers; (5) salary, bonus, and benefit information regarding Park Supervisors, including the actual day-to-day responsibilities and duties of Park Supervisors assigned to Class A, B, C, D parks or playgrounds; (6) the performance and discipline history for 19 specific Park District employees; (7) complaints or charges by Park District employees alleging discrimination based on gender, race, national origin, gender stereotyping, and/or retaliation from 2007 to the present; and (8) document retention and destruction policies and practices of the Park District. The Park District's Response set out the topics on which each designated person will testify and included the job title of each designated person. (Doc. 93, Exh. 3). The Park District states that, where possible, it identified one person with knowledge on certain topics. For example, Beka Reierson, former Director of Human Resources for the Park District, has generally been designated as the person most knowledgeable about any discipline given to Park Supervisors who were investigated. Id. at 3-4. For topic II (policies and practices regarding employee timesheets), the Park District designated only Michael Simpkins, the current Director of Human Resources. Id. at 5. As to topic V, the Park District designated Michael Simpkins, to testify about the salary, bonus, and benefit information regarding Park Supervisors from January 1, 2006 until the present and North Region Manager Patrick Townsend to testify as to the actual day-to-day responsibilities and duties or Park Supervisors. Id. at 8. As to other complaints or charges of discrimination (Topic VII), the Park District designated only Beka Reierson to address the 23 responsive complaints or charges. Id. at 11.

-4-

While Vega obviously prefers to depose fewer 30(6)(6) witnesses, her preference does not provide the Court with a basis for granting the relief she seeks. Notably, Rule 30(b)(6) does not limit the named organization to one deponent per topic. Also, given the broad nature of the general topics Vega identified in her Rule 30(b)(6) Notice and the fact-specific information sought regarding other employees in certain sub-topics, the Park District cannot be faulted for designating more than one witness in response to certain topics and sub-topics. There is simply no basis in the record for concluding that the Park District has failed to comply with the duties imposed by Rule 30(b)(6). Rule 30(b)(6) is designed to "curb the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of the facts that are clearly known to persons in the organization and thereby to it." Advisory Committee Note to 1970 Amendment to Fed. R. Civ. P. 30(b)(6). By designating persons most knowledgeable on the designated topics and sub-topics, the Park District has made a conscientious, good-faith effort to comply with the spirit and purpose of the rule. To be sure, designating persons most knowledgeable about a topic does not extinguish the Park District's duties, but it does not mean that the Park District "is attempting to sidestep its 30(b)(6) duty to prepare." (Doc. 93 at 12). The Park District remains obligated to prepare the witnesses to testify "not only to matters within his personal knowledge but also to 'matters known or reasonably available to the organization.'" PPM Finance, Inc. v. Norandal USA, Inc., 392 F.3d 889, 894-95 (7th Cir. 2004). Preparing the designated witnesses to give complete, knowledgeable, and binding answers on behalf of the Park District will require significant time and effort. Finally, Rule 30(b)(6) does not prevent the Park District from designating persons as 30(b)(6) witnesses who are also fact witnesses. "A person can be both a fact witness and a 30(b)(6) witness." Hilton Hotels Corp. v. Dunnet, 2002 WL 1482543, at *2 (W.D. Tenn. March 15, 2002).

Vega claims that the Park District's long list of 30(b)(6) designees "creates an untenable situation" by forcing Vega "either to take topics piecemeal by questioning a witness seriatim on each of the subtopics under several overall topics, or by having several witnesses testify [about] each topic in the order the topics appear and return repeatedly to cover other topics." (Doc 93 at 11). Vega believes the transcript will be "unusable" and "there would be no testimony on behalf of the institution." (Doc. 93 at 13). The Court does not understand and Vega does not adequately explain why the testimony of multiple Rule 30(b)(6) designees will be unusable and not on behalf of the Park District. In any event, counsel shall meet and confer to adopt the most efficient procedure for deposing the 30(b)(6) designees.

The next objection by Vega is that "not all of the proposed 30(b)(6) deponents are qualified to give binding testimony on the [Park District's] behalf." (Doc. 93 at 12). Vega states that investigators Michael Hester and Leroi Catlin are police officers for the Chicago Police Department and not employees of the Park District. Vega says "[i]t is difficult to imagine how non-employee investigators would be competent to testify about facts within [the Park District's] knowledge." Id. Vega points out that designee Health Keil no longer works for the Park District. Vega then acknowledges that the rule does not preclude the designation of a former employee if the designee consents to serve as such. Vega complains that nothing in the Park District's Response indicates Keil's willingness to testify. Finally, Vega asserts that numerous designees are not officers, directors, or managing agents of the Park District and therefore are not of the category "generally" called for by Rule 30(b)96) as situated to speak on behalf of an organization as large and multi-layered as the Park District. Id. Vega's arguments are without merit. As the Park District contends, the rule itself provides that a 30(b)(6) deponent can be "one or more officers, directors, or managing agents" or "*other persons who consent to testify on its behalf*." Fed. R. Civ. P. 30(b)(6) (emphasis added). As to designees who are not Park District officers, directors, or

managing agents, the Park District shall provide their written consent to serve as its 30(b)(6) designee on specific topics prior to his or her deposition.

      For these reasons, Plaintiff's Motion to Compel and Motion for Limited Sanctions [93] is denied.


**Date:  March 25, 2015**                                 /s/ *Daniel G. Martin*
                                                                                  United States Magistrate Judge