**EXHIBIT C**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LYDIA E. VEGA, | ) | |
| | ) | |
| Plaintiff, | ) | 13 cv 00451 |
| | ) | |
| v. | ) | Judge James B. Zagel |
| | ) | |
| CHICAGO PARK DISTRICT, | ) | Magistrate Judge Daniel G. Martin |
| | ) | |
| Defendant. | ) | |

**SECOND AMENDED NOTICE OF DEPOSITION OF
CHICAGO PARK DISTRICTUNDER RULE 30(b)(6)**

**PLEASE TAKE NOTICE** that, pursuant to Rules 26 and 30, and specifically Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiff, Lydia Vega ("Plaintiff" or "Vega"), will, on January 20, 2015, starting at 10 am, take the deposition upon oral examination of one or more officers, managing agents, agents or other such designees of defendant, Chicago Park District ("Defendant" or "CPD"), who has knowledge of the topics listed in Exhibit A attached hereto.

The deposition will take place at the offices of Catherine Simmons-Gill, 111 West Washington Street, Suite 1051, Chicago, Illinois 60602, and continue from day to day, Sundays and holidays excluded, until completed, before an official court reporter or other notary public authorized by law to take depositions, and said deposition may be videotaped.

November 19, 2014

1

2

Plaintiff, LYDIA VEGA,


By: _s/Catherine Simmons-Gill_____
Catherine Simmons-Gill
Attorney for Plaintiff
Offices of Catherine Simmons-Gill
111 W. Washington St., Suite 1051
Chicago, IL 60602
(312) 609-6611
ARDC No. 2159058

2

## CERTIFICATE OF SERVICE

The undersigned, Catherine Simmons-Gill, an attorney, certifies that a copy of the foregoing Notice of Deposition was served on November 19, 2014 via electronic means, namely e-mail as agreed to in writing by the parties, on the attorneys for Defendant as follows:

>Rebecca Reierson
>Nelson A. Brown, Jr.
>Chicago Park District
>541 North Fairbanks Court
>Chicago, Illinois 60611
>nelson.brown@chicagoparkdistrict.com
>rebecca.Reierson@chicagoparkdistrict.com

>   s/Catherine Simmons-Gill
>    Catherine Simmons-Gill

# EXHIBIT A - RULE 30(b)(6) TOPICS

I. Chicago Park District (hereinafter "Defendant" or "CPD") investigations of Park Supervisors (Classes A & B) conducted between January 1, 2008 and the present, whether or not such investigations resulted in discipline or termination of the investigated employees, including all institutional knowledge about the following aspects of those investigations:

   A. The procedural requirements for such investigations, in terms of both formal policy and informal custom or practice;

   B. CPD's policy and practice regarding progressive discipline, and the application of that policy and practice to such investigations.

   C. The name, gender, and race of each person so investigated;

   D. The names of each investigator involved in the investigation;

   E. The substantive basis of each such investigation;

   F. Cooperation practices of investigators in the specific situation where multiple investigators are assigned to a single investigation;

   G. Types of equipment used by investigators in conducting the investigations;

   H. Policies and procedures followed by the investigators in conducting these investigations;

   I. The findings of each investigation; and,

   J. Discipline, if any, issued by Defendant as a result of those investigations.

4

II.    Defendant's policy and practice (in effect in the period from January 1, 2010 to July 31, 2012) regarding the production, collection, maintenance, and use of employee timesheets, including all of Defendant's institutional knowledge about the following:

    A.    Formal policies and informal practices related to the method by which employees were instructed to fill out their timesheets;

    B.    Formal policies and informal practices related to the method by which employees could have and/or did amend or correct errors in their timesheets;

    C.    Actual practice of Defendant in the dates of collection of timesheets, particularly but not limited to those time periods when timesheets were collected prior to the final date covered by the timesheets collected; [maybe: "Actual practice of Defendant in collecting employee timesheets, particularly but not limited to instances in which Defendant collected timesheets before the final date of the period covered by the same timesheets"]

    D.    The frequency with which Defendant instructed its employees to amend their timesheets, including specific instances of such instruction if applicable;

    E.    The frequency with which Defendant instructed its employees to conform the specific hours claimed on their timesheets to the specific hours during which they worked, including specific instances of such instruction if applicable; and,

    The frequency of receipt of the CPD or amended timesheets.

