IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

LYDIA VEGA,

    Plaintiff,

v.

CHICAGO PARK DISTRICT,

    Defendant.

Case No. 13 CV 451

Judge Jorge L. Alonso

**CHICAGO PARK DISTRICT'S MOTION FOR
JUDGMENT AS A MATTER OF LAW**

The Chicago Park District ("Park District") moves for entry of judgment as a matter of law in its favor on the claims of Lydia Vega ("Vega") for national-origin discrimination and retaliation under both Title VII and 42 U.S.C. § 1981.

**I. INTRODUCTION**

Vega has presented no admissible evidence from which a reasonable jury could find either that that the Park District discriminated against her on the basis of her Hispanic heritage, or that the Park District discharged her in retaliation for her complaint of discrimination. Specifically:

- Vega has presented no direct evidence that the Park District discharged her because of her Hispanic ancestry.

- Vega has presented no evidence that she was treated differently from similarly-situated Caucasian or African-American park supervisors.

- Vega has presented no evidence that the Park District's reason for terminating her – falsification of her timesheets – was merely a pretext.

1

- Vega has presented no evidence that the Park District has a practice of discriminating against Hispanics that is so widespread and pervasive that it rises to the level of unwritten policy.

- Vega has presented no evidence that she engaged in any "protected activity" that might support a retaliation claim, or that the persons who made the decision to discharge her were aware of any protected activity before her termination.

Given the absence of any evidence from which a reasonable jury could find discrimination or retaliation, this Court should enter judgment as a matter of law in favor of the Park District, pursuant to Federal Rule of Civil Procedure 50.

## II. ARGUMENT

Rule 50 of the Federal Rules of Civil Procedure provides that a court may enter judgment as a matter of law under the following circumstances:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

Fed. R. Civ. P. 50. Judgment as a matter of law is appropriate where no rational jury could find for the plaintiff. *Harvey v. Office of Banks and Real Estate,* 377 F.3d 698 (7th Cir. 2004). Because Vega has failed to come forward with evidence from which a rational jury could find in her favor, this Court should enter judgment against her.

### A. Vega Has Presented No Evidence of Discrimination.

To establish her claim for discrimination on the basis of ethnicity under Title VII or 42 U.S.C. § 1981, Vega must introduce evidence sufficient to allow a

2

reasonable juror to conclude that she would have kept her job if she were not Hispanic, and everything else had remained the same. *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 763-34 (7th Cir. 2016).

In *Ortiz*, the Seventh Circuit jettisoned the distinction between "direct" and "indirect" methods, as well as the "convincing mosaic" approach, of establishing a *prima facie* case of discrimination. 834 F.3d at 765. Nevertheless, Vega has introduced no evidence – direct, indirect, circumstantial, mosaic or otherwise – that could allow a reasonable juror to conclude that she was terminated because she is Hispanic.

A plaintiff may attempt to prove discrimination by producing evidence such as an explicit admission that the adverse employment action was motivated by discrimination; or that she belongs to a protected class, was meeting the employer's legitimate expectations, suffered an adverse employment action, and similarly situated employees outside her protected class received more favorable treatment. *Vega v. Chicago Park District*, 165 F. Supp. 3d 693, 700-01 (N.D. Ill. 2016). The Park District stipulated that Vega belongs to a protected class and suffered an adverse employment action. Vega, however, has failed to present any evidence that the adverse employment action was tied to her status as a Hispanic.

Vega has identified four persons involved in her investigation and discipline: Leroi Catlin, Michael Hester, Mary Saieva and Michael Simpkins. Vega introduced no evidence of any overt discriminatory comments or behavior by any of these persons; indeed, she testified that there were none.

Vega did not know whether the two investigators, Officers Hester and Catlin, conducted investigations any differently for Hispanic employees than for African-American, Caucasian or Asian employees. (Ex. B, 3-7-17 Tr. at 185-86)[1] The investigators confirmed that they followed the same general procedure in investigating Vega that they followed in conducting investigations of African-Americans, Caucasians and Asians. (Ex. C, 3-8-17 Tr. at 123; Ex. D, 3-9-17 Tr. at 95-96) Other witnesses testified that, during the investigators' meetings with Vega, they did not notice or recall any statements or conduct that indicated that the investigators were biased against Vega based on her Hispanic heritage. (Ex. A, 3-6-17 Tr. at 83, 84-85; Ex. E, 3-10-17 Tr. at 40-41) Furthermore, neither Officer Catlin nor Officer Hester knew Vega prior to the investigation, and the hotline calls did not identify Vega's ethnicity. (Ex. C, 3-8-17 Tr. at 114-15; Ex. D, 3-9-17 Tr. at 86; PX 40; PX 41)

