IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LYDIA VEGA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 13 C 451 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| ) | |
| CHICAGO PARK DISTRICT, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lydia Vega filed this lawsuit in January 2013 alleging that she was discriminated and retaliated against by the Chicago Park District when she was fired in September 2012 after twenty-two years of employment. A jury trial was set, and the case was transferred to this Court in October 2016. The Court presided over the seven-day trial in March 2017, in which the jury found for plaintiff and awarded her $750,000 in compensatory damages. Before the Court are defendant's motions for judgment as a matter of law, a new trial, and remittitur pursuant to Federal Rules of Civil Procedure 50(b) and 59. For the reasons set forth below, defendant's motion for judgment as a matter of law and a new trial [225] is granted in part and denied in part and defendant's motion for remittitur [226] is granted.

**BACKGROUND**

Plaintiff, a Hispanic woman, began working for the Park District in 1990 and was promoted to Park Supervisor in 2004. *See Vega v. Chi. Park Dist.,* 165 F. Supp. 3d 693, 696 (N.D. Ill. 2016). In September 2011, plaintiff was accused of time-sheet falsification and the Park District commenced an investigation. *Id.* at 697. The investigators filed their report in March 2012 and plaintiff had a Corrective Action Meeting ("CAM") with the Park District that

July. *Id.* at 698. In September 2012, plaintiff received a disposition notice terminating her employment for time-sheet falsification. *Id.* Plaintiff appealed her termination to the Personnel Board and her termination was affirmed. *Id.* This lawsuit followed. The case went to trial on four of the seven claims that survived summary judgment, including national-origin discrimination and retaliation under 42 U.S.C. § 1981[1] and Title VII, 42 U.S.C. § 2000e. *See id.* At the close of the evidence, defendant moved for judgment as a matter of law pursuant to Rule 50(a). The Court denied that motion and the jury returned a verdict in favor of plaintiff on the discrimination claims and in favor of defendant on the retaliation claims.

## STANDARDS

"Rule 50(a) allows a district court to enter judgment against a party who has been fully heard on an issue during a jury trial but only if 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Whitehead v. Bond,* 680 F.3d 919, 925 (7th Cir. 2012) (quoting Fed. R. Civ. P. 50(a)). "Rule 50(b) allows a party to renew a denied motion for judgment as a matter of law within 28 days of an adverse jury verdict." *United States v. Funds in the Amount of One Hundred Thousand,* No. 03 C 3644, 2016 WL 3459527, at *2 (N.D. Ill. June 24, 2016). When considering a Rule 50(b) motion, the Court "construe[s] the facts strictly in favor of the party that prevailed at trial." *Schandelmeier-Bartels v. Chi. Park. Dist.,* 634 F.3d 372, 376 (7th Cir. 2011). Though "the court examines the evidence to determine whether the jury's verdict was based on that evidence, the court does not make credibility determinations or weigh the evidence." *Id.* The Court's "job is to decide whether a

---

[1] Section 1981 "does not create a private right of action against state actors." *Campbell v. Forest Pres. Dist. Cook Cty.,* 752 F.3d 665, 671 (7th Cir. 2014). Because the Park District is a municipal entity, this claim should have been brought pursuant to § 1983. *See Bunch v. Cty. of Lake,* No. 15 C 6603, 2016 WL 1011513, at *3 (N.D. Ill. Mar. 14, 2016). This issue was not raised until trial, and because the Court deemed it to be an issue of form rather than substance, plaintiff was not required to file an amended complaint relabeling her claim. The Court will refer to the municipal liability claim as the § 1983 claim to avoid confusion.

highly charitable assessment of the evidence supports the jury's verdict or if, instead, the jury was irrational to reach its conclusion." *May v. Chrysler Grp. LLC,* 716 F.3d 963, 971 (7th Cir. 2013). "Because the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion." *Passananti v. Cook Cty.,* 689 F.3d 655, 660 (7th Cir. 2012).

Under Rule 59, "[a] new trial may be granted if the verdict is against the clear weight of the evidence or the trial was unfair to the moving party." *Whitehead,* 680 F.3d at 927. "A new trial should be granted, however, 'only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned.'" *Chi. Import, Inc. v. Am. States Ins. Co.,* No. 09 CV 2885, 2016 WL 4366494, at *4 (N.D. Ill. Aug. 16, 2016) (quoting *Whitehead,* 680 F.3d at 928). "A new trial is warranted only if the error has a substantial and injurious effect or influence on the determination of a jury, and the result is inconsistent with substantial justice." *Cerabio LLC v. Wright Med. Tech., Inc.,* 410 F.3d 981, 994 (7th Cir. 2005) (internal citation omitted).

