IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LYDIA VEGA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 13 cv 00451 |
| | ) |
| CHICAGO PARK DISTRICT, | ) Judge Jorge L. Alonso |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF HER MOTION FOR FEES AND COSTS**

Plaintiff, Lydia Vega ("Plaintiff" or "Vega") by her counsel, Offices of Catherine Simmons-Gill, LLC and The Wood Law Office, LLC, as her brief in support of her Motion for Fees and Costs ("Motion") seeking reasonable attorneys' fees and costs pursuant to 42 U.S.C. §2000e-5(k), Fed. R. Civ. P. 54(d) and Local Rules 54.1 and 54.3, states as follows:

**INTRODUCTION**

Ignoring the strong presumption that Plaintiff's lodestar is the appropriate reasonable fee, Defendant Chicago Park District ("Defendant" or "CPD") objected to 96% of Plaintiff's requested fees and refused to engage in any meaningful compromise discussions – conduct emblematic of its approach to this litigation. Plaintiff incurred substantial fees, but doing so was necessary to overcome the strategy Defendant employed throughout the litigation (See Ex. F. CSG Dec. ¶9).

All counts in Plaintiff's Amended Complaint (ECF No. 10) challenged the same core facts: Vega's unlawful termination and Defendant's pretextual attempts to justify it. Through persistence and effort, Plaintiff filed or responded to multiple motions and trial objections to present information the jury ultimately relied on in making Plaintiff the prevailing party. As this Court knows, Plaintiff obtained a substantial verdict and important equitable relief.

1

Defendant now employs the same failed strategy in hopes of minimizing the attorneys' fees and costs it must pay Plaintiff. Defendant claims Plaintiff's time was excessive in hopes the Court will ignore Defendant's conduct that necessitated Plaintiff spending those hours. Defendant argues Plaintiff's counsel's current rates are too high without any support in applicable law for the rates it claims should be awarded. Frequently devoid of any basis in fact, Defendant's wrote boilerplate objections to Plaintiff's time entries lack merit. This Court should not punish Plaintiff's counsel for successfully weathering the litigation storm Defendant created. Rather, pursuant to applicable law, this Court should award Plaintiff the $1,073,901.25 in fees and $34,051.74 for expenses and costs that Plaintiff seeks.

## PROCEDURAL HISTORY

### A. Pre-November 2016 Proceedings

For the Court's benefit, Plaintiff briefly describes the litigation prior to this Court's assignment. Beginning in 2012, after Defendant's unlawful termination of Plaintiff in September, Plaintiff filed charges with the Equal Employment Opportunity Commission, the Illinois Department of Human Rights and the Chicago Commission on Human Rights. After exhausting administrative prerequisites to litigation, Plaintiff filed this action in January 2013. Since then, through her lead counsel, Plaintiff:

1. defeated two Motions to Dismiss (ECF Nos. 7 and 17);

2. prevailed on several Motions to Compel discovery necessary to obtain, among other things, information regarding: (a) comparators; (b) salaries and benefits; (c) other complaints of discrimination; (d) demographic information regarding park supervisors; (e) investigation videotapes; and (f) a Rule 30(b)(6) deposition (ECF Nos. 51, 55, 56, 58, 85, 89 and 93; Order ECF No. 79);

3. reviewed over 12,000 pages of documents produced by Defendant – 19 boxes per Defendant's counsel's own description (Ex. E, Def. Inv., 10/21/16 entry at 0008);

4. reviewed and cataloged hundreds of hours of videotape surveillance on 35 discs, not

2

   organized by videographer or date of surveillance;[1]

5. defended Plaintiff's deposition and deposed nine (9) individual witnesses, all but two of whom testified at trial;[2]

6. deposed Defendant on eight (8) topics through a multi-day Rule 30(b)(6) deposition for which Defendant designated 20 and produced 12 witnesses, each of whom testified about portions of multiple different subtopics created by Defendant (ECF No. 115-5, 115-6);

7. defeated Defendant's Motion for Summary Judgment on four of five counts briefed by responding to Defendant's 40-page brief and 182 uncontested material facts (totaling 50 pages) (ECF Nos. 126, 127); and,

8. prepared for two different settlement conferences and attended one as *requested by Defendant's current counsel McGarry* in May 2016.[3]

### B. Post-November 2016 Proceedings

After ultimately defeating Defendant's motion to disqualify lead counsel, Plaintiff relied upon the information amassed during discovery in both trials before this Court. Plaintiff reminds the Court only that, due to Defendant's strategy, she had to present evidence to prove facts Defendant admitted in its amended answer filed by current counsel (ECF No. 158), in Defendant's Rule 56.1(a)(3) Statement (ECF No.127), in Defendant's Responses to Requests for Admission (ECF No. 131, Ex E), set forth in state law (ECF No. 272-1), and/or established by Defendant's collective bargaining agreement (PX Trial Exhibits 8 and 250).

