**EXHIBIT F**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LYDIA VEGA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 13-cv-000451 |
| v. | ) | |
| | ) | |
| CHICAGO PARK DISTRICT | ) | |
| | ) | Judge Jorge L. Alonso |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF CATHERINE SIMMONS-GILL

I, Catherine Simmons-Gill, declare as follows:

1.      I am a member in good standing of the Illinois State Bar and sole member of the Offices of Catherine Simmons-Gill, LLC, which was until December 3, 2018, the sole counsel for Plaintiff in this action. I submit this declaration in support of Plaintiff's Memorandum in Support of her Motion for Fees and Costs (respectively, "Memorandum" and "Motion"). I have personal knowledge of the factual matters set forth in this declaration and, if called to testify, would and could competently and truthfully testify thereto.

### My Experience and the Experience of Other Lawyers and Professionals in My Firm

2.      I graduated from Northwestern University School of Law in 1975. I received my undergraduate degree with honors from the University of Illinois at Chicago in 1971. I was admitted to the Bar for the State of Illinois in 1975, the Bar for the Northern District of Illinois in 1975, the Trial Bar for the latter court in 2003 and the Court of Appeals for the Seventh Circuit in 2018.

3.     From 1975 to the present, I have practiced in the area of intellectual property litigation and counseling, namely trademark, copyright, internet and unfair competition. This is relevant to this declaration because litigation in these areas is primarily in federal court or under the Federal Rules of Civil Procedure. I have represented both plaintiffs and defendants in numerous federal court and Trademark Trial and Appeal Board litigation matters and have been an expert witness in federal trademark litigation. The earliest case I was involved in before the Northern District of Illinois was *Alberto-Culver Company v. The Gillette Company* 74 cv 2017 (N.D.Ill). I have been involved in numerous intellectual property matters both in the Northern District of Illinois and in other federal district courts *pro hac vice*.

4.     From 1997 to the present, I have practiced in the area of employment law, concentrating in the area of employment discrimination, particularly but not limited to, Title VII of the Civil Rights Act of 1964, as amended, (42 U.S.C. §§ 2000e *et seq.*) and Section 1981/1983 of the Civil Rights Act (42 U.S.C. §§ 1981/1983). At this time, my practice is approximately 50% employment law representing plaintiffs and 50% intellectual property law.

5.     Since January 1997, I have represented approximately 100 clients as primary counsel in employment discrimination matters before various administrative agencies, in federal district court and in matters that were resolved prior to litigation.

6.     Only a small portion of these employment matters failed to settle prior to the filing of a complaint in federal court or other appropriate forum. The cases litigated in federal court include but are not limited to:  *Larry Knight v. Peak Tech, Inc.* 04 cv 8090 (N.D. Ill.), *Michael Fudali v. Napolitano* 10 cv 6744 (consolidated with 10 cv 7597) (N.D. Ill.),  *Nicole Hill v Carustar* 11 cv 4855 (N.D. Ill.), *Heather Aldridge v. Lake County Sheriff*  11 cv 3041 and 13 cv 7030, (N.D. Ill.), *Maria Rosario v. American Society of Engineers* 12 cv 7465 (N.D. Ill.),

2

*Albert Griffin v. Underwriters Laboratories* 14 cv 1464 (N.D. Ill.), *Audra Bonaroti v. Village of Round Lake Park* 15 cv 5768 (N.D. Ill.), *Lance Ware v. Lake County Sheriff* 15 cv 9379 (N.D. Ill), *Donna Hamm v. Office of the Lake County Clerk of the Circuit Court* 16 cv 8395 (N.D. Ill.), and *Natalie Koltun v. The Walgreen Company, et al.* 16 cv 6708 (N.D. Ill.). Of the foregoing, all settled prior to trial except *Rosario* which resulted in summary judgment and *Aldridge* which was tried to a jury, resulted in a substantial jury verdict for plaintiff and settled thereafter.

7.     I am a member of the Federal Bar Association, the Illinois State Bar Association, the Chicago Bar Association and the National Employment Lawyers Association/Illinois ("NELA – Illinois"). I participate regularly in NELA-Illinois activities and educational offerings and those of the national NELA organization. As of March 2019, I have become a member of the board of directors of NELA-Illinois. Since 1997, I have regularly taken seminars and other educational offerings in the area of labor and employment law and attended networking sessions for the exchange of ideas among attorneys representing plaintiffs in employment matters.

8.     I regularly consult with fellow employment practitioners about appropriate hourly rates for attorneys and other professionals representing plaintiffs in employment related matters. Based on that information, the rates charged by my office in the Vega matter are either at or below customary and reasonable market rates for similar work performed by attorneys and other professionals with comparable backgrounds and experience in this area of law in the Chicago area.

9.     The Vega dispute has been pending since 2011. The phases of the Vega matter include: 1) pre-termination representation and counseling during her investigation/discipline by the Chicago Park District ("Defendant"); 2) administrative agency proceedings, e.g., Equal Employment Opportunity Commission ("EEOC"); 3) preparation of both a complaint and an

