**EXHIBIT G**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LYDIA VEGA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2013 CV 000451 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| CHICAGO PARK DISTRICT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### DECLARATION OF BRIAN J. GRABER (12/13/2018)

The undersigned, Brian J. Graber, makes this declaration and states:

1.      I offer the following in support of the Petition for Attorneys' Fees filed by the Offices of Catherine Simmons-Gill, LLC, in support of the Plaintiff's Request for Reasonable Attorneys' Fees and Costs in the case of Vega v. Chicago Park District, 2013 CV 000451.

2.      I am a solo attorney in my law firm, Brian J. Graber, Ltd., located at 150 N. Michigan Avenue, Suite 2800, Chicago, Illinois. I graduated from DePaul College of Law in 1999. I was admitted to practice in Illinois in November of 1999; before the United States District Court for the Northern District of Illinois in December of 1999; before the United States District Court for the Northern District of Illinois Trial Bar in January of 2000; and before the United States Court of Appeals for the Seventh Circuit in 2012.

3.      Following law school, I gained significant trial experience in the Circuit Court of Cook County. I have litigated complex cases involving product liability, medical negligence, construction negligence, premises liability, nursing home abuse and neglect, and trucking collision cases involving significant personal injuries and wrongful death. Since May of 2010, I have focused more on employment cases. I have litigated several employment cases on the side

1

of the plaintiff in the Circuit Courts of Illinois and the United States District Court for the Northern District of Illinois.

4.      I have been a member of the American Association for Justice from 2013 to present. I have been a member of the National Employment Lawyers' Association from 2012 to present. I have been a member of the National Employment Lawyers' Association/Illinois Chapter from 2012 to the present. I was appointed to serve as a NELA/Illinois Executive Board Member in 2015 and continue to serve in that capacity.

5.      In the last nineteen years, I have represented employees for civil rights violations; Illinois common law retaliatory discharge claims; Illinois Whistleblower Act claims; FLSA claims for unpaid minimum wages, overtime, and wrongful termination; Illinois Wage Payment and Collection Act claims; Title VII discrimination; ADA discrimination; Illinois Gender Violence Act claims; IHRA discrimination and retaliation claims; sexual harassment claims under both Title VII and the IHRA; and various federal whistleblower claims under the federal whistleblower statutes administered by the U.S. Department of Labor/OSHA.

6.      My current hourly billing rate, which I charge hourly clients and for which I bill in contingency cases unless a percentage of the recovery or common fund is received, is $450.00 per hour. I have charged clients $450.00 per hour since May of 2010. My hourly rate since May of 2010 of $450.00 is below the maximum hourly rate in the Laffey Matrix from May of 2010 to present. [Laffey Matrix attached hereto as Exhibit 1.] My hourly rate of $450.00 per hour is below the maximum rate for an attorney of similar experience from 2015 through 2019 according to the USAO Attorney's Fees Matrix. [USAO Attorney's Fees Matrix attached hereto as Exhibit 2.] In _Maxwell v. Islamic Republic of Pakistan, et al.,_ 2015 cv 5448 (N.D. Ill.), the

court found my hourly rate of $450.00 an hour reasonable in awarding attorney's fees on a motion for sanctions.

7.      I am familiar with the billing rates in the Chicago area for plaintiff's employment attorneys based on my own experience and in consulting with fellow employment practitioners representing plaintiffs in employment matters.

8.      I am familiar with the Laffey Matrix for 1995 through May 31, 2019, and the USAO Attorney Fees Matrix 2015-2019, which has been used in the U.S. District Courts for the Northern District of Illinois as one factor in determining the hourly rates of attorneys in fee shifting cases.

9.      I am familiar with the qualifications of Catherine Simmons-Gill from my conversations with Ms. Simmons-Gill and reviewing Ms. Simmons-Gill's Resume. [Simmons-Gill Resume attached hereto as Exhibit 3.] I understand that Ms. Simmons-Gill has practiced law since 1975 and has practiced in the area of employment law since 1997. I understand that Ms. Simmons-Gill's practice is 50% representing intellectual property clients and 50% representing plaintiff in employment claims.

10.     I understand that Ms. Simmons-Gill is claiming an hourly rate of $425.00 for office time for 1527.60 hours and $450.00 for 91.15 hours of court time in this matter. Based on my experience and knowledge of hourly rates charged by myself and other plaintiff's attorneys, it is my opinion that the rate sought by Ms. Simmons-Gill in the amount of $425.00 for office time and $450.00 for court time is well within the range of hourly rates charged to paying clients in these types of cases by attorneys of similar skill, reputation, and ability in the legal market. Ms. Simmons-Gill's hourly rate is much lower than the hourly rates approved in Laffey Matrix and the USAO Attorney's Fee Matrix 2015-2019 for an attorney of similar experience.