III.    All disciplinary actions and investigations involving Plaintiff Lydia Vega, including all of Defendant's institutional knowledge on the following:

    A.    Surveillance conducted on Plaintiff at any time;

5

B. Interviews of others conducted by any investigator during the Defendant's investigation of Plaintiff;

C. Lydia Vega's disciplinary record during her tenure with the Park District;

D. Any investigation that Defendant made of the information provided to it by Plaintiff during her Corrective Action Meeting (hereinafter "CAM") concerning her refutation of Defendant's allegations that Plaintiff was not working on October 11, 2011, October 19, 2011, November 1, 2011, November 17, 2011, December 2, 2011, December 5, 2011, December 6, 2011, January 18, 2012, January 23, 2012, January 30, 2012 and January 31, 2013;

E. The interview of or meeting with Plaintiff held on February of 2012 by Michael Hester and Leroi Catlin at Bessemer Park.

F. The interview of Plaintiff held on March 12, 2012 by Michael Hester and Leroi Catlin at CPD headquarters;

G. The interview of Plaintiff held by Leroi Catlin at Bessemer Park on March 12, 2012;

H. The CAM attended by Plaintiff and Mary Saieva and at least one other on July 26, 2012;

I. The CAMs attended by Plaintiff and Mary Saieva and at least one other on August 23, 2012; and,

J. All discussions leading up to and including the determination to terminate Plaintiff, including the identities and roles of the persons involved.

IV. The workings of Defendant's Anonymous Whistleblower Hotline (hereinafter "the Hotline") generally and other calls to Defendant's administrative offices, and, specifically as such calls relate to calls concerning Plaintiff, including all institutional knowledge of Defendant on:

    A. Policies, procedures and actual practices concerning theHotline;

    B. Any calls to the Hotline relating to Plaintiff, including the content of such calls and the identity of each caller to the extent it is known;

    C. Any action taken as a result of calls to the Hotline about Plaintiff and the reasons for such action; and,

Information regarding calls made to and from one Heather Keil about Bessemer Park not being open on September 4, 2011, involving at least one third party and Plaintiff.

V. Salary, bonus and benefit information regarding Park Supervisors in Defendant's employ during the period from January 1, 2006 until the present, including but not limited to:

    A. The applicable union agreement and its application to the determination of salaries for Park Supervisors of Classes A, B, C, and D parks;

    B. Actual day-to-day responsibilities and duties of Park Supervisors assigned to Class A parks;

    C. Actual day-to-day responsibilities and duties of Park Supervisors assigned to Class B parks;

    D. Actual day-to-day responsibilities and duties of Park Supervisors assigned to Class C parks or playgrounds;

    E. Actual day-to-day responsibilities and duties of Park Supervisors assigned to Class D parks or playgrounds;

7

    F.    Name, gender, ethnicity/national origin and age of each park supervisor assigned to a Class A or Class B park and the duration of each assignment to a particular park; and,

    G.    On an annual basis, the actual salaries, bonuses, other compensation and benefits received by each Park Supervisor assigned to Class A and B parks, organized by the name, race/national origin, and gender of the relevant individuals.

VI.    The performance and disciplinary records of the following individuals, including the contents of their personnel and disciplinary record files:

    A.    Sherece Childs;

    B.    Richard Blake;

    C.    Corenthia Davis John;

    D.    All individuals listed on Bates Nos. 1081-1084 produced by Defendant;

    E.    Any discipline issued to, investigation of and the reason for the end of the employment of Nereida Aviles, Martha Ramirez, Maria Ortiz and any other Class A or Class B Park Supervisor who was Hispanic and female between January 1, 2008 and the present.

VII.    Any complaint or charge made to or about the Defendant that Defendant has or had discriminated against an employee on the basis of gender, race, national origin, gender stereotyping and/or retaliation from 2007 to the present, including but not limited to:

    A.    The complaint or charge;

    B.    Any investigation undertaken by the Defendant;

    C.    Any results of an investigation undertaken by the Defendant; and,

8

   D. Any action taken by Defendant as a result of the complaint/charge.

VIII. Any formal written policy or informal practice of Defendant relating to document retention or document destruction, including but not limited to, destruction of documents and things that underlie an investigation of a CPD employee for violations of CPD rules and regulations such as timesheet violations;