The investigators did not conclude that the complaints against Vega were sustained, but instead referred their findings to management for investigation. (Ex. C, 3-8-17 Tr. at 240; Ex. D, 3-9-17 Tr. at 71) The evidence was undisputed that the investigators had no say in whether an employee should be disciplined, or the type of discipline to be imposed. (Ex. D, 3-9-17 Tr. at 94)

Vega has argued that the investigation was "flawed." However, "the question in a discrimination case is not whether the employer's stated nondiscriminatory ground for the action of which the plaintiff is complaining is correct but whether it is the true ground of the employer's action rather than

---

[1] Pertinent portions of the trial transcripts for March 6, March 7, March 8, March 9 and March 10 are attached as Exhibits A, B, C, D and E, respectively.

4

being a pretext for a decision based on some other, undisclosed ground." *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006). Vega has not presented any evidence suggesting how any alleged errors support an inference of discrimination. *See Smith v. Chicago Transit Authority*, 806 F.3d 900, 907 (7th Cir. 2015)(rejecting complaints of errors in investigation as insufficient to show discriminatory intent).

Vega, in fact, acknowledged that during the course of the timesheet investigation, Officer Catlin investigated a complaint that Vega had discriminated against African-American park patrons and concluded that the complaint was unfounded. (Ex. B, 3-7-17 Tr. at 187-88) That finding in Vega's favor strongly suggests that the investigators harbored no discriminatory animus toward her.

Vega testified that Mary Saieva, Human Resources Manager for the South Region, did not say anything during her Corrective Action Meeting ("CAM") to suggest that Ms. Saieva was biased against her because she was Hispanic; moreover, Vega presented no evidence that Ms. Saieva conducted CAMs any differently for African-American, Caucasians or Asians. (Ex. B, 3-7-17 Tr. at 176-77)

Vega testified that Michael Simpkins, the Park District's Human Resources Director, made the ultimate decision to discharge her. (Ex. B, 3-7-17 Tr. at 161) Vega further confirmed that she did not know whether Mr. Simpkins was biased against her as a Hispanic. (Ex. B, 3-7-17 Tr. at 162)

Moreover, Vega presented no evidence that similarly-situated non-Hispanic employees were treated more favorably than she was. There was

5

evidence concerning Lester Rivers, an African-American park supervisor who was investigated for timesheet falsification by Officers Hester and Catlin, and then terminated. (Ex. C, 3-8-17 Tr. at 117-18; Ex. D, 3-9-17 Tr. at 100) There was testimony concerning Dina Rutledge, an African-American park supervisor who was investigated for timesheet falsification by Officer Hester, and then terminated. (Ex. D, 3-9-17 Tr. at 100-03) The only inference that can be drawn from these comparators is that the Park District discharges park supervisors who falsify their timesheets, regardless of race or national origin.

### B. Vega Has Presented No Evidence of a Policy or Custom of Discrimination Against Hispanics.

Because the Park District is a public employer, Vega must also establish that any injury resulted from a municipal custom or policy. *Vega v. Chicago Park District*, 958 F. Supp. 2d 943, 951 (N.D. Ill. 2013). The Seventh Circuit has not adopted any bright line rules as to what constitutes widespread custom or policy, except that the alleged unconstitutional conduct "must be more than one instance." *Thomas v. Cook Co. Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2009)(citations omitted). In her amended complaint, Vega alleged that the Park District had a "pattern and practice of discriminating against Hispanic female Class A and Class B Park Supervisor employees," and a "pattern and practice of discriminating against Hispanic female employees in South Region, Area 6." (Doc. 10, ¶¶ 39, 50)

Vega has presented no evidence to support her allegations. Though she had alleged that Martha Ramirez had been investigated by the Park District and forced to retire, Ms. Ramirez's trial testimony was far different. Ms. Ramirez was