When "evaluating whether a remittitur of the jury's compensatory damages award is appropriate[,]" the Court should consider "'(1) whether the award is monstrously excessive; (2) whether there is no rational connection between the award and the evidence; and (3) whether the award is roughly comparable to awards made in similar cases.'" *Montano v. Atilano,* No. 97 C 8035, 2011 WL 4540737, at *3 (N.D. Ill. Sept. 29, 2011) (quoting *Thompson v. Mem'l Hosp. of Carbondale,* 625 F.3d 394, 408 (7th Cir. 2010)). "The 'monstrously excessive inquiry' is 'simply . . . another way of asking whether there is a rational connection between the award and the evidence.'" *Stragapede v. City of Evanston,* No. 12 C 8879, 2016 WL 278854, at *10 (N.D. Ill. Jan. 22, 2016) (quoting *Harvey v. Office of Banks & Real Estate,* 377 F.3d 689, 714 (7th Cir.

2004)).  When considering such a motion, "the jury's verdict must be given 'proper deference.'" *Chi. Import,* 2016 WL 4366494, at *11 (quoting *Farfaras v. Citizens Bank & Trust of Chi.,* 443 F.3d 558, 566 (7th Cir. 2006)).

## DISCUSSION

### **Judgment as a Matter of Law**

Defendant argues that plaintiff failed to establish that the Park District had a widespread practice of discriminating against its Hispanic employees or that a policymaker discriminated against plaintiff when it fired her, a required showing for municipal entities under § 1983. (Def.'s Mot. at 2-3.)  Defendant further contends that plaintiff failed to produce evidence that would allow a reasonable juror to conclude that she was discriminated against under § 1983 or Title VII.  (*Id.* at 3-9.)  Plaintiff counters that the Court should strike defendant's argument that plaintiff failed to identify a discriminatory policymaker because that argument was not advanced in defendant's preverdict motion.  (Pl.'s Resp. at 4.)  Plaintiff also argues that she introduced evidence that the Park District had a practice of discrimination against Hispanic employees on which the jury relied when finding against defendant on the § 1983 claim.  (*Id.* 5-8.)  Finally, plaintiff contends she presented sufficient evidence for the jury to find that defendant discriminated against her because of her ethnicity.  (*Id.* at 8-10.)  Defendant replies that its Rule 50(a) motion included a section on plaintiff's failure to present evidence of a Park District practice of discrimination towards Hispanics.  (Def.'s Reply at 4.)  Defendant further argues that the jury must have ignored the jury instructions directing them to identify a policymaker because plaintiff presented no evidence of such an individual.  (*Id.* at 5.)  Defendant again asserts that the jury ignored the instructions and made improper inferences when it found that plaintiff was discriminated against because no evidence of any discrimination was presented.  (*Id.* at 7-13.)

4

**Municipal Liability**

"A . . . municipality may be found liable under § 1983 when it violates constitutional rights via an official policy or custom." *Wragg v. Vill. of Thornton,* 604 F.3d 464, 467 (7th Cir. 2010). "To establish an official policy or custom, a plaintiff must show that his constitutional injury was caused 'by (1) the enforcement of an express policy, . . . (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority.'" *Id.* (quoting *Latuszkin v. City of Chi.,* 250 F.3d 502, 504 (7th Cir. 2001)).[2] Accordingly, in order for the jury to find for plaintiff on the § 1983 claim, it had to be presented with evidence that one of those three circumstances[3] caused her termination. The jury heard testimony that from 2005 (when plaintiff was a park supervisor) to September 2012 (the date of plaintiff's termination), there were 90 to 95 Caucasian park supervisors, 60 to 65 African American park supervisors, and 17 Hispanic park supervisors. (Pl.'s Resp. Exs. 2-4.) The jury also heard testimony that out of those groups during that time period, no Caucasian park supervisors were terminated, three African American park supervisors were terminated (five percent), and three Hispanic park supervisors were terminated (seventeen percent). (*Id.* Ex. 4 at 156 ll. 6-16.) There was also testimony that in 2011, the year before

---

[2] Defendant's Rule 50(a) motion asserted that plaintiff had not presented any "evidence that the Park District has a practice of discriminating against Hispanics that is so widespread and pervasive that it rises to the level of unwritten policy." (Def.'s Rule 50(a) Mot. at 2.) Defendant's Rule 50(b) motion asserts that plaintiff "did not present any evidence of a policymaker" or any "evidence suggesting that discrimination against Hispanics was a widespread, permanent practice[.]" (Def.'s Rule 50(b) Mot. at 2, 3.) Because plaintiff could have succeeded on the § 1983 claim by presenting evidence that her injury was caused by a policymaker *or* a widespread practice, the Court finds that defendant sufficiently raised its objection to this claim in its Rule 50(a) motion and has reasserted it in its Rule 50(b) motion. Accordingly, the Court declines to strike defendant's argument as plaintiff requests.