### C. Exhaustion of Meet And Confer Regarding Fees And Costs

After receiving the Court's order granting Plaintiff virtually all of the equitable relief Plaintiff sought, Plaintiff presented her invoice for fees through November 15, 2018. (Ex. A, Pl.

---

[1] Plaintiff herself expended over 240 hours reviewing these videos at no charge to Defendant.
[2] Lydia Payne was deposed for less than 1 hour. Shreece Childs (whose complaints purportedly led to the investigation of Plaintiff) was designated as a trial witness but did not testify.
[3] The parties prepared for mediation before Judge Zagel, but then were assigned to two different magistrates (and had to comply with more demanding settlement conference standing orders). Defendant's *only* offer for resolution ($10,000) was in its pre-settlement conference letter. Defendant later made an Offer of Judgment of $30,000. (Ex. K, CSG Supp. Dec. ¶8)

Inv.). In the invoice, Plaintiff voluntarily reduced fees by over 200 hours, indicated as "no charge," including fees for Ms. Coppola's attendance at the first trial and all internal conferences among attorneys. In presenting its objections (Ex. B, Def. Obj.), Defendant would not propose an overall compromise for Plaintiff's fees, propose a compromise for time entries in any of the 49 categories of work Plaintiff presented nor accept Plaintiff's proposed compromises for partial reductions on some entries. (CSG Supp. Dec. ¶ 7.) Nonetheless, based on Defendant's individualized objections, Plaintiff further reduced her fees as explained in her motion and the Joint Statement (Ex. C).

## ARGUMENT

As a prevailing party, Title VII (42 U.S. C §2000e-5(k)) permits this Court to award reasonable attorneys' fees and expenses. *Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983); *Riverside v. Rivera*, 477 U.S. 561, 578 (1986). Attorney fee awards must "encourage the bringing of meritorious civil rights claims which might otherwise be abandoned" because of the costs of hiring counsel. *Id.* at 578.[4] As explained in Plaintiff's Motion, the "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley,* 461 U.S. at 433. Plaintiff's fees must be reasonable, but there is a "strong presumption" that the lodestar is reasonable. *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1669 (2010); *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012).

## I. Plaintiff Should Be Awarded Her Full Lodestar.

### A. Plaintiff's Hourly Rates Are Reasonable.

The appropriate hourly rate for a fee award is "the rate that lawyers of similar ability and

---

[4] Other fee shifting statutes, including 42 U.S.C. § 1988, typically receive consistent treatment.

4

experience in their community normally charge their paying clients for the type of work in question" *Harper v. City of Chi. Heights*, 223 F.3d 593, 604 (7th Cir. 2000) (internal quotes omitted); *see also Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Plaintiff seeks to recover the following current hourly rates for attorneys, paralegals and administrative assistants who helped her prevail:

| **Timekeeper** | **Rates** office/court | **Current Experience Level** (Year admitted) | **Time on Matter** |
|---|---|---|---|
| C. Simmons-Gill (attorney) | $425/$450 | (1975) 44 years of federal court litigation; 22 years of employment litigation | 2012-present |
| M. Douglas (attorney) | $250/$275 | (2011) 8 years of litigation experience; 3 years of employment litigation | 2014-2017 |
| B. Coppola (clerk) | $100 | (2013) 3 years of employment litigation | 1/13-3/14 |
| B. Coppola (attorney) | $225/$250 | See above | 11/16-4/18 |
| R. Drath (attorney) | $200 | (2013) 5½ years of federal court litigation; 2 years of employment litigation | 8/13-7/14 |
| R. Estes (attorney) | $260 | (2013) 5½ years employment discrimination litigation | February/March 2017 |
| K. Aurand (attorney billed as senior paralegal) | $150/$175 | (2015) 3 years litigation experience2-8 | February/March 2017 (trial) |
| P. Fraczek (attorney billed as senior paralegal) | $150 | (2013) 5½ years part litigation experience | October 2015 (MSJ cite checking) |
| G. Gorgo (paralegal) | $100 | advanced degree in English; 7 years experience in digesting | 2015-2016 (deposition digests) |
| M. Rosario (paralegal) | $75 | 10 years experience | 2013-present |