3

amended complaint adding additional theories and a later filed EEOC claim of retaliation; 4) response to Defendant's Motion to Dismiss the Amended Complaint, resulting in the dismissal of a single count out of seven with leave to reinstate; 4) written discovery involving the production of over 12,000 documents by Defendant and 1000 documents by Plaintiff; 5) written discovery involving over twenty five (25) video discs of hundreds of hours of surveillance of Plaintiff over a more than six month period (the recordings on the discs were not organized by date of filming, by location of filming or by videographer of which there were at least four); 6) oral discovery involving 10 depositions of individuals and a Rule 30(b)(6) deposition of Defendant on eight (8) topics for which Defendant supplied over 25 subtopic witnesses, involving seven days of deposition testimony;[1] 7) extensive discovery motion practice; 8) response to a thirty nine (39) page Summary Judgment Motion by Defendant with a fifty one (51) page statement of uncontested material facts numbering 182; 9) preparation for two separate settlement conferences under two dissimilar Standing Orders, settlement conference requested by Defendant, one planned before Judge Zagel which was never held due to his retirement and the other before Magistrate Judge Valdez who assigned the mediation to Magistrate Judge Rodovich which resulted in an offer of $10,000 and an offer of judgment after the settlement conference of $30,000; 10) addressing a motion to disqualify Plaintiff's lead counsel brought in September 2016 on the eve of trial based on facts known by Defendant to be involved in the retaliation counts of the complaint when the original complaint was filed in February 2012; 11) preparation for a jury trial in March 2017 and a bench trial on actual/equitable damages in

---

[1] Defendant designated 20 and produced 12 witnesses for the eight (8) topics set forth in the Rule 30(b)(6) Notice of Deposition, divided by Defendant into approximately 30 subtopics. Although Rule 30(b)(6)'s comments permit a full day of testimony from each witness Defendant designated, the Rule 30(b)(6) deposition was completed in seven days of approximately seven (7) hours each.

January 2018; 12) refusal by Defendant to accept more than a token number of uncontested facts offered by Plaintiff derived from the Amended Answer to the Complaint, Responses to Requests to Admit and Defendant's Rule 56.1(a)(3) Statement of Uncontested Facts offered before the jury trial, and 90 uncontested facts offered before the second trial; and, 13) attendance at second trial and post trial briefing for the latter trial.

10.     My current hourly rate is between $375 and $550 per hour for hourly paying clients. This includes both employment discrimination and intellectual property matter rates. Those clients charged less than $450 per hour are long time intellectual property clients who are invoiced and pay monthly. As of 2018, my hourly billing rate for employment discrimination clients whose matters involve court litigation is $450. Attached to this declaration as Exhibit 1 are three retainer agreements (redacted) showing the fees charged by my office currently. For the Vega matter, my current hourly rate is $425 for office time and $450 for court time. For several billers in Plaintiff's Invoice attached as Exhibit A to the Motion ("Pl. Inv."), there is only one rate because they did not spend any time on this matter in court. Office time in the Offices of Catherine Simmons-Gill, LLC is time spent not in court, while on trial or in travel to and from court. In the current matter, as set forth in Pl. Inv., I billed for 1527.60 hours of office time over a 7 plus year period and 91.15 hours of court time for the two trials. An additional 33.2 tracked hours of time I spent on this matter were not charged in the Pl. Inv. submitted to Defendant and are marked "no charge" on Pl. Inv.

11.     To my knowledge, no judge has evaluated the reasonableness of my rates in an employment discrimination matter in connection with a fee petition. I have not previously submitted a fee petition in an employment matter.[2]

---

[2] Defendant provided as support for its position on rates exhibits to two successful motions for sanctions

**Attorneys and other professionals: Fees**

12.     Ross Drath was both a law clerk and an associate at the Offices of Catherine Simmons-Gill, LLC from August 2013 to July 2014. He graduated from John Marshall Law School in 2013 and from the University of Michigan (Ann Arbor) in 2009. He was admitted to the Bar for the State of Illinois in 2013, the Bar for the Northern District of Illinois in 2013 and the Bar for the State of North Carolina in 2018. He was second chair in the *Aldridge* case prior to working on this matter and represented other employment discrimination clients while employed by my office. As set forth in Pl. Inv., his billing rate for this matter is $200 for office time (70.7 hours). An additional .5 tracked hours of time Mr. Drath spent on this matter was not charged and is marked "no charge" on the invoice. He made no court appearances. He left my employ to accept a position at the Chicago law firm of Davis McGrath and currently resides and practices in North Carolina.

13.     Ryan Estes was an independent contractor to the Offices of Catherine Simmons-Gill, LLC during the Vega trial. He graduated from John Marshall Law School in 2013 and from the University of Michigan at Ann Arbor in 2010. He was admitted to the Bar for the State of Illinois in 2013 and the Bar for the Northern District of Illinois in 2014. Since his graduation from law school he has worked extensively and now exclusively in the area of labor and employment law representing plaintiffs. As set forth in Pl. Inv., his role in connection with this matter was the preparation of Ms. Vega for her trial testimony on which he spent 37.50 hours. He is currently an associate with The Wood Law Office, LLC where his current hourly rate, effective January 1, 2019, is $275/hour and that is the hourly rate charged in this matter.

---

filed in employment matters in 2012 in which my rate was $300 in the former and $300/$325 in the latter.

14.     Matthew Douglas worked for the Offices of Catherine Simmons-Gill, LLC as an associate from 2014 to 2017. He graduated from IIT Chicago-Kent College of Law in 2011 and from Florida State University in 2007. He was admitted to the Bar for the State of Illinois in 2011 and the Bar for the Northern District of Illinois in 2014. Mr. Douglas practiced primarily criminal defense and mortgage foreclosure defense, including serving as first chair at a felony jury trial, prior to joining the Offices of Catherine Simmons-Gill, LLC where he concentrated in employment litigation. He also has considerable experience handling complex commercial litigation matters both at the trial and appellate levels. As set forth in Pl. Inv., his billing rate for this litigation is $250.00 for office time (658.2 hours) and $275.00 for court time (66.1). He provided an additional 72.4 hours of tracked time which were not billed and are marked "no charge" on Pl. Inv. He is currently a partner in the law firm of Zelechowski & Douglas, LLC and his current hourly rate in that firm which concentrates in general commercial litigation and real estate is $300.