11.     I understand that Ross Drath is an associate of the Offices of Catherine Simmons-Gill, LLC, from August of 2013 through July of 2014. I understand that Mr. Drath graduated from John Marshall Law School in 2013. I understand that Mr. Drath billed 70.7 hours of office time at a billing rate of $200.00. Based on my experience and knowledge of hourly rates charged by myself and other plaintiff's attorneys, it is my opinion that the rate sought for Mr. Drath is well within the range of hourly rates charged to paying clients in these types of cases by attorneys of similar skill, reputation, and ability in the legal market. Mr. Drath's hourly rate of $200.00 an hour is much less than the hourly rates approved by the Laffey Matrix for 2013-2014.

12.     I understand that Ryan Estes was an independent contractor to the Law Offices of Catherine Simmons-Gill, LLC during the trial of this matter. I understand that Mr. Estes graduated from John Marshall Law School in 2013. I know Mr. Estes and I have had several conversations with Mr. Estes on employment law and litigation tactics. I know Mr. Estes to be very knowledgeable in employment law and a skilled attorney. I understand that Mr. Estes spent 37.50 hours in preparing the Plaintiff for trial testimony. I understand that Mr. Estes' hourly rate charged in this matter is $260.00. I understand that Mr. Estes' current hourly rate is $275.00. Based on my experience and knowledge of hourly rates charged by myself and other plaintiffs' attorneys, it is my opinion that the rate sought for Mr. Estes is well within the range of hourly rates charged to paying clients in these types of cases by attorneys of similar skill, reputation, and ability in the legal market. Mr. Estes' hourly rate of $260.00 an hour is much less than the hourly rates approved by the Laffey Matrix for 2013-2014 and USAO Attorney's fees Matrix 2015-2019.

13.     I understand that Matthew Douglas worked for the Offices of Catherine Simmons-Gill, LLC, as an associate from 2014 to 2017 and graduated from IIT Chicago-Kent

College of Law in 2011. I understand that Mr. Douglas' hourly billing rate for this litigation is $250.00 for office time and $275.00 for court time and that he billed 658.2 hours of office time and 66.10 hours of court time in this matter. Based on my experience and knowledge of hourly rates charged by myself and other plaintiff's attorneys, it is my opinion that the rates sought for Mr. Douglas are well within the range of hourly rates charged to paying clients in these types of cases by attorneys of similar skill, reputation, and ability in the legal market. Mr. Douglas' hourly rates are much less than the hourly rates approved by the Laffey Matrix and USAO Attorney's fees Matrix 2015-2019.

14.     I understand that Bernadette Coppola worked for the Offices of Catherine Simmons-Gill, LLC, as a law clerk from January 2013 to March of 2014 and then as an independent contractor from November 2016 to April 30, 2018. I understand that Ms. Coppola graduated from John Marshall Law School in January of 2013. I understand that Ms. Coppola's billing rate prior to being barred (January 2013 to March 2014) is $150.00 and that she has 77 hours of time at that rate. I understand that Ms. Coppola's billing rate and hours after being barred (November 2016 until April 2018) is $225.00 for office time of 480.50 hours and $250.00 for court time of 12.75 hours. Based on my experience and knowledge of hourly rates charged by myself and other plaintiff's attorneys, it is my opinion that the rate sought for Ms. Coppola's hourly rates of $225.00 for office time and $250 for court time is well within the range of hourly rates charged to paying clients in these types of cases by attorneys of similar skill, reputation, and ability in the legal market. Ms. Coppola's  hourly rates are much less than the hourly rates approved by the Laffey Matrix and USAO Attorney's fees Matrix 2015-2019. Ms. Coppola's rate of $150.00 is less than the rate charged for law clerks in the Laffey Matrix, and therefore, reasonable.

15.     I understand that Kyle Aurand worked for the Offices of Catherine Simmons-Gill, LLC, as an independent contractor between 2015 and 2017. I understand that Mr. Aurand graduated from John Marshall Law School in 2015 and was admitted to the Illinois Bar in 2015. I understand that Mr. Aurand was billed at a senior paralegal rates of $150.00 for office time and $175.00 for court time and that he billed 70 hours of office time and 56 hours of court time. Mr. Aurand's rate of senior paralegal rates of $150.00 for office time and $175.00 for court time are less than the rates charged for paralegals and law clerks in the Laffey Matrix and equal to the rates in the USAO Attorney's fees Matrix 2015-2019, and therefore, reasonable.