6

park supervisor at Rowan Park, and testified that she was not investigated or disciplined by the Park District prior to her voluntary retirement in 2011. (Ex. B, 3-7-17 Tr. at 8, 9, 15-16) Vega offered the testimony of Elizabeth Millan, who is Hispanic and testified that she was consistently promoted throughout her 30-plus-year career with the Park District, ultimately retiring as the Park District's South Region Manager. (Ex. A, 3-6-17 Tr. at 35) Anita Gilkey testified that Maya Solis, also Hispanic, was named manager of the South Region in 2016. (Ex. A, 3-6-17 Tr. at 46, 80) Ms. Gilkey further testified that she had other Hispanic park supervisors in her area, and none had complained of discrimination, nor had they been disciplined, to her knowledge. (Ex. A, 3-6-17 Tr. at 85-86) And Vega herself testified that, prior to the Park District's discovery of her timesheet falsification, she was consistently promoted. (Ex. B, 3-7-17 at 58-59, 61) Vega's discharge for timesheet falsification, the only instance for which she presented evidence, is insufficient as a matter of law to establish liability under §§ 1981 or 1983.

**C. Vega Has No Evidence to Support Her Retaliation Claim.**

To establish her retaliation claims under Title VII or §1981, Vega must show that: (1) she engaged in a protected activity; (2) the Park District took an adverse employment action against her; and (3) there was a causal connection between the two. *Vega v. Chicago Park District*, 165 F. Supp. 3d at 702, 705. Where the decision-maker does not know of the complaint, there can be no causal connection between the complaint and any adverse employment decision. *See Hoppe v. Lewis University*, 692 F.3d 833, 842 (7th Cir. 2012).

Furthermore, a complaint made while the disciplinary process is underway cannot form the basis for a retaliation claim: "[A] track record of job performance issues prior to the employee's protected activity does not establish circumstantial evidence in support of a retaliation claim." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 221 (7th Cir. 2015); *see also Long v. Teachers' Ret. Sys. Of Ill.*, 585 F.3d 344, 354 (7th Cir. 2009)("a decline in performance before the employee engages in protected activity does not allow for an inference of retaliation").

Vega testified that she does not know whether Mr. Simpkins or Alison Perona received the letter she claims to have mailed on September 4, 2012 before she was terminated six days later. (Ex. B, 3-7-17 Tr. at 165) In fact, she was unable to confirm that the letter was delivered to the Park District at all. (Ex. B, 3-7-17 Tr. at 166) Therefore, Vega has failed to prove a causal connection between any version of her September 4, 2012 letter[2] and her termination.

Moreover, the September 4, 2012 letter cannot serve as a protected activity supporting a retaliation claim. Witnesses repeatedly testified that the investigation of Vega's timesheet falsification began in September 2011; surveillance was completed by February 2012; the investigators met with Vega three times to flesh out the facts; and Vega attended two CAMs in July and August 2012. Vega testified that during the disciplinary process, she was never told that she would not be terminated. (Ex. B, 3-7-17 Tr. at 169-70) In fact, her union representative, Charles Harper, testified that in his opinion, during Vega's

---

[2] The version of the letter attached to Vega's amended complaint (Doc. 10, Exhibit D) is in a different font and has fewer pages from that admitted as PX 219.

CAMs it was a "foregone conclusion" that Vega would be disciplined. (Ex. E, 3-10-17 Tr. at 26) With the investigation complete and the disciplinary process well under way, Vega wrote to Mr. Simpkins and Ms. Perona, acknowledging that she was facing "discipline up to and including termination" and complaining of "harassment." (PX 219)

An employee in the midst of discipline and facing termination cannot draft a letter, run it past her attorney, and toss it in the mail to protect herself from inevitable discipline. Vega has failed to establish a causal connection between the letter and her termination, and the timing of the letter does not allow for an inference of retaliation. Moreover, Vega has not attempted to introduce evidence suggesting any sort of widespread custom or policy of retaliation sufficient to support a claim under §§ 1981 or 1983. The Park District is entitled to judgment as a matter of law on Vega's retaliation claims.

### III. CONCLUSION

WHEREFORE, the Chicago Park District asks that the Court enter judgment as a matter of law in its favor on all remaining counts of Vega's complaint.

Respectfully submitted,
/s/ Annette M. McGarry
Annette M. McGarry (#6205751)
  amm@mcgarryllc.com
Marianne C. Holzhall (#6204057)
  mch@mcgarryllc.com
McGarry & McGarry, LLC
120 North LaSalle Street, Suite 1100
Chicago, IL 60602
(312) 345-4600

Attorneys for Chicago Park District