[3] Contrary to defendant's insistence, plaintiff was not required to identify a policymaker in order to prevail on her § 1983 claim. *See Bd. of Cty. Comm'rs of Bryan Cty. v. Brown,* 520 U.S. 397, 404 (1997) ("[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.").

plaintiff was terminated, full-time employees at the Park District were made up of the following percentages: thirty-eight percent Caucasian, thirty-seven percent African American, twenty percent Hispanic, and five percent other. (*Id.* Ex. 11.) Plaintiff also introduced evidence and testimony that non-Hispanic employees were treated more favorably than plaintiff in similar disciplinary scenarios for time-sheet falsification. (*Id.* Exs. 14-17; 21-22.)

The jury was instructed as follows on the municipal liability claim:

> If you find that plaintiff proved by a preponderance of the evidence that she was terminated because of her Hispanic ethnicity, you must consider whether defendant's discriminatory conduct was the result of its official policy. To succeed on this claim, plaintiff must prove by a preponderance of the evidence that the discriminatory conduct causing her termination was a result of defendant's official policy. When I use the term 'official policy,' I mean: A custom of discrimination against Hispanic employees that is persistent and widespread, so that it is defendant's standard operating procedure. A persistent and widespread pattern may be a custom even if defendant has not formally approved it, so long as plaintiff proves that a policy-making official knew of the pattern and allowed it to continue. This includes a situation where a policy-making official must have known about a subordinate's actions or failures to act by virtue of the policy-making official's position. If you find that plaintiff has proved this by a preponderance of the evidence, then you must find for plaintiff. However, if you find that plaintiff did not prove this by a preponderance of the evidence, then you must find for defendant.

(*See* Jury Instructions at 21, dkt. 217 (adapted from Seventh Circuit Pattern Civil Jury Instructions 7.19 and 7.20).) Neither side objected to this instruction at trial or raised an objection to it in their briefs on the motions currently before the Court. The instruction for municipal liability, as given, required plaintiff to prove that a policymaker knew of the pattern of discrimination against Hispanic employees and allowed it to continue. Plaintiff presented no such evidence. Plaintiff presented evidence of the leadership structure and racial makeup at the Park District, evidence that human resources had discretion over whether and how to discipline employees, evidence that the human resources manager for the South Region (Mary Saieva) had an accusatory attitude towards plaintiff, evidence that Saieva relied on plaintiff's statements and

6

credibility at the CAM and the report of investigation when recommending plaintiff's termination,[4] and evidence that at the time plaintiff was fired, there were no Hispanic human resources managers or investigators. (Pl.'s Resp. Ex. 1; Mar. 10, 2017 Tr. at 26 l. 4-27 l. 8; Mar. 13, 2017 Tr. at 95 l. 16-96 l. 12, 97 ll. 4-11, 98 l. 8-101 l. 15, 109 ll. 1-9, 112 ll. 1-6, 113 l. 14-114 l. 3.)[5] Even if the jury concluded that the evidence demonstrated that the Park District had a widespread practice of discriminating against Hispanic employees, plaintiff presented no evidence at trial[6] nor does she argue now that a policymaker[7] was aware of the widespread practice and allowed it to continue, as the given jury instruction required. Accordingly, the Court grants defendant's motion for judgment as a matter of law on the municipal liability claim. *See May,* 716 F.3d at 974-75 (upholding the district court's grant of defendant's motion for judgment as a matter of law stating that "the evidence [is] simply insufficient to support a finding that [defendant]" violated plaintiff's rights).

**Title VII**

In order to prevail on her Title VII discrimination claim, plaintiff had to present evidence that would allow a reasonable juror to conclude that she "would have kept [her] job if [she] had a different ethnicity, and everything else had remained the same." *Ortiz v. Werner Enters., Inc.,* 834 F.3d 760, 764 (7th Cir. 2016). Plaintiff presented ample evidence that she exceeded her

---

[4] Michael Simpkins, the Director of Human Resources, terminated plaintiff. Simpkins testified that he accepted Saieva's recommendation to do so. (Mar. 13, 2017 Tr. at 99 ll. 15-23.)

[5] The Court cites to its copies of trial transcripts (that were ordered and delivered to both parties) because the parties have submitted only excerpts of those transcripts rather than the transcripts in their entirety.