Although summarized above, Vega's evidence describes the credentials of each of these billers in detail and three recent retainer agreements for employment matters

5

demonstrating an hourly rate of $450. (Ex. F, CSG Dec. ¶¶ 2-8,10,12-19, Ex. 1). These rates are also supported as reasonable for this community by other practitioners working in Chicago handling employment discrimination matters – who attest the rates for Catherine Simmons-Gill are below market and the rates for the other providers are at or below market. (Ex. G, Graber Dec. ¶¶10-18; Ex H, Lee Dec. ¶16; Ex. I, Potter Dec. ¶¶15-16, 18-19). These declarations provide "ample evidence" that the rates charged by Plaintiff's counsel are comparable to or lower than those charged by lawyers in the community of "reasonably comparable skill, experience, and reputation." *See Dupuy v. McEwen*, 648 F. Supp. 2d 1007, 1017 (N.D. Ill. 2009) (citing *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996) and *Blum v. Stenson*, 465 U.S. 886, 895 n.11, 104 S. Ct. 1541 (1984)).

In addition to being supported by evidence, Plaintiff's rates are supported by case law as reasonable. Rates comparable to those Plaintiff seeks have been routinely approved in employment discrimination/civil rights litigation in this community. *See, e.g., Masud v. Rohr-Grove Motors, Inc.*, 13-cv-6419 (N.D. Ill. August 14, 2018) (ECF No. 227, at pp. 13, 15) (awarding hourly rates of $475 to an attorney with 41 years mixed litigation experience); *see also Washington v. Office of the State Appellate Def.*, No. 12 CV 8533, 2016 WL 5233563, at *11 (N.D. Ill. Sept. 22, 2016) (in 2016, awarding $600/hour to an attorney with 44 years' experience, $460 to an attorney with 14 years, $300 to attorney with 10 years, $255 to an attorney with 3 years, and $100 to a paralegal); *O'Sullivan v. City of Chi.*, 484 F. Supp. 2d 829, 838-9 (N.D. Ill. 2007) (noting a 2006 National Law Journal sample showing that fourth-year associates rates at large firms were up to $325).

Over 13 years ago, in *Entm't Software Ass'n v. Blagojevich*, No. 05 C 4265, 2006 U.S. Dist. LEXIS 93638, 2006 WL 3694851 (N.D. Ill. Aug. 9, 2006), the following rates were approved as reasonable: $585 to an attorney with 27 years' of experience, $425 to an attorney with 10 years, $340 to an attorney with 6 years. *Id.* at *2-5. Having provided factual and legal

support for her rates, the burden shifts to Defendant to defend and support the much lower rates it proposes. But, during the meet and confer, Defendant provided no information challenging the rates of most of Vega's time-keepers (only outdated information for Simmons-Gill). Defendant will not and cannot establish a good reason why lower rates are required. Accordingly, the Court should find Plaintiff's proposed rates reasonable.

### B. The Time Plaintiff's Counsel Spent Was Reasonable.

Like Plaintiff's hourly rates, the time Plaintiff's counsel spent on the matter was reasonable, particularly in light of Defendant's litigation strategy. In pursuing these claims, Plaintiff faced a "blunderbuss" of failed tactics by the Defendant. *Cuff v. Trans States Holdings, Inc.*, 768 F.3d 605, 610 (7th Cir. 2014). Under similar circumstances, the Seventh Circuit explained that Defendant cannot avoid the consequences of its approach to litigation:

> A business that can establish a reputation for intransigence may end up not paying damages and not having to defend all that often either, because if a prevailing party who litigates to victory gets only a small award of fees the next would-be victim will see that litigation is futile and the employer won't have to repeat the costly defense. That's why we held in BCS Services, Inc. v. BG Investments, Inc., 728 F.3d 633 (7th Cir. 2013), that hyperaggressive defendants who drive up the expense of litigation must pay the full costs, even if legal fees seem excessive in retrospect.