15.     Bernadette Coppola worked for the Offices of Catherine Simmons-Gill, LLC as a law clerk in from January 2013 to March 2014 and as an independent contractor from November 2016 to April 30, 2018. She graduated from John Marshall Law School in January 2013 and was an editor on the John Marshall Law Review. She graduated from Rutgers University *magna cum laude* in May 2008. She was admitted to the Bar for the State of New York in 2013, the Bar for the State of New Jersey in 2013, the Bar for the State of Illinois in 2017, and the Bar for the Northern District of Illinois in 2017. During her employment/independent contractor status, Ms. Coppola worked for this office on both the *Aldridge* matter, the Vega matter, other employment matters, and served as second chair at the trial on damages in this matter held in January 2018. As set forth in Pl. Inv., her billing rate in this matter prior to being barred (January

7

2013 to March 2014) is $150 (77 hours); her billing rate after being barred (November 2016 until April 2018) is $225 for office time (480.50 hours) and $250 for court time (12.75 hours). She provided an additional 84.7 hours of time which were tracked but not billed and marked "no charge" on Pl.Inv. She ceased being an independent contractor to this office when she accepted a position as a full time associate at Kirkland & Ellis in April 2018 where her current hourly rate is in excess of $500 per hour.

16. Kyle Aurand worked for the Offices of Catherine Simmons-Gill, LLC, as an independent contractor between 2015 and 2017. He graduated from John Marshall Law School in June 2015 and from the University of Kentucky in January 2012. He was admitted to the Bar for the State of Illinois in 2015 and the Bar for the Northern District of Illinois in February 2017. His tasks in connection with this matter were cite compilation and final cite checking for the Plaintiff's Response to Defendant's Motion for Summary Judgment (ECF Nos. 128-131), and management of the computer displays, exhibits, and the depositions used for impeachment in preparing for and at the jury trial in this matter. As set forth in Pl Inv., Mr. Aurand is billed at senior paralegal rates of $150 for office time (70.90 hours) and $175 for court time (56 hours). He spent an additional 6 hours of time which were tracked but not billed and are designated on Pl. Inv. as "no charge." He left this firm to become and is currently a Trademark Examining Attorney at the United States Patent and Trademark Office.

17. Pawel Fraczek has been an independent contractor to the Offices of Catherine Simmons-Gill, LLC from 2015 to the present. He received his law degree from John Marshall Law School in January 2013 and received his LLM from John Marshall in June 2015. He received his undergraduate degree from the University of Illinois at Chicago in May 2005. He was admitted to the Bar of the State of Illinois in 2013. He is experienced in writing

8

briefs for federal court and Trademark Trial and Appeal Board matters and has also assisted my office in a complex expert witness report in 2018 requiring multiple exhibits and extensive detail and cite checking. His role in this matter was limited to extensive cite gathering and checking in connection with the Response to the Motion for Summary Judgment (ECF Nos. 128-131). As set forth on Pl. Inv., his billing rate is $150 per hour for office time as a senior paralegal. He spent 29 hours on the Vega matter.

18.     Geneva Gorgo has been an independent contractor to the Offices of Catherine Simmons-Gill, LLC from 2013 to the present as a paralegal for deposition digesting services. She graduated from the College of St Teresa in Winona, MN in 1967 and she received a Master's degree from Loyola University in Chicago in 1979.  As set forth in Pl. Inv., her billing rate as a paralegal is $100 per hour. Her time as it appears in the Pl. Inv. reflects the dates her invoices were received in this office not, as with all other billers, the dates on which she actually performed the work of digesting most of the depositions taken in this matter. She spent 111.45 hours digesting depositions for this matter, also reflected on Pl. Inv.

19.     Maria Rosario is a paralegal and has been employed by the Offices of Catherine Simmons-Gill, LLC since 2013. During that time, she has worked as a paralegal on various employment matters. As Pl. Inv. reflects, her hourly rate is $75 per hour as a paralegal and she billed 265.25 hours in connection with the Vega matter. An additional .1 hour appears as "no charge."

**Costs of the Litigation through November 15, 2018**

20.     Plaintiff's Invoice through November 15, 2018 attached as Exhibit A to the Motion ("Pl. Inv.") is a true, accurate and contemporaneously prepared compilation of time entries for legal services performed by the Offices of Catherine Simmons-Gill, LLC in

connection with this matter. Every effort has been made to categorize the time entries correctly. My firm ordinarily and regularly bills legal time on an hourly basis in 3 minute increments with the exception of the first 6 minutes which is generally not reduced based upon each professional's standard hourly rate. I along with my legal staff made a concerted effort to perform all work in a thorough and efficient matter and to avoid duplication of effort.

21.     Attached as Exhibit D to Motion are Plaintiff's Costs ("Costs") for this matter.

22.     The Costs set forth are as follows:

Exhibit D-1     Witness Costs   $673.32 (17 witnesses)

Exhibit D-2     Fees of the Clerk   $350. (complaint filing fee)

Exhibit D-3     Costs for service of summons and subpoenas $265 (service of complaint, four subpoenas)

Exhibit D-4-A Costs for Court Transcripts $2598.45 (partial - 9 days of trial)

Exhibit D-4-B Costs for Deposition Transcripts $19,517.40 (15 transcripts, averaging seven (7) hours of testimony each

Exhibit D-5     Costs for exemplification, etc  ($10, 524.27) approximately 13,000 documents produced in the litigation, Motion for Summary Judgment involving approximately 2500 pages, 267 Plaintiff proposed trial exhibits and 42 Defendant proposed trial exhibits, three copies of each set required by the Court as well as copies for Plaintiff's use at trial and Other Costs ($123.00) messenger and taxi travel.