16.     I understand that Pawel Fraczek was an independent contractor to the Offices of Catherine Simmons-Gill, LLC, from 2015 to present. I understand that Mr. Fraczek graduated from John Marshall in June of 2015, and was admitted to the Illinois Bar. I understand that Mr. Fraczek was billed at a senior paralegal rate for office time of $150.00 per hour and that he billed 29 hours of office time. Mr. Fraczek's rate of senior paralegal rate of $150.00 for office time is less than the rate charged for paralegals and law clerks in the Laffey Matrix and equal to the rates in the USAO Attorney's fees Matrix 2015-2019, and therefore, reasonable.

17.     I understand that Geneva Gorgo is an independent contractor to the Offices of Catherine Simmons-Gill, LLC who performs services as a paralegal digesting depositions. I understand that Ms. Gorgo was billed at a paralegal rate of $100 per hour for these services (111 hours) which is less than the rate charged for paralegals and law clerks in the Laffey Matrix and the USAO Attorney's fees Matrix 2015-2019, and therefore, reasonable.

18.     I understand that Maria Rosario is a paralegal employed by the Offices of Catherine Simmons-Gill, LLC, since 2013, at an hourly rate of $75.00 and that she billed for 265.25 hours. Ms. Rosario's paralegal rate of $75.00 is less than the rate charged for paralegals

and law clerks in the Laffey Matrix and the USAO Attorney's fees Matrix 2015-2019, and therefore, reasonable.

19.     I have read and reviewed the time sheets for the legal services performed by the Offices of Catherine Simmons-Gill, LLC, in connection with this matter. I understand that the Offices of Catherine Simmons-Gill, LLC, regularly bills legal time on an hourly basis in 6-minute increments based on the standard hourly rate. I follow the same standard of billing legal time on an hourly basis in 6-minute increments and it is my understanding this is the standard in the legal community.

20.     Based on my review of the time sheets for the legal services performed, I understand that the Defendant forced the Plaintiff to litigate her claims from beginning of the administrative process through a jury verdict. Based on my review of the time sheets it is my understanding that Plaintiff is claiming that her attorneys and legal professionals spent 3,952.00 hours litigating this matter to date and seek $1,075,538.75 in legal fees. The Offices of Catherine Simmons-Gill, LLC, obtained excellent results for the Plaintiff with a jury award of $750,000.00 in compensatory damages for race discrimination under Title VII and 42 U.S.C. §§1981 and 1983, which was reduced to $300,000.00 under the Title VII caps. The excellent legal representation of the Plaintiff continued with a bench trial resulting in reinstatement, a proposed approximate $190,000.00 in back-pay damages, a proposed approximate gross-up on the taxes in the amount of $30,000.00, and proposed approximate amount of prejudgment interest of $42,000.00. Based on my experience and knowledge of litigating employment cases, and the fact that the Defendant's attorneys presented a hyper-aggressive defense which drove up the legal expenses and legal fees to 3,554.10 hours (3952 total reduced voluntarily by 397.9)  claimed and

7

the legal fees in the amount of $1,075,538.75 are reasonable. See Cuff v. Trans State Holdings,

Inc., 768 F.3d 605, 611 (7th Cir. 2014).

      21.    I reviewed the Declaration for the Bill of Costs in this matter. Based on my

review of the Bill of Costs and my understanding as to hyper-aggressive defense by the

Defendant's attorneys, the total costs sought within the Bill of Costs are the reasonable and

necessary costs incurred in this type of litigation to obtain the excellent results in this matter for

the Plaintiff.

      Under penalties of perjury, under the laws of the United States and pursuant to 28 U.S.C.

§1946 the undersigned certifies the statements set forth in this Declaration are true and accurate

to the best of his knowledge and belief.