[6] The Court's conclusion is based on its review of the trial excerpts ordered by the parties.

[7] Plaintiff seems to be asserting that the Park District policymakers include the board of commissioners, the ethics office, audit department, office of the inspector general, office of the secretary, and the Park District CEO, chief administrator, general counsel, chief operating officer, and chief of staff. (Pl.'s Resp. at 4; Ex. 1.)

employer's performance expectations and had no prior disciplinary infractions. (Pl.'s Resp. Exs. 23-31.) The jury also heard testimony that defendant's investigators were hostile towards plaintiff and that the Park District did not consult with plaintiff's supervisors or provide her with "progressive discipline." (*Id.* Exs. 34-35, 38-39.) That evidence and testimony, coupled with the above-cited evidence that non-Hispanic employees were treated more favorably than plaintiff in disciplinary proceedings for time-sheet falsification, was enough for a jury to find in plaintiff's favor.

In its motion and reply brief, defendant argues that plaintiff presented no evidence that anyone involved in her investigation had discriminatory intent, that hostility does not constitute discrimination, and that there was no evidence that non-Hispanic employees were treated more favorably than plaintiff. (Def.'s Mot at 4-9; Def.'s Reply 7-13.) The Court disagrees. As discussed above, the jury was presented with evidence that non-Hispanic employees were treated more favorably than plaintiff. (*See* Pl.'s Resp. Exs. 14-17; 21-23.) Further, the jury was not instructed[8] about how it should consider any hostility plaintiff experienced, nor was it instructed that it had to find that anyone acted with discriminatory intent in order to find for plaintiff on the Title VII claim. The Court presumes the jury followed the instruction as given and that its

---

[8] The jury was instructed as follows on the Title VII claim: "Plaintiff claims that she was terminated by defendant because of her Hispanic ethnicity. To succeed on this claim, plaintiff must prove by a preponderance of the evidence that she was terminated by defendant because of her Hispanic ethnicity. To determine that plaintiff was terminated because of her Hispanic ethnicity, you must decide that defendant would not have terminated plaintiff had she been non-Hispanic but everything else had been the same. If you find that plaintiff has proved this by the preponderance of the evidence, then you must find for plaintiff. However, if you find that plaintiff did not prove this by a preponderance of the evidence, you must find for defendant." (*See* Jury Instructions at 20 (adapted from Seventh Circuit Pattern Civil Jury Instruction 3.01).) The jury was also instructed as follows: "In deciding plaintiff's claim, you should not concern yourselves with whether defendant's actions were wise, reasonable, or fair. Rather your concern is only whether plaintiff has proved that defendant terminated her because of her Hispanic ethnicity or in retaliation for complaining about discrimination." (*See id.* at 23 (quoting Seventh Circuit Pattern Civil Jury Instruction 3.07).) Neither side objected to these instructions at trial, nor do they object to them in the motions currently before the Court.

verdict represents proper inferences based on the evidence. *See Ruiz-Cortez v. Lewellen,* Case No. 11 C 1420, 2017 WL 2080300, at *14 (N.D. Ill. May 15, 2017) ("Juries are presumed to follow their instructions.") (citing *Jones v. Lincoln Elec. Co.,* 188 F.3d 709, 732 (7th Cir. 1999)). For these reasons, the Court denies defendant's motion for judgment as a matter of law as to the Title VII claim. *See Smith v. Farmstand,* No. 11 CV 9147, 2016 WL 5912886, at *5-8 (N.D. Ill. Oct. 11, 2016) (denying defendants' motion for judgment as a matter of law when plaintiff prevailed on Title VII and § 1981 claims at trial and using the standard that required plaintiff to "present evidence that, when considered as a whole, would allow a reasonable factfinder to conclude that his [race/protected activity] caused the adverse employment action") (citing *Ortiz,* 834 F.3d at 764).

### **New Trial**

Next, defendant contends that the jury's verdict was against the manifest weight of the evidence and that the Court made several evidentiary errors that deprived the Park District of a fair trial. (Def.'s Mot. at 10.) Specifically, defendant contends that the Court erred when it: 1) allowed plaintiff to play video "snippets" of the investigation; 2) excluded the administrative officer's findings; 3) took judicial notice of 2010 census data and allowed questioning about the ethnicity of Park District department heads; and 4) excluded evidence of plaintiff's counsel's February 2012 phone call to the Park District. (*Id.* at 10-15.) Plaintiff argues that defendant recycles old arguments and that the Court did not err in its evidentiary rulings. (Pl.'s Resp. at 12-13.) Defendant replies that plaintiff does not substantively respond to its arguments and so the Court should grant its motion for a new trial as unopposed. (Def.'s Reply at 14.)