*Id.* at 611.

Plaintiff's time spent was not excessive; it was necessary as a result of the strategy Defendant employed in the hope of defeating Plaintiff. Defendant set up numerous futile roadblocks, as this Court witnessed at two trials. The supporting declarations from Lee, Graber and Potter – all highly experienced plaintiff's employment counsel – confirm the amounts Plaintiff billed are reasonable in light of success of Plaintiff and Defendant's tactics. (Ex. G, Graber Dec. ¶¶19-20; Ex. H, Lee Dec. ¶¶17-19; Ex. I, Potter Dec. ¶¶17,19). Defendant cannot avoid the consequences of its approach without potentially undermining the important

7

public policy Title VII's fee shifting provision enforces.

Generally speaking, Defendant claims Plaintiff's time should be reduced because Plaintiff did not prevail on all seven original counts. But the law does not require that level of success to award Plaintiff's lodestar. Plaintiff can and should recover her entire lodestar even though Plaintiff did not prevail on all counts. *See Gautreaux v. Chi. Hous. Auth.*, 491 F.3d 649, 661-62 (7th Cir. 2007) ("So long as the plaintiffs' lawyers' activities are factually related to issues on which the plaintiffs have achieved [success] and the work was reasonably calculated to result in relief, the district court may grant attorneys' fees"); *see also Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988).

In determining success, courts consider the litigation as a whole and whether plaintiff's multiple claims for relief are based on a common core of facts. *See Wells v. City of Chi.*, 925 F. Supp. 2d 1036, 1042-43 (N.D. Ill. 2013) (citing *Moriarty v. Svec*, 233 F.3d 955, 964 (7th Cir. 2000)). Here, like the Plaintiff in *Cuff*, all Vega's counts (including those on which she did not prevail) were based on the common core of facts surrounding Defendant's unlawful employment termination and the investigation Defendant concocted to justify it. Given the substantive law applicable to the claims challenging the termination (the claim on which Plaintiff prevailed), Plaintiff necessarily was required to evaluate and challenge Defendant's pre-termination investigation. It is irrelevant that Plaintiff did not win every motion or prevail on every theory because all Plaintiff's counts, including the retaliation counts, involved the same core of facts.

As the Seventh Circuit has explained, the mere fact "[t]hat the lawyers spent some time in blind alleys is irrelevant; this is inevitable, and the hourly rate reflects the fact that not all time is equally productive." *Kurowski v. Krajewski*, 848 F.2d 767, 776 (7th Cir. 1988). Failing to prove every count related to the contention "merely means that the lawyers aimed higher than they hit,

which, we have stated, is a sound tactic" *Bankston v. Illinois*, 60 F.3d 1249, 1256 (7th Cir. 1995). Any time spent pursuing claims with a common factual nexus, as Plaintiff did here, is compensable. *Hensley,* 461 U.S. at 440; *Soleau v. Ill. DOT*, No. 09 C 3582, 2011 WL 2415008 (N.D. Ill. June 9, 2011) at *6. Regardless, through the meet and confer process, Plaintiff already eliminated time entries solely related to unsuccessful counts. (Ex. K, CSG Supp. Dec. ¶ 6, Ex. 1).

### C. Defendant's Objections To Plaintiff's Time Entries Lack Merit.

Defendant uses five words (clerical, duplicative, excessive, unrelated and vague) to object to Plaintiff's time entries. (Ex. B, Def. Obj., p. 1). Objections like Defendant's, which lack "particularity and clarity" without further basis or explanation, have been frowned upon by courts. *Delgado v. Mak,* No. 06 C 3757, 2009 WL 211862, at *4 (N.D.Ill. Jan.29, 2009) (citing *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 776 F.2d 646, 664 (7th Cir. 1985)).[5]

In using the same rote, boilerplate objections or some combination of them for virtually all of Plaintiff's entries, Defendant foists the work of sorting them out upon the Court. But a line-by-line review of Plaintiff's time entries by this Court is not required. *See Divane v. Krull Elec. Co.*, 319 F.3d 307, 317 (7th Cir. 2003); *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205,* 90 F.3d 1307, 1313 (7th Cir.1996). That is particularly true here, because none of Defendant's objections provide grounds to reduce Plaintiff's lodestar. Defendant complains Plaintiff overstaffed her case by having timekeepers duplicating work or overbilled the case by not having lower-cost billers perform services or billing for purely administrative tasks. In fact, Plaintiff had only two attorneys working on the matter during most of the litigation, except for the