23.   The Witness Costs (Exhibit D-1) are documented by an Excel spreadsheet listing names of the trial witnesses, fees paid, mileage, mileage fees paid, check numbers issued for each witness for the foregoing, postage for certified mail for five witnesses and, copies of the trial subpoenas issued.

24.     The Fees of the Clerk (Exhibit D-2) are supported by the receipt for the filing fee for the original complaint from the Clerk of the Court for the Northern District of Illinois.

25.     The Costs for service of Summons and Subpoenas (Exhibit D-3) are documented by an Excel spreadsheet of the invoices, the invoice numbers, names of providers, amounts and check numbers, as wells as copies of the invoices, subpoenas and correspondence with process servers.

26.     The Costs for Court Transcripts (Exhibit D-4-A) are documented by an Excel spreadsheet of the dates of the transcripts, the invoice numbers, the cost of each transcript, the check numbers issued in payment, as well as copies of the invoices.

27.     The Costs for Deposition Transcripts (Exhibit D-4-B) are documented by an Excel spreadsheet of the dates of the depositions, the invoice numbers, the names of the witnesses, the cost of each transcript, the check numbers issued in payment, as well as copies of the invoices.

28.     The Costs for exemplification (Exhibit D-5) are documented by an Excel spreadsheet (Columns C and D) of the invoices from outside providers of copies of documents and videotapes, the names of the providers, the invoice numbers, the amount of each invoice and the check numbers representing payment made.  For copies made in the office, the spreadsheet lists monthly amounts paid to the landlord for copies attributable to this client.

29.     The miscellaneous Costs (taxi and messenger) sought (Exhibit D-5) are documented by an Excel spreadsheet (Column E) and copies of invoices or receipts.

### Summary

30.     It is my professional opinion that all work performed, costs incurred, and the number of hours spent for legal services are fair and reasonable considering the nature of the

11

services performed, the duration of the matter, its complexity, and the results achieved.

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 28 day of March 2019, Chicago, Illinois.

By: _____
Catherine Simmons-Gill, Esq.
Offices of Catherine Simmons-Gill, LLC
Attorneys for Plaintiff

12

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| LYDIA E. VEGA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 13 cv 00451 |
| | ) | |
| v. | ) | Judge Jorge L. Alonso |
| | ) | |
| CHICAGO PARK DISTRICT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DECLARATION OF CATHERINE SIMMONS-GILL**

**<u>EXHIBIT 1</u>**

### OFFICES OF CATHERINE SIMMONS-GILL, LLC
#### 111 West Washington Street
#### Suite 1110
#### Chicago, Illinois 60602

312 609 6611 *Fax 312 609 6610*
*E-mail simmonsgill@gmail.com*

JG **RETAINER AGREEMENT**

**ATTORNEY CLIENT PRIVILEGE**

██████████████, an individual and resident of Illinois, with a
residence address at ████████████████████ ("Client")
authorizes Offices of Catherine Simmons-Gill, LLC (referred to as
"Offices") to represent her in connection with her claims of age
discrimination, disability discrimination, Family Medical Leave Act
("FMLA") violations and such other claims as the Offices recommend
against her former employer, ████████████████ ("Employer").
The Scope of Representation includes representation in drafting a
demand letter, filing a charge with the Equal Employment Opportunity
Commission ("EEOC") and/or the Illinois Department of Human
Resources ("IDHR"), mediation if it occurs and negotiation with
Employer. ██████████████████████████████████
████████████████████████

2. <u>Duties of Offices</u>. Client understands that the Offices will
provide the legal services reasonably required to represent Client
within the Scope of Representation described above. The Offices will
use the skill, knowledge, and care reasonably expected of attorneys
practicing in the community. The Offices will take reasonable steps to
keep Client informed of significant developments and respond to
inquiries. Client understands the Offices have professional liability
insurance for legal services provided.

Offices have performed a conflicts of interest check, and
determined that neither firm has a current conflict of interest that
could affect Offices' representation of Client in connection with the
above-described matters.

3. <u>Duties of Client</u>. Client agrees to be truthful and
cooperative with the Offices and promptly provide the Offices with any
and all information known to Client to be relevant to the Scope of
Representation or that the Offices request. Client will cooperate

*OFFICES OF CATHERINE SIMMONS-GILL, LLC*
*March 19, 2019*
████████████ *– Retainer Agreement*
*Page 2*

fully with the Offices by, among other things, attending scheduled
meetings when requested and gathering and collecting requested
documents and electronically stored information. Client will inform
the Offices of any relevant developments, including changes in address,
telephone number or location. Client also agrees to perform all other
obligations necessary to assist the Offices in fulfilling their duties
set forth above.

4. <u>Legal Fees & Expenses.</u> Client agrees to the following
arrangements in connection with the Scope of Representation:

a. <u>Out of Pocket Expenses</u> ("Expenses")

  i. Client understands that, depending on what is
necessary to provide the services in the Scope of
Representation, the Offices may incur expenses on
Client's behalf including but not limited to travel (other
than normal commuting), photocopying, postage, expedited
delivery fees, witness subpoena fees, witness appearance
fees, expert witness fees, witness travel fees, court
reporter appearance fees, and court reporter transcript
fees, mediation fees, etc.

  ii. Client understands that Offices are not agreeing
to the payment of all Expenses which may be incurred on
her behalf. Client agrees to pay all Expenses related to
this representation. Based on the scope of representation
outlined above, Client understands that the Offices
anticipate the expenses for the Scope of Representation
in this case are likely to reach between $100 and $2,500,
but they could be more, especially if the matter proceeds
to civil litigation. Client understands that the Offices
will not hire a mediator without Client's consent, and
understands that the mediation services of the EEOC and
the IDHR are free of charge, but will only occur with these
agencies if Employer agrees.