Dated: March 28, 2019

Brian J. Graber

Brian J. Graber
BRIAN J. GRABER, LTD.
150 N. Michigan Avenue
Suite 2800
Chicago, IL 60601
(312) 291-4648

8

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| | ) | |
| LYDIA E. VEGA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 13 cv 00451 |
| | ) | |
| v. | ) | Judge Jorge L. Alonso |
| | ) | |
| CHICAGO PARK DISTRICT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**EXHIBIT G   GRABER DECLARATION**

**EXHIBIT 1**

**Laffey Matrix**

matrix                                                                                    12/12/18, 11:41 AM

# LAFFEY MATRIX

History

Case Law

Expert Opinion

See the Matrix

Contact us

Home

Links

|  |  |  | Years Out of Law School * | | | | |
|---|---|---|---|---|---|---|---|
| Year | Adjustmt Factor** | Paralegal/ Law Clerk | 1-3 | 4-7 | 8-10 | 11-19 | 20 + |
| 6/01/18- 5/31/19 | 1.0350 | $202 | $371 | $455 | $658 | $742 | $894 |
| 6/01/17- 5/31/18 | 1.0463 | $196 | $359 | $440 | $636 | $717 | $864 |
| 6/01/16- 5/31/17 | 1.0369 | $187 | $343 | $421 | $608 | $685 | $826 |
| 6/01/15- 5/31/16 | 1.0089 | $180 | $331 | $406 | $586 | $661 | $796 |
| 6/01/14- 5/31/15 | 1.0235 | $179 | $328 | $402 | $581 | $655 | $789 |
| 6/01/13- 5/31/14 | 1.0244 | $175 | $320 | $393 | $567 | $640 | $771 |
| 6/01/12- 5/31/13 | 1.0258 | $170 | $312 | $383 | $554 | $625 | $753 |
| 6/01/11- 5/31/12 | 1.0352 | $166 | $305 | $374 | $540 | $609 | $734 |
| 6/01/10- 5/31/11 | 1.0337 | $161 | $294 | $361 | $522 | $589 | $709 |
| 6/01/09- 5/31/10 | 1.0220 | $155 | $285 | $349 | $505 | $569 | $686 |
| 6/01/08- 5/31/09 | 1.0399 | $152 | $279 | $342 | $494 | $557 | $671 |
| 6/01/07-5/31/08 | 1.0516 | $146 | $268 | $329 | $475 | $536 | $645 |
| 6/01/06-5/31/07 | 1.0256 | $139 | $255 | $313 | $452 | $509 | $614 |
| 6/1/05-5/31/06 | 1.0427 | $136 | $249 | $305 | $441 | $497 | $598 |
| 6/1/04-5/31/05 | 1.0455 | $130 | $239 | $293 | $423 | $476 | $574 |
| 6/1/03-6/1/04 | 1.0507 | $124 | $228 | $280 | $405 | $456 | $549 |
| 6/1/02-5/31/03 | 1.0727 | $118 | $217 | $267 | $385 | $434 | $522 |
| 6/1/01-5/31/02 | 1.0407 | $110 | $203 | $249 | $359 | $404 | $487 |
| 6/1/00-5/31/01 | 1.0529 | $106 | $195 | $239 | $345 | $388 | $468 |
| 6/1/99-5/31/00 | 1.0491 | $101 | $185 | $227 | $328 | $369 | $444 |
| 6/1/98-5/31/99 | 1.0439 | $96 | $176 | $216 | $312 | $352 | $424 |

matrix

12/12/18, 11:41 AM

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 6/1/97-5/31/98 | 1.0419 | $92 | $169 | $207 | $299 | $337 | $406 |
| 6/1/96-5/31/97 | 1.0396 | $88 | $162 | $198 | $287 | $323 | $389 |
| 6/1/95-5/31/96 | 1.032 | $85 | $155 | $191 | $276 | $311 | $375 |
| 6/1/94-5/31/95 | 1.0237 | $82 | $151 | $185 | $267 | $301 | $363 |

The methodology of calculation and benchmarking for this Updated Laffey Matrix has been approved in a number of cases. See, e.g., McDowell v. District of Columbia, Civ. A. No. 00-594 (RCL), LEXSEE 2001 U.S. Dist. LEXIS 8114 (D.D.C. June 4, 2001); Salazar v. Dist. of Col., 123 F.Supp.2d 8 (D.D.C. 2000).

* "Years Out of Law School" is calculated from June 1 of each year, when most law students graduate. "1-3" includes an attorney in his 1st, 2nd and 3rd years of practice, measured from date of graduation (June 1). "4-7" applies to attorneys in their 4th, 5th, 6th and 7th years of practice. An attorney who graduated in May 1996 would be in tier "1-3" from June 1, 1996 until May 31, 1999, would move into tier "4-7" on June 1, 1999, and tier "8-10" on June 1, 2003.