9

**Manifest Weight of the Evidence**

Defendant's reliance on its previously-asserted arguments in its motion for a new trial does not persuade the Court that the jury's verdict was against the manifest weight of the evidence. The Court has granted defendant's motion for judgment as a matter of law on the municipal liability claim, and denied the same motion as to the Title VII claim, finding that plaintiff introduced sufficient evidence for a jury to find in her favor. Accordingly, defendant's motion for a new trial is moot as to the municipal liability claim and denied as to the Title VII claim. *See Martinez v. City of Chi.,* Case No. 14 CV 369, 2017 WL 1178233, at *12 (N.D. Ill. Mar. 30, 2017) (denying motion for new trial when plaintiff merely incorporated the arguments it made in its Rule 50 motion and stating "[s]imply asserting that the verdict was against the evidence and leaving it up to the Court to mine through a movant's brief to fashion an argument in support of that request does not cut it[]").

**Evidentiary Rulings**

"Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial . . . and the court must disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61. "Evidentiary errors satisfy this standard only if there is a significant chance that they affected the outcome of the trial." *Griffin v. Bell,* 694 F.3d 817, 827 (7th Cir. 2012).

*Investigation Videos*

Defendant first argues that the Court erred when it denied the Park District's motion in limine to bar videos of its investigation of plaintiff contending the videos were untimely, altered, irrelevant, misleading, and prejudicial. Defendant first raised this issue in its motion in limine to exclude evidence of investigation of plaintiff. (*See* Def.'s Mot. in Limine, dkt. 189.) At the

10

pretrial conference on February 22, 2017, the Court denied defendant's motion as overly broad. (*See* Feb. 22, 2017 Tr. at 140 ll. 19-20.) As with most issues in this case, the videos became hotly contested. At trial, defendant again objected to the videos because they had been altered. (See Mar. 8, 2017 Tr. at 4 l. 21-5 l. 1.) Plaintiff made clear that she received the videos from the Park District and that for ease of use with the jury, she consolidated video clips from different disks onto one disk, but that she did not change the date and time of the videos.[9] (*Id.* at 5 ll. 3-18.) Accordingly, defendant's contention that their own videos[10] were untimely and altered is unpersuasive.[11] At sidebar, the Court overruled defendant's objection that the videos were prejudicial and irrelevant, and directed defendant to bring out any alleged irrelevance on cross-examination. (*Id*. at 7 ll. 3-25.) Defendant now argues that the videos are irrelevant and prejudicial, particularly any of the audio[12] that accompanied the video. The Court did not err when it allowed plaintiff to show the video clips to the jury. And even if it did, the Court is not persuaded that the error prejudiced defendant or affected the outcome of the trial. *See Griffin,* 694 F.3d at 827 (affirming district court's denial of a new trial and stating "[defendant] fails to explain how this error prejudiced him in a manner that would require a new trial").

---

[9] Plaintiff also indicated that some of the videos the Park District produced did not have timestamps. (Mar. 8, 2017 Tr. at 207 ll. 2-10.)

[10] The Court noted that defendant appeared to be "moving to bar the video that they produced, that they tendered, that they're in possession of." (Mar. 8, 2017 Tr. at 8 ll. 2-5.)

[11] Defendant also argues that the videos should be barred because they were not authenticated or moved into evidence, yet published to the jury. The Court is unpersuaded. At a sidebar during trial, defendant represented that they would not object if certain videos were shown to the jury. (*See* Mar. 8, 2017 Tr. at 205 ll. 1-6.) To attempt to solve the authentication objection, the Court directed defendant to bring the original disks (rather than the reproduction that had already been produced) to court. (*See* Mar. 9, 2017 Tr. at 3 ll. 8-20.) Those disks did not arrive. *See* Fed. R. Evid. 1003 ("A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate.").

[12] Plaintiff requested to play the audio on two dates. (*See* Mar. 8, 2017 Tr. at 208 ll. 16-22.) Defendant appears to have objected to only one of those dates. (*See id.* at 209 ll. 14-16.)