---

[5] Defendant's factual basis for objection to entries before mid 2016 is questionable; current counsel was not retained until May 2016 and conceded they did not consult Defendant's former lawyer, Nelson Brown, about prior entries.

limited period from January to May 2017.[6] Plaintiff made extensive efforts to employ the services of associates and paralegals when possible, billed attorneys at paralegal rates where appropriate, and did not bill for any time spent getting up to speed on the matter.

Defendant's "clerical" objections, after Plaintiff's voluntary reductions are baseless and examples show why. For instance, Defendant contends selection of trial exhibits by trial counsel is clerical. (Ex. B., Def. Obj., CSG entries 12/9/16-12/11/16 and 12/13/16). It takes the same view of Matt Douglas' attendance at the trial as second chair (*Id.*, MD entries 3/6/17-3/10/17, 3/13/17, 3/14/17). Defendant views all work by Kyle Aurand (a lawyer billed as a senior paralegal) in preparing trial exhibits and deposition excerpts to be used during examinations for impeachment each day at trial as clerical. (*Id.*, KA entries 3/5/17- 3/10/17, 3/13/17, 3/14/17). These are not "clerical" activities as described in applicable authority. *See, e.g., Delgado v. Vill. of Rosemont,* Case No. 03 C 7050*,* 2006 WL 3147695, at \*2 (N.D. Ill. Oct. 31, 2006) (identifying clerical tasks); *see also Lee v. City of Chi.*, No. 07 C 2035, 2008 WL 5377798, at \*3 (N.D. Ill. Dec. 18, 2008) (same). Based on these decisions, Plaintiff already eliminated time entries considered clerical by indicating "no charge" or by eliminating entries during the L.R. 54.3 process. (Ex. K, CSG Supp. Dec. ¶6 and Ex.1).

Defendant also objects to innumerable entries as "vague," ignoring legal standard courts apply in assessing that issue. The Court in *Soleau* explained:

> The detail required for time entries is not a fixed standard but rather "the level of detail paying clients find satisfactory." *Delgado v. Mak,* No. 06 C 3757, 2009 WL 211862, at \*4 (N.D.Ill. Jan.29, 2009) (Dow, J.) (internal quotation marks omitted). What is generally acceptable is a description of "the tasks performed, the people involved, and a general statement of the topic of conversation or review." [citation omitted] However, attorneys need not divulge every detail of their work. *Delgado,* 2009 WL 211862, at

---

[6] Plaintiff had four attorneys at the March 2017 trial, but did not charge for Ms. Coppola's time and charged for Mr. Aurand at paralegal rates.

> *4; see Hensley, 461 U.S. at 437 n. 12 ("Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of Ms time expenditures"). Each entry should be considered in context of the surrounding entries. Berberena v. Coler, 753 F.2d 629, 634 (7th Cir.1985).

Soleau at *8.

For instance, Defendant objects to the following entries as vague: "prepare for the Rule 30(b)(6) depositions of Perona, Castaneda, Skerret and Simpkins on multiple topics set for 5/14/2015" (Ex. B. Def. Obj. CSG entry 5/13/2015)" and "in person conference with Nelson Brown and Ms. Cho regarding Rule 30(b)(6) issues" (Ex. B, Def. Obj. MD entry 5/11/2015) and "trial (Day1) select jury, opening arguments, take testimony of Ms. Millan and Ms. Gilkey" (Ex. B, Def. Obj. CSG entry 3/6/2017). Those entries, however, clearly explain the work performed and easily satisfy the standards described in applicable decisions.

Moreover, Defendant's own time records often include far less detail. For instance, Defendant's entries for both billers for 3/6/17 - 3/10/2107 and 3/13/17 - 3/14/2017 is simply "Trial." (Ex. E, Def. Inv. at 0021). Its description of 2.4 hours on 4/25/16 for each of two billers is "meeting at District; Review files regarding L.Vega" and for 4/27/2106 is "Research regarding damages." (Ex. E, Def. Inv. at 0001). Defendant found those entries satisfactory, confirming paying clients are satisfied with much less detail than Plaintiff provided.