b. <u>Offices' Fees</u> ("Legal Fees")

  i. In addition to Expenses, Clients agree to pay the
Offices a contingency fee of one third (33.33%) of the gross

*OFFICES OF CATHERINE SIMMONS-GILL, LLC*
*March 19, 2019*
███████████ *– Retainer Agreement*
*Page 3*

payment procured for Client, if any, through the Scope of Representation ("the contingency fee arrangement"), or the amount that the Offices are able to negotiate with the Employer to pay the Offices for their time, whichever is greater. Client recognizes that the Offices are undertaking a substantial risk of going uncompensated or undercompensated for the time they devote to the representation and that they cannot undertake this risk unless their fee agreement offers them the possibility of compensation greater than their normal hourly rate.

ii.      Client understands that the current hourly rate for attorneys Catherine Simmons-Gill is $450.00/hour, and that Offices has available to it various law clerks, paralegals, associates and contract attorneys whose hourly rates range between $100-$325/hour depending on skill and experience. Client also understands that these rates may change from time to time. Client understands the Offices cannot accurately predict the amount of time they must spend on this matter.

iii.      Client understands that the Offices may seek to have Employer or any of their agents pay Legal Fees separately. Any Legal Fees paid to the Offices by Employer or any of their agents will operate as a credit against any Legal Fees owed by Client under this Agreement; however, the Offices shall not be entitled to any Legal Fees paid by Employer or any of their agents in excess of the Legal Fees owed under this Agreement.

c. <u>Trust Account</u>

i.      Clients understand that as a condition of representation the Offices require that Client provide the Offices $100.00 upon signing this agreement, and $100 each month thereafter, which the Offices will hold in trust on Client's behalf to cover Expenses and/or Legal Fees. The Offices may request increases to this amount as necessary in their sole discretion. Client understands that Expenses

*OFFICES OF CATHERINE SIMMONS-GILL, LLC*
*March 19, 2019*
██████████ *– Retainer Agreement*
*Page 4*

and Legal Fees owed will be deducted from the amount held
in trust after notification to Client.

ii.     Client understands that after submission of
each invoice, Client will be asked to pay any balance of
Expenses owed above the amount held in trust in addition
to replenishing the amount held in trust and agree to do
so upon being asked. Client agrees to replenish the amount
held in trust so that at all times the Offices hold the
amount requested by the Offices under the preceding
paragraph in trust.

iii.     Client understands that he will not earn any
interest on amounts held in trust on their behalf and that
any interest earned will be provided to public-service
programs designed to strengthen our justice system through
IOLTA.

iv.     Client understands any amounts held in trust
in excess of Legal Fees or Expenses owed upon completion
of the representation will be returned to Client.

5.     <u>Risk of Non-Recovery</u>.  Client acknowledges that the Offices
have not made, nor shall they make, any guarantee as to the outcome of
any negotiation or litigation to which Client may be a party. Client
acknowledges it has been explained to Client by the Offices that the
outcome of the Scope of Representation and particularly the outcome of
negotiations is always uncertain.  Thus, Client understands that
despite the Offices' efforts, there may be no recovery and that moving
forward with the representation may end up costing Client money (e.g.,
through payment of expenses).

6.     <u>Assignment of Legal Fees & Expenses.</u>  Client hereby
assigns the Offices an equitable portion of any monies which Client
receives pursuant to the Scope of Representation which is the subject
of this agreement.  The purpose of this assignment is to secure
payment of the legal fees and expenses specified in this Agreement,
and this assignment shall create an attorney's lien upon any fund
of Client which pertains to any case associated with the Scope of
Representation.

7.     <u>Offices' Lien.</u>  Client agrees that the Offices shall retain
a lien on any and all property provided to the Offices by Client to pursue
her claims, including all personal papers and documents.  This lien

*OFFICES OF CATHERINE SIMMONS-GILL, LLC*
**March 19, 2019**
███████ *– Retainer Agreement*
*Page 5*

shall remain in effect until all fees, expenses and court costs owing to the Offices are paid in full.

   8.   <u>Offices' Withdrawal.</u>   Client agrees that if he does not perform any of Client's obligations under this Agreement, including but not limited to those described in the "Client's Duties" section above, that the Offices may withdraw from the Scope of this Representation. Client understands there may be other circumstances which require one or more of the Offices to withdraw.

   9.   <u>Client's Withdrawal/Termination.</u> Client may terminate this agreement as a client, but Client agrees that he is obligated to pay legal fees (at the Offices' then-current hourly rates) and expenses incurred through the date that the Offices receive Client's written notice of withdrawal/ termination.

   10.   <u>Agreement Limited to Scope of Representation.</u>   Client understands and agrees that this agreement covers only work done in connection with the Scope of Representation outlined above.   It does not cover any other legal representation on Client's behalf.

   11.   <u>No Tax Advice.</u>   Client understands that because the Offices are not tax Offices, they cannot advise Client as to the proper tax treatment of any money Client recovers, any attorneys' fees and expenses paid on Client's behalf or and any attorneys' fees and expenses that Client pays.   Therefore, Client understands that Client's should talk to a qualified tax professional about the proper tax treatment of these matters if and when it becomes relevant.