** The Adjustment Factor refers to the nation-wide Legal Services Component of the Consumer Price Index produced by the Bureau of Labor Statistics of the United States Department of Labor.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| LYDIA E. VEGA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 13 cv 00451 |
| | ) | |
| v. | ) | Judge Jorge L. Alonso |
| | ) | |
| CHICAGO PARK DISTRICT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**EXHIBIT G  GRABER DECLARATION**

**EXHIBIT 2**

**USAO Attorney's Fees Matrix**

## USAO ATTORNEY'S FEES MATRIX — 2015-2019

*Revised Methodology starting with 2015-2016 Year*

Years (Hourly Rate for June 1 – May 31, based on change in PPI-OL since January 2011)

| Experience | 2015-16 | 2016-17 | 2017-18 | 2018-19 |
|---|---|---|---|---|
| 31+ years | 568 | 581 | 602 | 613 |
| 21-30 years | 530 | 543 | 563 | 572 |
| 16-20 years | 504 | 516 | 536 | 544 |
| 11-15 years | 455 | 465 | 483 | 491 |
| 8-10 years | 386 | 395 | 410 | 417 |
| 6-7 years | 332 | 339 | 352 | 358 |
| 4-5 years | 325 | 332 | 346 | 351 |
| 2-3 years | 315 | 322 | 334 | 340 |
| Less than 2 years | 284 | 291 | 302 | 307 |
| Paralegals & Law Clerks | 154 | 157 | 164 | 166 |

*Explanatory Notes*

1. This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia (USAO) to evaluate requests for attorney's fees in civil cases in District of Columbia courts. The matrix is intended for use in cases in which a fee-shifting statute permits the prevailing party to recover "reasonable" attorney's fees. *See, e.g.,* 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412(b) (Equal Access to Justice Act). The matrix has not been adopted by the Department of Justice generally for use outside the District of Columbia, or by other Department of Justice components, or in other kinds of cases. The matrix does **not** apply to cases in which the hourly rate is limited by statute. *See* 28 U.S.C. § 2412(d).

2. A "reasonable fee" is a fee that is sufficient to attract an adequate supply of capable counsel for meritorious cases. *See, e.g., Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 552 (2010). Consistent with that definition, the hourly rates in the above matrix were calculated from average hourly rates reported in 2011 survey data for the D.C. metropolitan area, which rates were adjusted for inflation with the Producer Price Index-Office of Lawyers (PPI-OL) index. The survey data comes from ALM Legal Intelligence's 2010 & 2011 Survey of Law Firm Economics. The PPI-OL index is available at http://www.bls.gov/ppi. On that page, under "PPI Databases," and "Industry Data (Producer Price Index - PPI)," select either "one screen" or "multi-screen" and in the resulting window use "industry code" 541110 for "Offices of Lawyers" and "product code" 541110541110 for "Offices of Lawyers." The average hourly rates from the 2011 survey data are multiplied by the PPI-OL index for May in the year of the update, divided by 176.6, which is the PPI-OL index for January 2011, the month of the survey data, and then rounding to the nearest whole dollar (up if remainder is 50¢ or more).

3. The PPI-OL index has been adopted as the inflator for hourly rates because it better reflects the mix of legal services that law firms collectively offer, as opposed to the legal services that typical consumers use, which is what the CPI-

Legal Services index measures. Although it is a national index, and not a local one, *cf. Eley v. District of Columbia*, 793 F.3d 97, 102 (D.C. Cir. 2015) (noting criticism of national inflation index), the PPI-OL index has historically been generous relative to other possibly applicable inflation indexes, and so its use should minimize disputes about whether the inflator is sufficient.

4.  The methodology used to compute the rates in this matrix replaces that used prior to 2015, which started with the matrix of hourly rates developed in *Laffey v. Northwest Airlines, Inc.* 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985), and then adjusted those rates based on the Consumer Price Index for All Urban Consumers (CPI-U) for the Washington-Baltimore (DC-MD-VA-WV) area. Because the USAO rates for the years 2014-15 and earlier have been generally accepted as reasonable by courts in the District of Columbia, *see* note 9 below, the USAO rates for those years will remain the same as previously published on the USAO's public website. That is, the USAO rates for years prior to and including 2014-15 remain based on the prior methodology, *i.e.*, the original *Laffey* Matrix updated by the CPI-U for the Washington-Baltimore area. *See Citizens for Responsibility & Ethics in Washington v. Dep't of Justice*, 142 F. Supp. 3d 1 (D.D.C. 2015) and Declaration of Dr. Laura A. Malowane filed therein on Sept. 22, 2015 (Civ. Action No. 12-1491, ECF No. 46-1) (confirming that the USAO rates for 2014-15 computed using prior methodology are reasonable).