*Findings at Administrative Hearing*

Next, defendant argues that the Court erred when it excluded the administrative hearing officer's findings that allegedly contradicted plaintiff's criticism of the investigation. This issue was first addressed in plaintiff's motion in limine to bar that evidence and defendant's corresponding motion in limine to admit it. (*See* Pl.'s Mot. in Limine, dkt. 194 at 10; Def.'s Mot. in Limine, dkt. 190.) Specifically, plaintiff sought to bar the evidence that she requested a hearing and that a hearing was held, the amended specification of charges that were submitted, testimony from the proceedings, and the hearing officer's findings, arguing that this evidence was irrelevant and prejudicial. (Pl.'s Mot. in Limine at 10-11.) At the March 2, 2017 pretrial conference, the Court granted plaintiff's motion in part, and barred only the administrative officer's findings under Federal Rule of Evidence 403, to avoid sending the message to the jury "that this issue has already been decided." (Mar. 2, 2017 Tr. at 167 ll. 12-15, 169 ll. 12-17.)[13] After that ruling, defendant withdrew its motion to admit the evidence. (*Id.* at 172 l. 21-173 l. 6; dkt. 208.) The Court stands by its reasoning that admitting evidence of the administrative hearing officer's findings had the likelihood of confusing the jury. It did not err when it barred this evidence. *See Lewis v. City of Chi. Police Dep't,* 590 F.3d 427, 442 (7th Cir. 2009) (denying motion for a new trial based on alleged errors in evidentiary rulings, finding that it was not an abuse of discretion for the trial judge to exclude evidence of a prior internal investigation, and stating, "[t]he judge was persuaded that admitting either of the prior investigations in evidence would create a substantial risk that the jury would adopt the earlier conclusions[]").

---

[13] The hearing officer's findings were also addressed at the first pretrial conference on February 15, 2017. At that conference, the Court stated: "If it does come in, there is clearly a danger here of confusion and of prejudice that the jury will think that someone has already done their job for them." (Feb. 15, 2017 Tr. at 29 l. 24-30 l. 1.)

*Census Data*

Defendant also contends that the Court erred when it took judicial notice of 2010 census data and allowed plaintiff to question the Park District's human resources director about the ethnicity of 2015 Park District department heads, because that evidence and testimony was irrelevant, misleading, and prejudicial. This evidence goes to plaintiff's municipal liability claim[14] that the Park District had a widespread practice of discriminating against Hispanic employees. Because the Court has granted defendant's motion for judgment as a matter of law on this claim, it does not need to determine whether allowing this evidence and testimony was an error significant enough to warrant a new trial. *See El-Bakly v. Autozone, Inc.,* No. 04 C 2767, 2009 WL 65717, at *11-12 (N.D. Ill. Jan. 9, 2009) (not discussing whether new trial on claim was warranted because the court granted motion as a matter of law as to that claim).

*February 2012 Phone Call*

Finally, and without citing any authority, defendant argues that the Court erred in granting plaintiff's motion in limine to bar evidence of plaintiff's counsel's February 28, 2012 phone call to the Park District (wherein counsel allegedly relayed plaintiff's experience of racially discriminatory treatment) because that evidence, and the reference to it in plaintiff's September 4, 2012 letter[15] (wherein she complained of race-based harassment) were relevant to

---

[14] The Court already found that there was sufficient evidence separate and apart from the census data and the ethnicity of the Park District department heads for the jury to find in favor of plaintiff on the Title VII claim. Accordingly, even if the Court erred in admitting this evidence, there is not a significant chance that the error affected the outcome of the trial. *See Smith v. Hunt*, 707 F.3d 803, 810 (7th Cir. 2013) (upholding denial of new trial when district court admitted evidence of plaintiff's heroin use at trial and stating that plaintiff was not unfairly prejudiced because defense had presented enough other evidence of plaintiff's involvement and use of narcotics).

[15] Defendant filed a motion in limine to bar the September 4, 2012 letter, which served as the bulk of plaintiff's evidence for the retaliation claims. (*See* Def.'s Mot. in Limine, dkt. 191). The Court denied that motion. (*See* dkt. 208.)

13

plaintiff's retaliation claim and her credibility. This evidence goes to plaintiff's retaliation claims, on which the jury found in favor of defendant. It is unclear why defendant would argue for a new trial on a claim on which it succeeded, so the Court considers defendant's credibility argument as it relates to the discrimination claims, on which the jury found in favor of plaintiff.

Defendant first raised this issue when it filed a motion to disqualify plaintiff's counsel as a necessary witness to testify about the February phone call. (*See* dkt. 165.) The then-presiding judge granted that motion and directed the parties to confer about a proposed stipulation, whereby plaintiff would forgo evidence of the phone call and remain as trial counsel. (*See* dkt. 168.) After the case was reassigned, this Court denied plaintiff's motion to reconsider the disqualification. (*See* dkt. 184.) Plaintiff then filed a motion in limine to exclude evidence of the phone call. (*See* Pl.'s Mot. in Limine at 11-12.) At the February 22, 2017 pretrial conference, plaintiff's counsel indicated that plaintiff was willing to accept defendant's proposed stipulation regarding the phone call, but defendant withdrew the offer to stipulate because plaintiff did not accept it when it was initially offered. (*See* Feb. 22, 2017 Tr. at 151 l. 15-152 l. 25.)[16] When the defendant refused to agree to its previously-offered stipulation, the Court granted plaintiff's motion in part, barring the substance of the phone call, but allowing the fact of the phone call to come in as evidence, eliminating the need for plaintiff's counsel to serve as a witness. (*See id.* at 154 l. 20-155 l. 1.) This ruling led the Court to order the parties to redact from the September letter the reference to the February call. (*See id.* at 155 l. 4-156 l. 19.)