Defendant's also overuses and misuses its objection to entries as "duplicative." The law is clear that this objection is not effective without a clear explanation of exactly what other work a particular entry duplicates. See Soleau at *6 (rejecting duplicative objections because "[Defendant] does not explain what each entry is duplicative of, leaving the court to—guess as to the basis for the objection"). Further, more than one lawyer or timekeeper working on a project is not per se duplicative; it can provide a better product more efficiently (e.g., by enabling

11

lower-cost timekeepers to perform tasks). *See, e.g., M. v. City of Chicago Bd. of Educ.*, No. 10 C 2110, 2010 WL 4639259,at *3 (N.D. Ill. Nov. 8, 2010) (quoting *Edwards v. Rogowski*, No. 06 C 3110, 2009 WL 742871, at *8 (N.D. Ill. Mar. 18, 2009)).

Ultimately, the Court has discretion to determine what (if any) of Plaintiff's time is "excessive". But the mere fact plaintiffs have to spend more time than defendants is not unusual. "[U]sually a plaintiff, who has to carry the burden of proof, spends a great deal more time on litigation than a defendant (citations omitted)." *Delgado v. Mak*, No. 06 C 3757, 2009 WL 211862, at *5 (N.D. Ill. Jan. 29, 2009); *JCW Investments, Inc. v. Novelty, Inc.* 366 F Supp 2d 688, 690 (N.D. Ill 2005).

Here, the complexity of the facts, Plaintiff's need to compel discovery of almost all items used to prove her case at trial, the extensive summary judgment motion filed by Defendant on seven counts (only one of which was successful), overcoming Defendant's motion to disqualify Plaintiff's counsel, extensive pre-trial proceedings (including multiple motions *in limine*), Defendant's objections to virtually all of Plaintiff's trial exhibits, Defendant's refusal to stipulate to facts and exhibits prior to either trial, and Defendant's refusal to enter into meaningful settlement negotiations, all show that none of the time Plaintiff expended was "excessive."

In applying its "unrelated" objection (Defendant's least-used objection), Defendant appears to object to any entries associated with one of the counts on which Plaintiff did not prevail. As noted above, Plaintiff can prevail for that time as long as they are related to the common core of facts which underlie Plaintiff's successful counts and has already eliminated entries solely related to one of Plaintiff's unsuccessful counts.

Defendant also labels as "unrelated" any time spent reviewing or abstracting transcripts from the January/February 2013 Park District Administrative Hearing handled by other counsel. But that

sworn testimony involved exactly the same facts and witnesses, as well as certain exhibits not otherwise produced in this matter. As explained in *Stragapede v. City of Evanston*, 215 F. Supp. 3d 708, 724 (N.D. Ill. 2016) in awarding fees for review of an arbitration transcript: "it would have been foolhardy *not* to review those transcripts. The transcripts not only provided background information on Stragapede's firing, but also contained recorded party-admissions that either side could (and in fact did) use for impeachment purposes at trial." Throughout the trial, CPD harped on the importance of its internal Administrative Hearing. Defendant's contention Plaintiff cannot recover for her time reviewing and analyzing those transcripts is specious.

Without authority, Defendant uses its "unrelated" objection for any entries it deems did not advance Plaintiff's case. But much of that work involved evaluating Plaintiff's employment history and prior performance, the general workings of the Chicago Park District, the investigation and Corrective Action Meetings, Vega's whereabouts and time sheets, the CPD Code of Conduct, the comparators investigations and discipline, the statistics on national origin and gender of all Park and Playground Supervisors, the handling of all discipline by centralized Human Resources, the Union Agreement, salary and benefits for Park Supervisors, and dealing with the motion to disqualify. All that work was necessary for Plaintiff to prevail.