                    AGREED TO THIS _____ DAY OF MARCH 2019


Catherine Simmons-Gill                    3/22/2019
Sole member                               _____
Offices of Catherine Simmons-Gill, LLC    Date Signed

### OFFICES OF CATHERINE SIMMONS-GILL, LLC
#### 111 West Washington Street
#### Suite 1110
#### Chicago, Illinois 60602

312 609 6611

*Fax 312 609 6610*
*E-mail simmonsgill@gmail.com*

**RETAINER AGREEMENT**

**ATTORNEY CLIENT PRIVILEGE**

█████████, an individual and resident of Massachusetts, with a residence address at ██████████████████████████ ("Client") authorizes Offices of Catherine Simmons-Gill, LLC (referred to as "Offices") to represent him in connection with his claims of race discrimination, disability discrimination, retaliation, Family Medical Leave Act ("FMLA") violations and such other claims as the Offices recommend against his former employer, ████████ ("Employer"). The Scope of Representation includes representation in drafting a demand letter, filing a charge with the Equal Employment Opportunity Commission ("EEOC") and/or the Illinois Department of Human Resources ("IDHR"), mediation if it occurs and negotiation with Employer. ████████████████████████████████

2. _Duties of Offices_. Client understands that the Offices will provide the legal services reasonably required to represent Client within the Scope of Representation described above. The Offices will use the skill, knowledge, and care reasonably expected of attorneys practicing in this community. The Offices will take reasonable steps to keep Client informed of significant developments and respond to inquiries. Client understands the Offices have professional liability insurance for legal services provided.

Offices have performed a conflicts of interest check, and determined that neither firm has a current conflict of interest that could affect Offices' representation of Client in connection with the above-described matters.

3. _Duties of Client_. Client agrees to be truthful and cooperative with the Offices and promptly provide the Offices with any and all information known to Client to be relevant to the Scope of Representation or that the Offices request. Client will cooperate

*OFFICES OF CATHERINE SIMMONS-GILL, LLC*
*February 8, 2019*
██████████ *— Retainer Agreement*
*Page 2*

fully with the Offices by, among other things, attending scheduled
meetings when requested and gathering and collecting requested
documents and electronically stored information.  Client will inform
the Offices of any relevant developments, including changes in address,
telephone number or location.  Client also agrees to perform all other
obligations necessary to assist the Offices in fulfilling their duties
set forth above.

   4.   <u>Legal Fees & Expenses.</u>  Client agrees to the following
arrangements in connection with the Scope of Representation:

   a.   <u>Out of Pocket Expenses</u> ("Expenses")

        i.   Client understands that, depending on what
   is necessary to provide the services in the Scope of
   Representation, the Offices may incur expenses on
   Client's behalf including but not limited to travel
   (other than normal commuting), photocopying,
   postage, expedited delivery fees, witness subpoena
   fees, witness appearance fees, expert witness fees,
   witness travel fees, court reporter appearance fees,
   and court reporter transcript fees, mediation fees,
   etc.

        ii.   Client understands that Offices are not
   agreeing to the payment of all Expenses which may be
   incurred on his behalf. Client agrees to pay all
   Expenses related to this representation. Based on the
   scope of representation outlined above, Client
   understands that the Offices anticipate the expenses
   for the Scope of Representation in this case are likely
   to reach between $100 and $2,500, but they could be more.
   Client understands that the Offices will not hire a
   mediator without Client's consent, and understands that
   the mediation services of the EEOC and the IDHR are free
   of charge, but will only occur with these agencies if
   Employer agrees.

   b.   <u>Offices' Fees</u> ("Legal Fees")

        i.   In addition, Clients agree to pay the
   Offices a contingency fee of one third (33.33%) of the
   gross payment procured for Client, if any, through the

*OFFICES OF CATHERINE SIMMONS-GILL, LLC*
*February 8, 2019*
████████ *– Retainer Agreement*
*Page 3*

Scope of Representation ("the contingency fee arrangement"), or the amount that the Offices are able to negotiate with the Employer to pay the Offices for their time, whichever is greater. Client recognizes that the Offices are undertaking a substantial risk of going uncompensated or undercompensated for the time they devote to the representation and that they cannot undertake this risk unless their fee agreement offers them the possibility of compensation greater than their normal hourly rate.

ii.     Client understands that the current hourly rate for attorneys Catherine Simmons-Gill is $450.00/hour, and that Offices has available to it various law clerks, paralegals, associates and contract attorneys whose hourly rates range between $100-$325/hour depending on skill and experience. Client also understands that these rates may change from time to time. Client understands the Offices cannot accurately predict the amount of time they must spend on this matter.

iii.    Client understands that the Offices may seek to have Employer or any of their agents pay Legal Fees separately. Any Legal Fees paid to the Offices by Employer or any of their agents will operate as a credit against any Legal Fees owed by Client under this Agreement; however, the Offices shall not be entitled to any Legal Fees paid by Employer or any of their agents in excess of the Legal Fees owed under this Agreement.

c.    Trust Account

i.     Clients understand that as a condition of representation the Offices require that Client provide the Offices $500.00 upon signing this agreement, which the Offices will hold in trust on Client's behalf to cover Expenses and/or Legal Fees. The Offices may request increases to this amount as necessary in their sole discretion. Client understands that Expenses and Legal Fees owed will

*OFFICES OF CATHERINE SIMMONS-GILL, LLC*
*February 8, 2019*
███████ *— Retainer Agreement*
*Page 4*

be deducted from the amount held in trust after notification to Client.

ii.   Client understands that after submission of each invoice, Client will be asked to pay any balance of Expenses owed above the amount held in trust in addition to replenishing the amount held in trust and agree to do so upon being asked. Client agrees to replenish the amount held in trust so that at all times the Offices hold the amount requested by the Offices under the preceding paragraph in trust.

iii.  Client understands that he will not earn any interest on amounts held in trust on their behalf and that any interest earned will be provided to public-service programs designed to strengthen our justice system through IOLTA.

iv.   Client understands any amounts held in trust in excess of Legal Fees or Expenses owed upon completion of the representation will be returned to Client.