5.  Although the USAO will not issue recalculated *Laffey* Matrices for past years using the new methodology, it will not oppose the use of that methodology (if properly applied) to calculate reasonable attorney's fees under applicable fee-shifting statutes for periods prior to June 2015, provided that methodology is used consistently to calculate the entire fee amount. Similarly, although the USAO will no longer issue an updated *Laffey* Matrix computed using the prior methodology, it will not oppose the use of the prior methodology (if properly applied) to calculate reasonable attorney's fees under applicable fee-shifting statutes for periods after May 2015, provided that methodology is used consistently to calculate the entire fee amount.

6.  The various "brackets" in the column headed "Experience" refer to the attorney's years of experience practicing law. Normally, an attorney's experience will be calculated starting from the attorney's graduation from law school. Thus, the "Less than 2 years" bracket is generally applicable to attorneys in their first and second years after graduation from law school, and the "2-3 years" bracket generally becomes applicable on the second anniversary of the attorney's graduation (*i.e.*, at the beginning of the third year following law school). *See Laffey*, 572 F. Supp. at 371. An adjustment may be necessary, however, if the attorney's admission to the bar was significantly delayed or the attorney did not otherwise follow a typical career progression. *See, e.g., EPIC v. Dep't of Homeland Sec.*, 999 F. Supp. 2d 61, 70-71 (D.D.C. 2013) (attorney not admitted to bar compensated at "Paralegals & Law Clerks" rate); *EPIC v. Dep't of Homeland Sec.*, 982 F. Supp. 2d 56, 60-61 (D.D.C. 2013) (same). The various experience levels were selected by relying on the levels in the ALM Legal Intelligence 2011 survey data. Although finer gradations in experience level might yield different estimates of market rates, it is important to have statistically sufficient sample sizes for each experience level. The experience categories in the current USAO Matrix are based on statistically significant sample sizes for each experience level.

7.  ALM Legal Intelligence's 2011 survey data does not include rates for paralegals and law clerks. Unless and until reliable survey data about actual paralegal/law clerk rates in the D.C. metropolitan area become available, the USAO will compute the hourly rate for Paralegals & Law Clerks using the most recent historical rate from the USAO's former *Laffey* Matrix (*i.e.*, $150 for 2014-15) updated with the PPI-OL index. The formula is $150 multiplied by the PPI-OL index for May in the year of the update, divided by 194.3 (the PPI-OL index for May 2014), and then rounding to the nearest whole dollar (up if remainder is 50¢ or more).

8.  The USAO anticipates periodically revising the above matrix if more recent reliable survey data becomes available, especially data specific to the D.C. market, and in the interim years updating the most recent survey data with the PPI-OL index, or a comparable index for the District of Columbia if such a locality-specific index becomes available.

9.  Use of an updated *Laffey* Matrix was implicitly endorsed by the Court of Appeals in *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (en banc). The Court of Appeals subsequently stated that parties may rely on the updated *Laffey* Matrix prepared by the USAO as evidence of prevailing market rates for litigation counsel in the Washington, D.C. area. *See Covington v. District of Columbia*, 57 F.3d 1101, 1105 & n.14, 1109 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1115 (1996). Most lower federal courts in the District of Columbia