The Court remains of the view that these rulings were correct, and even if they were not, there is no a significant chance the error affected the outcome of the trial. Plaintiff testified for

---

[16] At that pretrial conference, plaintiff's counsel stated: "[T]he disqualification of Ms. Simmons-Gill at this point would work extreme hardship on the plaintiff. This is yet another attempt to reach a compromise with this issue. At this point, we're willing to accept what defendant initially proposed for the sake of ensuring Ms. Simmons-Gill's continued participation in this case." (Feb. 22, 2017 Tr. at 153 ll. 20-25.)

nearly a full day. The jury had ample opportunity to weigh her credibility. Whatever minimal information the jury may have garnered about plaintiff's credibility by hearing evidence about the substance of the February phone call (and reference to it in the September letter) would not have changed the outcome of the trial on plaintiff's discrimination claims. *See Empire Bucket, Inc., v. Contractors Cargo Co.* 739 F.3d 1068, 1073 (7th Cir. 2014) ("[N]o significant chance that the minor evidentiary limitation imposed by the district court affected the outcome of the trial."). Accordingly, the Court denies defendant's motion for a new trial.

**Remittitur**

In the alternative to granting a new trial, defendant asks the Court to order a remittitur to an amount of damages that bears a rational connection to the evidence. (Def.'s Mot. at 1, 3-4.) The Park District argues that it cannot be liable for any emotional distress that occurred prior to plaintiff's termination and that the damages award is unsupported by plaintiff's pretrial disclosures. (*Id.* at 5-7.) Finally, defendant contends that an award of damages under Title VII must be capped at $300,000. (*Id.* at 7.) Plaintiff first responds by arguing that the jury's award of compensatory damages is not subject to a statutory cap because they found for plaintiff on her § 1983 claim, which does not have a cap like Title VII. (Pl.'s Resp. at 2-3.) Plaintiff further contends that the jury's award was rational and not monstrously excessive. (*Id.* at 3-13.) Defendant replies that plaintiff's vague and unsupported claims of depression, ill health, and humiliation are insufficient to establish damages. (Def.'s Reply at 2-5.) Defendant further argues that plaintiff's damages award is excessive and that if her § 1983 claim fails, so do the damages she was awarded. (*Id.* at 6-9.) Finally, defendant asks the Court to grant a remittitur to $1,000 if it denies defendant's motions for judgment as a matter of law and a new trial. (*Id.* at 9.)

**Statutory Limitation**

Because the Court has granted defendant's motion for judgment as a matter of law on plaintiff's § 1983 claim, it must impose the damages cap promulgated for awards made pursuant to Title VII, plaintiff's only remaining successful claim. *See* 42 U.S.C. § 1981a(b)(3)(D) ("The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this, shall not exceed, for each complaining party in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000."). Accordingly, the Court grants defendant's motion and reduces plaintiff's damages award to $300,000. *See Smith,* 2017 WL 3008095, at *17 (reducing $250,000 compensatory and $500,000 punitive damages awards for plaintiff's sexual harassment claim to $50,000 based on the Title VII cap that applied).

**Whether Compensatory Damages are Excessive[17]**

"An award for nonpecuniary loss can be supported . . . solely by a plaintiff's testimony about his or her emotional distress." *Tullis v. Townley Eng'g & Mfg Co., Inc.,* 243 F.3d 1058, 1068 (7th Cir. 2001). Plaintiff testified that she suffered emotional, mental, and physical distress during the last six months of her twenty-two year employment[18] with the Park District (including

---

[17] Defendant fails to mention that it, not plaintiff, introduced the $750,000 damages figure to the jury. The jury did not see the complaint, and plaintiff did not ask the jury to award her a set amount. Plaintiff's counsel suggested it was the jury's decision to determine how much plaintiff's suffering was worth. (Mar. 14, 2017 Tr. at 20 ll. 23-25.) On the other hand, during plaintiff's cross-examination, defense counsel asked plaintiff how much she was asking for in pain and suffering ("Now you are asking for $750,000."). (Mar. 7, 2017 Tr. at 196 l. 11.) Defense counsel repeated that number to the jury in closing argument ("[S]he now would like $750,000 for pain and suffering."). (Mar. 14, 2017 Tr. at 32 ll. 7-8.)