In summary, just as there is no doubt that Lydia Vega is the prevailing party, there is little doubt each hour her counsel spent litigating her case should be compensated. She aimed high and hit high. Defendant can certainly litigate as it chooses but, as the Seventh Circuit explained in *Cuff,* having driven up Plaintiff's fees by refusing to produce documents in discovery, complicating the Rule 30(b)(6) deposition, extensively briefing unsuccessful summary judgment arguments, requesting a settlement conference but then refusing to negotiate at it (or afterwards to the date of the filing of this motion), unsuccessfully moving to disqualify Plaintiff's counsel,

refusing to reach trial stipulations of facts Defendant admitted elsewhere, objecting vociferously to what should have been uncontested evidence at trial, Defendant must now pay the fees it required Plaintiff to incur to prevail. In light of all of these circumstances, all Plaintiff's pre-November 15, 2018 time was reasonable and should be awarded.

### D. Plaintiff Should Be Awarded The Post-November 15, 2018 Time She Seeks.

Plaintiff supplements this petition with additional time from Offices of Catherine Simmons-Gill, LLC from November 16, 2018 through the date of the filing (including the time spent preparing this petition) in the amount of $59,776.25. (Ex. J., Pl. Supp. Inv.; Ex. K, CSG Supp. Decl. ¶¶ 10-15). Courts routinely award fees for post-trial work, including the preparation of fee petitions. *See, e.g., Delgado*, 2009 WL 211862, *8 (quoting *Trustees of Chicago Plastering Institute Pension Trust v. Cork Plastering, Inc.*, No. 03 C 6867, 2008 WL 728897, at *6 (N.D. Ill. Mar. 18, 2008)); *see also Greyhound Financial Corp. v. TSM Financial Group, Inc*. No. 92 C 3750 1995 WL 562068 at *6 (N.D. Ill. Sept. 21, 1995) (citing *Gorenstein Enter., Inc. v. Quality Care–USA, Inc.,* 874 F.2d 431, 438 (7th Cir.1989)); *Bond v. Stanton,* 630 F.2d 1231, 1234 (7th Cir.1980). Necessarily, all these fees were incurred in connection with the claim on which Plaintiff prevailed. Accordingly, Plaintiff requests that the Court award these fees in their entirety (in addition to permitting Plaintiff to file a supplemental petition if necessary or appropriate).

## II. Plaintiff Should Be Awarded The Costs She Seeks Now.

On December 1, 2018, Plaintiff provided Defendant with information about her costs and expenses, both taxable and not taxable, totaling $34,015.47. Plaintiff supported her requests for costs with detailed receipts, her declaration in support and an outside opinion that all were reasonable. (Ex. D, Costs; Ex. F, CSG Dec. ¶¶ 21-29; Ex. G, Graber Dec. ¶21). Rather than

14

identify its objections, Defendant refused to discuss or address costs at any time during the Local Rule 54 meet and confer process – apparently claiming (contrary to custom) that this Court can only award costs after entry of final judgment. But courts routinely award expenses as costs when awarding fees, as the numerous cases in Plaintiff's motion demonstrate.

Here again, Defendant's approach again is emblematic of its litigation strategy. Defendant rejected a pragmatic approach in favor of a position that, while arguably supportable, requires more work from Plaintiff's counsel, more fees to be paid to Defendant's counsel and, worst of all, more work by the Court. Plaintiff contends Defendant waived any objection to recovery of Plaintiff's listed costs and, therefore, the Court can and should award them in their entirety. Regardless of waiver, all the expenses and costs Plaintiff seeks to recover are reasonable and well-supported (Ex. D., Costs). Thus, the Court should not hesitate to award them now, along with the other relief Plaintiff requests in her motion.

## CONCLUSION

WHEREFORE, as a prevailing plaintiff, pursuant to Fed. R. Civ. P. 54(d) and 42 U.S.C. § 2000e-5(k), Plaintiff requests all the relief set forth in her motion.

Respectfully submitted,

LYDIA VEGA

/s/ Catherine Simmons-Gill

Catherine Simmons-Gill (IL ARDC # 2159058)
Attorney for Plaintiff
OFFICES OF CATHERINE SIMMONS-GILL, LLC
111 W. Washington Street, Suite 1110
Chicago, Illinois 60602
Tel: 312-609-6611
simmonsgill@gmail.com

J. Bryan Wood (IL ARDC # 6270845)
Ryan O. Estes (IL ARDC # 6312755)
THE WOOD LAW OFFICE, LLC
303 W. Madison St., Suite 2650
Chicago, IL 60606
Phone: 312-554-8600
bryan@jbryanwoodlaw.com
restes@jbryanwoodlaw.com


March 28, 2019