5.   <u>Risk of Non-Recovery</u>.  Client acknowledges that the Offices have not made, nor shall they make, any guarantee as to the outcome of any negotiation or litigation to which Client may be a party. Client acknowledges it has been explained to Client by the Offices that the outcome of the Scope of Representation and particularly the outcome of negotiations is always uncertain.  Thus, Client understands that despite the Offices' efforts, there may be no recovery and that moving forward with the representation may end up costing Client money (e.g., through payment of expenses).

6.   <u>Assignment Of Legal Fees & Expenses.</u>  Client hereby assigns the Offices an equitable portion of any monies which Client receives pursuant to the Scope of Representation which is the subject of this agreement.  The purpose of this assignment is to secure payment of the legal fees and expenses specified in this Agreement, and this assignment shall create an attorney's lien upon any fund of Client which pertains to any case associated with the Scope of Representation.

7.   <u>Offices' Lien.</u>  Client agrees that the Offices shall retain a lien on any and all property provided to the Offices by Client to pursue his claims, including all personal papers and documents.  This lien

**OFFICES OF CATHERINE SIMMONS-GILL, LLC**
February 8, 2019
██████████ – Retainer Agreement
Page 5

shall remain in effect until all fees, expenses and court costs owing
to the Offices are paid in full.

8.   Offices' Withdrawal.  Client agrees that if he does not
perform any of Client's obligations under this Agreement, including but
not limited to those described in the "Client's Duties" section above,
that the Offices may withdraw from the Scope of this Representation.
Client understands there may be other circumstances which require one
or more of the Offices to withdraw.

9.   Client's Withdrawal/Termination.  Client may terminate
this agreement as a client, but Client agrees that he is obligated
to pay legal fees (at the Offices' then-current hourly rates) and
expenses incurred through the date that the Offices receive Client's
written notice of withdrawal/ termination.

10.  Agreement Limited to Scope of Representation.  Client
understands and agrees that this agreement covers only work done in
connection with the Scope of Representation outlined above.  It does
not cover any other legal representation on Client's behalf.

11.  No Tax Advice.  Client understands that because the Offices
are not tax Offices, they cannot advise Client as to the proper tax
treatment of any money Client recovers, any attorneys' fees and expenses
paid on Client's behalf or and any attorneys' fees and expenses that
Client pays.  Therefore, Client understands that Client's should talk
to a qualified tax professional about the proper tax treatment of these
matters if and when it becomes relevant.

AGREED TO THIS   15   DAY OF FEBRUARY 2019

_2/15/2019_
Date Signed

_2/19/2019_
Date Signed

Catherine Simmons-Gill
Sole member
Offices of Catherine Simmons-Gill, LLC

**REPRESENTATION AGREEMENT**

Attorney-Client Privileged Communication

1.        ▮▮▮▮▮▮▮, an individual and resident of Illinois with a residence address at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ("Client") authorizes attorneys of ▮▮▮▮▮▮▮▮▮▮▮ and Offices of Catherine Simmons-Gill, LLC (referred to as "the Attorneys") to represent him in connection with his claims of race discrimination, gender discrimination, sexual identity discrimination, disability discrimination, retaliation, Family Medical Leave Act ("FMLA") violations and such other claims as the Attorneys recommend against the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ("Employer") in federal court ("Scope of Representation"). The Scope of Representation includes representation before the trial court, but does not include any appeals. ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮

2.        <u>Duties of Attorneys</u>.  Client understands that the Attorneys will provide the legal services reasonably required to represent Client within the Scope of Representation described above. The Attorneys will use the skill, knowledge, and care reasonably expected of attorneys practicing in this community. The Attorneys will take reasonable steps to keep Client informed of significant developments and respond to inquiries. Client understands the Attorneys have professional liability insurance for legal services provided.

Attorneys have performed a conflicts of interest check, and determined that neither firm has a current conflict of interest that could affect Attorneys' representation of Client in connection with the above-described matters.

3.        <u>Duties of Clients</u>.  Client agrees to be truthful and cooperative with the Attorneys and promptly provide the Attorneys with any and all information known to Client to be relevant to the Scope of Representation or that the Attorneys request.  Client will cooperate fully with the Attorneys by, among other things, attending scheduled meetings when requested and gathering and collecting requested documents and electronically stored information.  Client will inform the Attorneys of any relevant developments, including changes in address, telephone number or location.  Client also agrees to perform all other obligations necessary to assist the Attorneys in fulfilling their duties set forth above.

4.        <u>Legal Fees & Expenses</u>.  Client agrees to the following arrangements in connection with the Scope of Representation:

Page 1



a.    <u>Out of Pocket Expenses</u> ("Expenses")

       i.    Client understands that, depending on what is necessary to provide the services in the Scope of Representation, the Attorneys may incur expenses on Client's behalf including but not limited to travel (other than normal commuting), photocopying, postage, expedited delivery fees, witness subpoena fees, witness appearance fees, expert witness fees, witness travel fees, court reporter appearance fees, and court reporter transcript fees, mediation fees, etc.

       ii.    Client understands that Attorneys are not agreeing to the payment of all Expenses which may be incurred on his behalf. Client agrees to pay all Expenses related to this representation. Based on the scope of representation outlined above, Client understands that the Attorneys anticipate the expenses in this case will reach between $5,000 and $30,000, but they could be more. Client understands that the Attorneys will not hire a mediator or expert witness without Client's consent.

b.    <u>Attorneys' Fees</u> ("Legal Fees")

       i.    In addition, Clients agree to pay the Attorneys a contingency fee of one third (33.33%) of the gross payment procured for Client, if any, through the Scope of Representation ("the contingency fee arrangement"), or the amount that the Attorneys are able to negotiate with the Employer to pay the Attorneys for their time, whichever is greater. Client recognizes that the Attorneys are undertaking a substantial risk of going uncompensated or undercompensated for the time they devote to the representation and that they cannot undertake this risk unless their fee agreement offers them the possibility of compensation greater than their normal hourly rate.