have relied on the USAO's *Laffey* Matrix, rather than the so-called "*Salazar* Matrix" (also known as the "LSI Matrix" or the "Enhanced *Laffey* Matrix"), as the "benchmark for reasonable fees" in this jurisdiction. *Miller v. Holzmann*, 575 F. Supp. 2d 2, 18 n.29 (D.D.C. 2008) (quoting *Pleasants v. Ridge*, 424 F. Supp. 2d 67, 71 n.2 (D.D.C. 2006)); *see, e.g., Joaquin v. Friendship Pub. Charter Sch.*, 188 F. Supp. 3d 1 (D.D.C. 2016); *Prunty v. Vivendi*, 195 F. Supp. 3d 107 (D.D.C. 2016); *CREW v. U.S. Dep't of Justice*, 142 F. Supp. 3d 1 (D.D.C. 2015); *McAllister v. District of Columbia*, 21 F. Supp. 3d 94 (D.D.C. 2014); *Embassy of Fed. Republic of Nigeria v. Ugwuonye*, 297 F.R.D. 4, 15 (D.D.C. 2013); *Berke v. Bureau of Prisons*, 942 F. Supp. 2d 71, 77 (D.D.C. 2013); *Fisher v. Friendship Pub. Charter Sch.*, 880 F. Supp. 2d 149, 154-55 (D.D.C. 2012); *Sykes v. District of Columbia*, 870 F. Supp. 2d 86, 93-96 (D.D.C. 2012); *Heller v. District of Columbia*, 832 F. Supp. 2d 32, 40-49 (D.D.C. 2011); *Hayes v. D.C. Public Schools*, 815 F. Supp. 2d 134, 142-43 (D.D.C. 2011); *Queen Anne's Conservation Ass'n v. Dep't of State*, 800 F. Supp. 2d 195, 200-01 (D.D.C. 2011); *Woodland v. Viacom, Inc.*, 255 F.R.D. 278, 279-80 (D.D.C. 2008); *American Lands Alliance v. Norton*, 525 F. Supp. 2d 135, 148-50 (D.D.C. 2007). *But see, e.g., Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 13-15 (D.D.C. 2000). Since initial publication of the instant USAO Matrix in 2015, numerous courts similarly have employed the USAO Matrix rather than the *Salazar* Matrix for fees incurred since 2015. *E.g., Electronic Privacy Information Center v. United States Drug Enforcement Agency*, 266 F. Supp. 3d 162, 171 (D.D.C. 2017) ("After examining the case law and the supporting evidence offered by both parties, the Court is persuaded that the updated USAO matrix, which covers billing rates from 2015 to 2017, is the most suitable choice here.") (requiring re-calculation of fees that applicant had computed according to *Salazar* Matrix); *Clemente v. FBI*, No. 08-1252 (BJR) (D.D.C. Mar. 24, 2017), 2017 WL 3669617, at *5 (applying USAO Matrix, as it is "based on much more current data than the *Salazar* Matrix"); *Gatore v. United States Dep't of Homeland Security*, 286 F. Supp. 3d 25, 37 (D.D.C. 2017) (although plaintiff had submitted a "'great deal of evidence regarding [the] prevailing market rates for complex federal litigation' to demonstrate that its requested [*Salazar*] rates are entitled to a presumption of reasonableness, . . . the Court nonetheless concludes that the defendant has rebutted that presumption and shown that the current USAO Matrix is the more accurate matrix for estimating the prevailing rates for complex federal litigation in this District"); *DL v. District of Columbia*, 267 F. Supp. 3d 55, 70 (D.D.C. 2017) ("the USAO Matrix ha[s] more indicia of reliability and more accurately represents prevailing market rates" than the *Salazar* Matrix). The USAO contends that the *Salazar* Matrix is fundamentally flawed, does not use the *Salazar* Matrix to determine whether fee awards under fee-shifting statutes are reasonable, and will not consent to pay hourly rates calculated with the methodology on which that matrix is based. The United States recently submitted an appellate brief that further explains the reliability of the USAO Matrix vis-à-vis the *Salazar* matrix. *See* Br. for the United States as *Amicus Curiae* Supporting Appellees, *DL v. District of Columbia*, No. 18-7004 (D.C. Cir. filed July 20, 2018).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| LYDIA E. VEGA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 13 cv 00451 |
| | ) | |
| v. | ) | Judge Jorge L. Alonso |
| | ) | |
| CHICAGO PARK DISTRICT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**EXHIBIT G   GRABER DECLARATION**

**EXHIBIT 3**

**Catherine Simmons-Gill CV**

# CATHERINE SIMMONS-GILL

## PROFESSIONAL EXPERIENCE

**OFFICES OF CATHERINE SIMMONS-GILL, LLC., CHICAGO, IL**   1997 - Present
  Legal services: trademark, copyright, Internet; employment law counseling
  and litigation;  general commercial litigation;
  business consulting: business plans and intellectual property management

**HARLEY DAVIDSON, INC., MILWAUKEE, WI**   1996 - 1997
  Vice President, General Counsel and Secretary

**GENERAL MEDIA INTERNATIONAL, INC., NEW YORK, NY**   1994 - 1996
  Vice President, General Counsel and Secretary

**STERLING WINTHROP INC., NEW YORK, NY**   1991 - 1993
  Chief Trademark Counsel - Division Vice President

**SCHAEFER, ROSENWEIN & FLEMING, CHICAGO, IL**   1990 - 1991
  Partner

**SEARS, ROEBUCK AND CO., CHICAGO, IL**   1978 - 1990
  Senior Corporate Counsel - Corporate Identity/
  Assistant Secretary for Intellectual Property   1988 - 1990