[18] The Court finds unpersuasive defendant's argument that it is not responsible for any damages prior to plaintiff's termination (i.e., for any emotional pain and suffering plaintiff endured during her

FMLA leave) and for a period of time after termination. (*See* Pl.'s Resp. Exs. 1-6, 8-11, 13-15, 17, 23, 27-34.) The jury also heard testimony that plaintiff was out of work for a year and worried about health insurance, her inability to afford medication (particularly for her diabetes), and supporting her mother. (Mar. 7, 2017 Tr. at 123 l. 18-124 l. 3, 124 l. 24-125 l. 3.) While plaintiff eventually found work after a year, that state-funded position was not renewed due to the expiration of a grant. (*Id.* at 125 ll. 4-21.) Eventually, plaintiff found a better-paying position; however, that job did not have sufficient benefits. (*Id.* at 126 ll. 1-15.) Plaintiff testified she was laid off from that job because of a lack of funding. (*Id.* at 126 l. 24-127 l. 5.) Ultimately, plaintiff enrolled in school, and at the time of trial was close to finishing her undergraduate degree. (*Id.* at 127 ll. 9-17.) While plaintiff's emotional, mental, and physical distress improved over time, the Court finds that the jury's award of damages for emotional distress was rationally related to the testimony it heard. *See Gracia v. SigmaTron Int'l, Inc.,* 842 F.3d 1010, 1023 (7th Cir. 2016) (upholding district court's decision to not reduce plaintiff's compensatory damages and stating, "[i]t was the jury's job to gauge [plaintiff's] distress and determine an appropriate amount to compensate her[]").

"Awards in other cases provide a reference point that assists the court in assessing reasonableness; they do not establish a range beyond which awards are necessarily excessive. Due to the highly fact-specific nature of Title VII cases, such comparisons are rarely dispositive." *Lampley v. Onyx Acceptance Corp.,* 340 F.3d 478, 485 (7th Cir. 2003).

---

investigation) because an internal investigation does not constitute an adverse employment action. In *Schandelmeier-Bartels v. Chicago Park District*, 634 F.3d 372, 389 (7th Cir. 2011), on which defendant relies, the court reduced a jury's damages award, in part, because "[t]he jury could not hold the Park District liable for any emotional injury [plaintiff] might have suffered as the result of witnessing" a child's aunt slap the child, which set off a series of incidents that ultimately led to plaintiff's termination. In the other case on which defendant relies, *Balderrama v. Kraft Foods North America Inc.,* 307 F. Supp. 2d 1012, 1014 (N.D. Ill. 2004), the court granted summary judgment to defendant, holding that a written warning did not constitute an adverse employment action. Both cases are distinguishable from the facts of this case, and the Court is not persuaded by them.

17

"Generally, a 'statutory cap suggests that an award of damages at the capped maximum is not outlandish.'" *Smith,* 2017 WL 3008095, at *21 (quoting *EEOC v. AutoZone,* 707 F.3d 824, 840 (7th Cir. 2013)). Accordingly, and particularly in light of the fact that defendant introduced the damages figure to the jury, the Court does not find the jury's award to be monstrously excessive, and it declines to further reduce plaintiff's damages award. *See id.* (declining to reduce a damages award below the statutory cap); *Arroyo v. Volvo Grp. N. Am., LLC,* Case No. 12 CV 6859, 2017 WL 2985649, at *4 (N.D. Ill. July 13, 2017) (reducing the jury's $2.6 million compensatory damages award to the statutory cap of $300,000); *Gracia v. Sigmatron Int'l, Inc.,* 102 F. Supp. 3d 983, 992 (N.D. Ill. 2015) (declining to "reduce . . . compensatory damages any further than required by the statutory cap").

## CONCLUSION

For the aforementioned reasons, defendant's motion for judgment as a matter of law and a new trial [225] is granted in part and denied in part. The motion for judgment as a matter of law is granted as to the municipal liability claim and denied as to the Title VII claim; the motion for a new trial is denied. Defendant's motion for remittitur [226] is granted and the Court reduces plaintiff's damages award to $300,000. A status hearing is set for August 17, 2017 at 9:30 a.m. to discuss the back pay and front pay proceedings.

**SO ORDERED.**  ENTERED: July 31, 2017

_____
**JORGE L. ALONSO**
**United States District Judge**