       ii.    If Client's employment with the VA is reinstated as a result of the Scope of Representation, Client agrees to pay the Attorneys a contingency fee of one third (33.33%) of the expected annual salary upon reinstatement. This fee is payable over the three years following reinstatement. This fee is not due unless a Client is reinstated and accepts reinstatement.

iii.    Client understands that the current hourly rate for attorneys ███████████ and Catherine Simmons-Gill is $450.00/hour, for ███████ is $260/hour, and the hourly rate for ███████████ is $135/hour, and that the hourly rates for law clerks, paralegals, associates and contract attorneys range between $100-$325/hour depending on skill and experience. Client also understands that these rates may change from time to time. Client understands the Attorneys cannot accurately predict the amount of time they must spend on this matter.

iv.    In the event of any judgment on any claim for which an award of attorneys' fees is available, the Attorneys agree to seek an award of attorneys' fees. Any attorneys' fees awarded and paid will operate as a credit towards Legal Fees owed; however, the Attorneys shall be entitled to any attorneys' fees awarded in excess of the Legal Fees owed under the contingency fee arrangement.

v.  Client understands that the Attorneys may seek to have Employer or any of their agents pay Legal Fees separately. Any Legal Fees paid to the Attorneys by Employer or any of their agents will operate as a credit against any Legal Fees owed by Client under this Agreement; however, the Attorneys shall be entitled to any Legal Fees paid by Employer or any of their agents in excess of the Legal Fees owed under this Agreement.

vi.  Client understands that ███████████████████ and Offices of Catherine Simmons-Gill, LLC have agreed to divide the work associated with the Scope of Representation between the two firms and that each firm will receive Legal Fees in proportion to the services performed by each firm. Client further understands that the particular litigation tasks to be assumed by the two participating firms shall be determined by agreement of the firms.

c.    <u>Trust Account</u>

i.  Clients understand that as a condition of representation the Attorneys require that Client provide the Attorneys $150.00 each month upon signing this agreement, which the Attorneys will hold in trust on Client's behalf to cover Expenses and/or Legal Fees. The Attorneys may request increases to this amount as necessary in their sole discretion. Client understands that

Expenses and Legal Fees owed will be deducted from the amount held in trust after notification to Client.

ii. Client understands that after submission of each invoice, Client will be asked to pay any balance of Expenses owed above the amount held in trust in addition to replenishing the amount held in trust and agree to do so upon being asked. Client agrees to replenish the amount held in trust so that at all times the Attorneys hold the amount requested by the Attorneys under the preceding paragraph in trust.

iii. Client understands that they will not earn any interest on amounts held in trust on their behalf and that any interest earned will be provided to public-service programs designed to strengthen our justice system through IOLTA.

iv. Client understands any amounts held in trust in excess of Legal Fees or Expenses owed upon completion of the representation will be returned to Client.

5.    <u>Risk of Non-Recovery</u>.  Client acknowledges that the Attorneys have not made, nor shall they make, any guarantee as to the outcome of any negotiation or litigation to which Client may be a party. Client acknowledges it has been explained to Client by the Attorneys that the outcome of the Scope of Representation and particularly the outcome of negotiations is always uncertain. Thus, Client understands that despite the Attorneys' efforts, there may be no recovery and that moving forward with the representation may end up costing Client money (e.g., through payment of expenses).

6.    <u>Assignment Of Legal Fees & Expenses.</u>  Client hereby assigns the Attorneys an equitable portion of any monies which Client receives pursuant to the Scope of Representation which is the subject of this agreement.  The purpose of this assignment is to secure payment of the legal fees and expenses specified in this Agreement, and this assignment shall create an attorney's lien upon any fund of Client which pertains to any case associated with the Scope of Representation.

7.    <u>Attorneys' Lien.</u>  Client agrees that the Attorneys shall retain a lien on any and all property provided to the Attorneys by Client to pursue his claims, including all personal papers and documents.  This lien shall remain in effect until all fees, expenses and court costs owing to the Attorneys are paid in full.

8.    Attorneys' Withdrawal.  Client agrees that if he does not perform any of Client's obligations under this Agreement, including but not limited to those described in the "Client's Duties" section above, that the Attorneys may withdraw from the Scope of this Representation.  Client understands there may be other circumstances which require one or more of the Attorneys to withdraw.

9.    Client's Withdrawal/Termination.  Client may terminate this agreement as a client, but Client agrees that he is obligated to pay legal fees (at the Attorneys' then-current hourly rates) and expenses incurred through the date that the Attorneys receive Client's written notice of withdrawal/ termination.

10.    Agreement Limited to Scope of Representation.  Client understands and agrees that this agreement covers only work done in connection with the Scope of Representation outlined above.  It does not cover any other legal representation on Client's behalf.

11.    No Tax Advice.  Client understands that because the Attorneys are not tax Attorneys, they cannot advise Client as to the proper tax treatment of any money Client recovers, any attorneys' fees and expenses paid on Client's behalf or and any attorneys' fees and expenses that Client pays.  Therefore, Client understands that Client's should talk to a qualified tax professional about the proper tax treatment of these matters if and when it becomes relevant.

AGREED TO THIS __30th__ DAY OF NOVEMBER 2018

11/30/18
Date Signed

12/21/2018
Date Signed

Catherine Simmons-Gill
Sole member
Offices of Catherine Simmons-Gill, LLC

12/3/2010
Date Signed

Page 5