**PATTISHALL, MCAULIFFE & HOFSTETTER, CHICAGO, IL**   1975 - 1978
(Now Pattishall, McAuliffe, Newbury, Hilliard & Geraldson)
  Associate

## EDUCATION

**J.D. - 1975 NORTHWESTERN UNIVERSITY**   **A.B. 1971 UNIVERSITY**
**SCHOOL OF LAW,** Dean's List   **of Illinois at Chicago,**
Senior research with honors: Is §43(a)   With Honors
of the Lanham Act a Consumer Remedy?

## COURSES TAUGHT

**THE JOHN MARSHALL LAW SCHOOL**   1999 - Present
  Adjunct Professor (J.D. and LLM levels) – courses taught:  International Trademark
  Law, Trademark and Copyright Planning and Practice, International Antitrust and
  Intellectual Property, Trademark/Copyright Law, Trademark Clinic Supervisor

EXPERT WITNESS

*Russell Specialties Corporation v. Media Image, Inc., et al.* C00-1916 (W.D. Wash. 2000)

*Brune v. Time Warner* 02 cv 5703 (S.D.N.Y 2002)

*O'Reilly Automotive Stores, Inc. v. Bearing Technologies, Ltd.* 6:16-cv-03102-MJW (W.D. Mo. 2016)

CURRENT PROFESSIONAL MEMBERSHIPS

**INTERNATIONAL TRADEMARK ASSOCIATION**                                         1975 - Present
> President 1995 – 1996
> 1999-2003 – Founded the Academic Program and Membership

**Federal Bar Association, Illinois State Bar Association, Chicago Bar Association, NELA-Illinois (National Employment Lawyers Association-Illinois Chapter)**

PRESENTATIONS AND PUBLICATIONS

2003 **Trademark Licensing Basics**
LexisNexis/Brinks, Hofer Conference:
Trademark Law-Beyond the Basics
Chicago, Illinois (published)

2003 **Copyright and Trademark Law for the Journalist**
Illinois Women's Press Association
Chicago, Illinois

2003 **Litigation in the Patent and Trademark Office:**
A Separate Venue for Involved Contests to
Determine Valuable Rights Chicago Bar
Association
Chicago, Illinois

2002 **Ethics and the Trademark Paralegal**
INTA Trademark Administrators
Conference
Washington DC

2002 **Trademark Lawyers are from Venus Tax Lawyers are from Mars Can this Marriage be Saved?**
Advanced Trademark Law Seminar
Practicing Law Institute
New York City (published)

2001 **Tax Planning for Intellectual Property-A Realistic Approach**
Committee on State Taxation
2001 Great Issues Conference
Asheville, North Carolina

2001 **Anti-counterfeiting & Parallel Imports**
International Trademark Association
Los Angeles, California

1996 **Litigating in Cyberspace**
American Bar Association Annual Meeting
Orlando, Florida

1995 **The Obverse Side of the Coin:**
**The Right to Publicity v. The Right of**
**Privacy**
Multimedia Law Institute
New York City 1995
Published as
**Invasion of Privacy vs. Newsworthiness**
The Multimedia Law Reporter Vol.1, No.
12, October 1995

1993 **Trademarks and Taxation**
Advanced Trademark Law Seminar
Practicing Law Institute
New York City (published)

1992 **Litigation Forum: Getting It Together**
United States Trademark Association

1989 **The Trademark Revision Act of 1989**
Illinois Institute of Continuing Legal
Education/Chicago Bar Association

1989 **Communication with Clients**
Fundamentals Plus Forum
United States Trademark Association

1988 **Lawyers and Intellectual Property**
Sears Senior Counsel Annual Meeting

1986 **Viewpoint of In-House Counsel**
Controlling Litigation and Litigation Costs
Illinois Institute of Continuing Legal
Education (published)

1985 **Recent Developments and Practical**
**Suggestions in**
**the Area of Trademark Licensing**
Illinois Institute of Continuing Legal
Education

1983 **In-House Trademark Protection**
**Programs**
Illinois Institute of Continuing Legal
Education

1978 **The New Federal Copyright Law**
**with David C. Hilliard,**
published by brief/case, Bar Association of
San Francisco and 59 Chicago Bar Record 1