**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LYDIA VEGA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 13 C 451 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| | ) | |
| CHICAGO PARK DISTRICT, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lydia Vega brought this lawsuit asserting claims of national-origin discrimination against her former employer, the Chicago Park District ("CPD"), arising out of her termination in September 2012. A jury found in her favor on her discrimination claims, and the Court subsequently awarded back pay and other equitable relief. Following an appeal in which the Seventh Circuit vacated the Court's tax component award, but otherwise affirmed, the Court now reconsiders the tax-component award and awards plaintiff certain attorneys' fees and costs, as follows.

## BACKGROUND

Plaintiff, a Hispanic woman, was terminated by CPD in 2012, after more than twenty years of service, following an investigation into the falsification of her time sheets. She subsequently filed this lawsuit, and she prevailed at a jury trial on her claim of national-origin discrimination under Title VII, 42 U.S.C. § 2000e.

Plaintiff requested certain post-trial equitable relief, including back pay as well as a tax-component award to offset any increased income-tax liability that a lump-sum back-pay award would cause her to incur. Plaintiff argued that, without a tax-component award, her tax liability

would virtually cancel out her back-pay award. Initially, the Court could not follow plaintiff's tax-component-award calculations and declined to make any such award, but it gave plaintiff leave to provide a fuller explanation in a supplemental brief.

Plaintiff filed a supplemental brief in which she followed the methodology employed by the district court in *Washington v. Office of the State Appellate Defender*, No. 12 C 8533, 2016 WL 3058377, at *9 (N.D. Ill. May 31, 2016), and 2016 WL 5233563, at *4 (N.D. Ill. Sept. 22, 2016). In that case, the court calculated the tax-component award by (1) subtracting the plaintiff's actual tax burden during the back-pay period from the tax burden she would have born during the same period had she remained employed by the defendant, (2) subtracting the plaintiff's expected tax burden in the year of the decision, *absent* any lump-sum back-pay award, from that portion of her expected tax burden attributable to the back-pay award *in the event* that a lump-sum payment was made in the same year, and (3) subtracting the result of (1) from the result of (2). *See* 2016 WL 3058377, at *9 n. 11; 2016 WL 5233563, at * 4.

Persuaded by plaintiff's brief, as it stated in a footnote to the final judgment order, this Court incorporated the amount plaintiff calculated in her supplemental brief into its final judgment. The Seventh Circuit vacated the tax-component award and remanded for reconsideration, reasoning, without mentioning the footnote in the final judgment order, that this Court "did not explain how it arrived" at the amount of the award, and the Seventh Circuit was "unable to readily discern whether the calculation is accurate." *Vega v. Chicago Park Dist.*, 954 F.3d 996, 1010 (7th Cir. 2020). The parties have updated their briefing, and the Court now considers the tax-component award anew, along with plaintiff's petition for attorneys' fees, her bill of costs, and defendant's motion for sanctions under 28 U.S.C. § 1927.

## I.     TAX-COMPONENT AWARD

"Under Title VII, after an employer has been found to have intentionally engaged in an unlawful employment practice, the district court may order back pay, reinstatement, and 'any other equitable relief as the court deems appropriate.'" *Washington*, 2016 WL 3058377, at *4 (quoting 42 U.S.C. § 2000e–5(g)(1)). In deciding what forms of equitable relief are appropriate in a particular case, the district court is vested "with broad discretion to fashion a remedy." *EEOC v. Ilona of Hungary*, 108 F.3d 1569, 1580 (7th Cir. 1997).

> The guiding principle in exercising that discretion is that the court "has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975) (internal quotation marks and citation omitted). "And where a legal injury is of an economic character, [t]he general rule is, that . . . [t]he injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed." *Id.* at 418-19 (internal quotation marks and citation omitted); *see also Ford Motor Co. v. EEOC*, 458 U.S. 219, 230 (1982) (the statutory aim is "to make the victims of unlawful discrimination whole by restoring them, so far as possible . . . to a position where they would have been were it not for the unlawful discrimination") (internal quotations and citation omitted).

*Ortega v. Chi. Bd. of Educ.*, 280 F. Supp. 3d 1072, 1078 (N.D. Ill. 2017) (internal citations altered).

The Seventh Circuit has recognized that, when a back pay award will bump a prevailing plaintiff into a higher tax bracket, causing him to pay more in taxes than he would have if he had not been terminated and received his pay on a gradual basis over several years rather than in a lump sum following a lawsuit, a tax-component award may be necessary to make the plaintiff whole and serve the purpose of Title VII's remedial scheme. *EEOC v. N. Star Hosp., Inc.*, 777 F.3d 898, 904 (7th Cir. 2015).

In her post-appeal brief, as in the supplemental brief she filed prior to defendant's appeal, plaintiff has again walked through the methodology the district court employed in *Washington*. She calculates that if she had remained employed by CPD for the period of the back pay award

3

(2012-2018), she would have paid $2,800 in income tax (none in any year but 2018, after the 2017 revision of the tax laws), and she actually paid only $837 in income tax during that period, a difference of $1,963. As for 2020, based on the IRS's 2020 income tax tables, she calculates that she will owe $2,861.76 in federal income tax in the absence of any payment of back pay or damages, whereas in the event that she receives the back pay and other relief the Court has awarded this year, her income will be $539,993.87, on which she will owe $161,783.23 in federal income taxes at an effective tax rate of 29.96%. Applying that effective tax rate to the back-pay award of $180,402.90 only (not to the compensatory damages), the resulting tax liability attributable to the back-pay award is $54,049.07. The difference between $54,049.07 and $2,861.76 is $51,187.30. To compensate her for the excess tax liability, then, plaintiff asks for $49,224.30, the difference between $51,187.30 and $1,963.

Defendant does not appear to object to the theory underlying plaintiff's methodology, but it argues that plaintiff has not reliably applied it to the facts of this case. According to defendant, plaintiff has not provided sufficient information about how she calculated her tax liability in prior years or her expected tax liability in 2020, and therefore she has not met her burden of proof.

The Court fails to see the deficiency in plaintiff's calculations. First, defendant has not identified, and the Court does not see, any infirmity in the *Washington* methodology. As for plaintiff's application of it to her own case, defendant's principal objection is that many of the figures plaintiff uses as inputs are self-provided and self-calculated, without the apparent advice or involvement of an accountant or other expert tax preparer. But the Court does not agree with defendant that calculation of an individual's tax liability, at least in simple circumstances such as those of this case, is the sort of subject that requires an expert witness. While the assistance of an accountant or other expert might be helpful, the calculation is not ultimately more complicated

4

than applying law to facts, which is a task a lawyer or indeed a layperson is competent to do; lay taxpayers routinely prepare and file their own tax returns. If plaintiff made some error in her calculations, it was incumbent on defendant to identify it; it is not enough merely to point out that plaintiff did not hire an expert.

Defendant argues that it is unable to identify any error in plaintiff's 2012-2017 tax returns because plaintiff redacted most of the data in them, offering them only to show that she paid no income tax those years. But this is not the proper forum to relitigate plaintiff's tax liability in every year of the back pay period. She filed tax returns in which she represented to the government that she owed no taxes and she testified that she paid no federal income tax during these years, which does not strike the Court as implausible, given her low level of income during this time (as the Court remarked in a previous opinion, she made approximately half as much during the back pay period as she would have if she had remained employed by CPD, *see Vega v. Chicago Park District*, 351 F. Supp. 3d 1078, 1092 (N.D. Ill. 2018)). Defendant knows how much income plaintiff made during these years, and it was incumbent upon defendant to explain why it believes she must have owed taxes on it, but defendant doesn't do so. In any case, what matters for purposes of the tax-component award is not so much whether plaintiff should have paid income taxes in these years but that she did not, and the Court accepts the evidence, however imperfect, that she did not.

Finally, defendant argues that plaintiff errs by including the impact of her compensatory damages award in determining which tax bracket she will fall into in 2020 as part of her calculation of the tax-component award. Defendant is incorrect. Had plaintiff calculated and sought to recover for the increase in tax liability that was directly due to the compensatory damages award, *i.e.*, for the taxes plaintiff would owe on the compensatory damages award itself, defendant would

5

have a point.  But that is not what plaintiff has done; plaintiff has merely (correctly) included the compensatory damages award in her expected 2020 taxable income in order to determine what tax bracket she will be in, in order to determine, in turn, how much she will owe in federal income tax on the back pay award in 2020.  As the Court has explained above, plaintiff calculated her effective tax rate and applied it only to the back-pay award, not to her 2020 income as a whole, in calculating the amount that would offset her increased tax liability due to the back-pay award.  Plaintiff is not seeking a tax-component award to offset her entire 2020 tax liability or the portion due to the compensatory damages award, so defendant's argument is misplaced.

Defendant's arguments do not hold water, and any other arguments it may have made but did not are waived.[1]  Based on plaintiff's clear and cogent explanation in her briefs, the Court accepts and adopts her reasoning and finds plaintiff's proposed tax-component award to be a well-founded, reasonable means of making plaintiff whole.  The Court awards plaintiff $49,224.30 to offset the increased tax liability she will incur on her back-pay award.

## II.     PETITION FOR FEES AND COSTS

Under Title VII, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . as part of the costs."  42 U.S.C. § 2000e-5(k).  Federal Rule of Civil Procedure 54(d)(1) allows a prevailing party to recover costs other than attorneys' fees unless a federal statute, federal rule, or court order states otherwise.  Plaintiff has petitioned for fees and costs.

---

[1] Defendant's brief was only a shade over three pages, and it shed more heat than light. Some sort of tax-component award is certainly necessary to make plaintiff whole, and defendant did little to explain how better to calculate the award than plaintiff had—and the Court need not "do [its] research for [it]."  *United States v. Giovanetti*, 919 F.2d 1223, 1230 (7th Cir. 1990).

### A. Attorneys' Fees

To determine the amount of a "reasonable attorney's fee" in a particular case, "the district court uses the lodestar method, multiplying the 'number of hours reasonably expended on the litigation . . . by a reasonable hourly rate.'" *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "There is a strong presumption that the lodestar calculation yields a reasonable attorneys' fee award." *Pickett*, 664 F.3d at 639 (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010)). "The party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed." *Nichols v. Illinois Dep't of Transportation*, No. 12-CV-1789, 2019 WL 157915, at *2 (N.D. Ill. Jan. 10, 2019) (citing *Hensley*, 461 U.S. at 433).

> The hours worked component of the lodestar excludes hours "not reasonably expended," including "excessive, redundant, or otherwise unnecessary" hours. [*Hensley*, 461 U.S.] at 434 (quotation marks omitted). "[T]he court should disallow not only hours spent on tasks that would normally not be billed to a paying client, but also those hours expended by counsel on tasks that are easily delegable to non-professional assistance." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999) (quotation marks omitted). The Court also may reduce the hours calculation "[w]here the documentation of hours is inadequate." *Hensley*, 461 U.S. at 433.

*Awalt v. Marketti*, No. 11 C 6142, 2018 WL 2332072, at *1-2 (N.D. Ill. May 23, 2018). However, in assessing reasonableness, district courts are "not obligated to conduct a line-by-line review of the bills to assess the charges for reasonableness." *Rexam Beverage Can Co. v. Bolger,* 620 F.3d 718, 738 (7th Cir. 2010).

Following this Court's November 16, 2018 ruling on plaintiff's requests for equitable relief, the parties met and conferred pursuant to Northern District of Illinois Local Rule 54.3 to attempt to agree on a reasonable fee for the work plaintiff had performed up to that date, but virtually the entire amount remains in dispute. In the approximately six years plaintiff's principal

counsel, Catherine Simmons-Gill, and her associates worked on this case leading up to the 2018 ruling, they recorded thousands of hours of work, amounting to over $1,075,538.75 in fees, even after plaintiff's counsel reduced the invoice significantly by marking "no charge" for approximately two hundred of hours of certain work, including many internal meetings between plaintiff's attorneys. During the meet-and-confer process, plaintiff's counsel made further reductions, including for work solely attributable to theories on which plaintiff did not prevail such as sex stereotyping, arriving at a final claimed amount of pre-November 16, 2018 fees of $1,014,125.00. Defendant argues that the Court should reduce this figure because plaintiff's counsel's billing rates and hours worked are both excessive.

### 1. *Billing Rates*

> The hourly rate component of the lodestar "must be based on the market rate for the attorney's work." *Gautreaux v. Chicago Hous. Auth.*, 491 F.3d 649, 659 (7th Cir. 2007). "The market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Id.* (quotation marks omitted). "The attorney's actual billing rate for comparable work is presumptively appropriate to use as the market rate." *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003) (quotation marks omitted). "[O]nce an attorney provides evidence establishing [the] market rate, the opposing party has the burden of demonstrating why a lower rate should be awarded." *Gautreaux*, 491 F.3d at 659-60 (quotation marks omitted). In the absence of "evidence of the attorneys' actual market rates," the Court properly considers as "next-best evidence" the "rates awarded to similarly experienced . . . attorneys [from the same city] in other civil-rights cases in the district." *Montanez v. Simon*, 755 F.3d 547, 554 (7th Cir. 2014) (quotation marks omitted).

*Awalt*, 2018 WL 2332072, at *2.

Defendant asks the Court to reduce plaintiff's counsel's billing rates. Plaintiff seeks her attorneys' fees at her attorneys' current billing rates, but defendant argues instead that she should be held to the rates that Simmons-Gill cited in court documents filed in 2012, when she sought $300 per hour for her own time, $150 for associates and $50 for paralegals. Simmons-Gill claims to now charge higher rates in all three categories, including $425 for her own out-of-court work

and $450 for in-court work, which defendant argues is excessive and unsubstantiated, despite the affidavits plaintiff submits from other practitioners in support of their reasonableness. Defendant seeks to reduce the billing rates for Simmons-Gill and her associates and paralegals to their 2012 levels, plus a 5% increase to compensate for the delay in payment.

The Court is satisfied that Simmons-Gill has established the reasonableness of her rates. Plaintiff submits three representation agreements that Simmons-Gill's law firm, the Offices of Catherine Simmons Gill, LLC, entered into in employment cases in 2018 and 2019, each of which cites an hourly rate of $450 for Simmons-Gill and $100-$325 per hour for associates, contract attorneys and staff members. (*See* Pl.'s Mot. for Fees and Costs Ex. F, Simmons-Gill Decl., Ex. 1 ECF No. 315-7.) *See People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996) ("The attorney's actual billing rate for comparable work is "presumptively appropriate" to use as the market rate.") (citing *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993)).

Defendant argues that these representation agreements do not suffice to establish Simmons-Gill's actual billing rates because they establish what are essentially contingency fee arrangements, and therefore they do not show what fee-paying clients have actually paid for Simmons-Gill's work in similar cases. This argument relies on a slight misinterpretation of the representation agreements, which state that the clients agree to pay a contingency fee or "the amount that the Offices are able to negotiate with the Employer to pay the Offices for their time, whichever is greater." (*See, e.g.,* Pl.'s Mot. for Fees and Costs Ex. F, Simmons-Gill Decl., Ex. 1, Mar. 19, 2019 Retainer Agr., ¶ 4.b.i, ECF No. 315-7 at 17.) Further, according to the agreements, the "Client recognizes that the Offices are undertaking a substantial risk of going uncompensated or undercompensated for the time they devote to the representation and that they cannot undertake

this risk unless their fee agreement offers them the possibility of compensation greater than their normal hourly rate." (*Id.*). In the very next sentence, the agreement states that "Client understands that the current hourly rate for attorneys [*sic*] Catherine Simmons-Gill is $450.00/hour, and that Offices has available to it various law clerks, paralegals, associates and contract attorneys whose hourly rates range between $100-$325/hour." (*Id.* at ¶ 4.b.ii.) The agreement goes on to provide that the firm will seek to have their fees paid by the client's former employer (*i.e.* the defendant in the lawsuit), but if the client withdraws from or terminates the representation agreement, he is "obligated to pay legal fees (at the Offices' then-current hourly rates) and expenses incurred through that date." (*Id.* at ¶ 9, ECF No. 315-7 at 19.) Thus, while it is technically true that the representation agreements do not show that anyone actually payed Simmons-Gill's firm the rates she now claims, they do show that clients have *agreed* to pay those rates if they withdraw from the agreements and to permit the firm to use those rates to determine whether to seek compensation based on a contingency fee or in hourly fees paid by the opposing party. The Court finds these agreements to represent solid evidence of Simmons-Gill's actual billing rate in employment cases. *See Baier*, 175 F. Supp. 3d at 1020 (accepting "sample fee agreements" as evidence of billing rates).

Further, even if the Court were unconvinced by the representation agreements and were forced to resort to plaintiff's other evidence of market rates, it would agree that plaintiff has met her burden based on the affidavits from other practitioners that plaintiff has submitted. (*See* Pl.'s Mot. for Fees and Costs, Exs. G-I, ECF Nos. 315-8, 315-9, 315-10.) In particular, Brian Graber describes a similar number of years of employment litigation experience as Simmons-Gill and finds her rates reasonable, including her rates for her own time, stating that he charges similar rates himself and was awarded fees at those rates by a court in a recent case. Further, as plaintiff points

out, this Court approved a similar rate in *Masud v. Rohr-Grove Motors, Inc.*, *see* R. & R. at 10-11, 14-15, No. 13 C 6419 (N.D. Ill. Aug. 14, 2018), ECF No. 227, *approved and adopted at* ECF No. 232, for an attorney with a similar level of experience to Simmons-Gill (though he claimed somewhat more employment-related experience). Robin Potter states that she charges a higher rate for her own time ($650), but for associates and staff members such as paralegals she charges rates similar to those charged by Simmons-Gill. These affidavits are the "next-best evidence" of reasonable rates, *see Montanez*, 755 F.3d at 554 (internal quotation marks omitted), after evidence of the attorney's own billing rate, and the Court finds that they reinforce the reasonableness of the rates recited in Simmons-Gill's representation agreements.

Defendant has provided no countervailing evidence other than the evidence that Simmons-Gill charged lower rates in two cases in 2012. Since plaintiff has satisfied her burden of producing evidence that "the requested rates are in line with those prevailing in the community" at present, *Pickett*, 664 F.3d at 640 (citing *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984)), the burden shifts to defendant to "offer evidence that sets forth 'a good reason why a lower rate is essential,'" *Pickett*, 664 F.3d at 640 (quoting *Gusman*, 986 F.2d at 1151). The evidence that Simmons-Gill charged a lower rate in two employment cases eight years ago does not satisfy defendant's burden to provide a "good reason" why a lower rate is "essential" today, particularly given that the delay in resolving this case can hardly be blamed on plaintiff or her counsel.

Relatedly, defendant also argues that plaintiff should receive fees calculated not at her current billing rates but at the billing rates she charged at the time of the work she performed, plus a premium for the delay in payment. The Seventh Circuit has recognized that payment of attorney's fees in civil rights litigation "is contingent upon success and is delayed until after the litigation has ended," and fee awards may be calculated in such a way as to "compensate for the

11

delay in payment." *Lightfoot v. Walker*, 826 F.2d 516, 523 (7th Cir. 1987). To that end, "courts may base the award on current rates or use historical rates while adjusting the fee to reflect its present value" by adding interest. *Rodriguez ex rel. Fogel v. City of Chicago*, No. 08 C 4710, 2013 WL 5348307, at *2 (N.D. Ill. Sept. 24, 2013). The Seventh Circuit has approved both methods. *See id.* (citing cases). The current-rate method has the virtue of simplicity and strikes the Court as more appropriate in a long-pending, multi-year case such as this one. *See id.* at *3 ("Using the current market rates for [plaintiff's] attorneys is the simpler of the two approaches, and also fairly compensates her attorneys for the time spent litigating the case over the past six years.") (internal citation omitted). In any case, defendant has not "offer[ed] any means of calculating an appropriate interest rate that would reflect the present day value of the legal services rendered by [plaintiff's] attorneys," *id.*; defendant merely requests to add 5% to the billing *rates* Simmons-Gill charged in 2012. Defendant has not cited any authority for using this method of calculation, as opposed to calculating the fee award at historical rates and then adding interest, *cf. Duran v. Town of Cicero*, No. 01 C 6858, 2012 WL 1279903, at *16 (N.D. Ill. Apr. 16, 2012), and the Court sees no reason to attempt it here for the first time. It will therefore award plaintiff her fees at her counsel's current billing rates.

### 2. *Reasonableness of Hours Billed*

Defendant has taken plaintiff's invoice and made a brief (often one-word) item-by-item objection to the vast majority of the entries, objecting to all but $41,783.88 of the claimed amount and marking each time entry to which it objects as falling into one or more of five categories: unrelated, vague, excessive, duplicative, or clerical.

12

a. *"Unrelated" and "vague" objections and motion for sanctions*

Defendant's "unrelated" and "vague" objections are often interrelated to the extent that they both depend on its argument that plaintiff should not be able to recover fees for time plaintiff's counsel spent pursuing claims on which plaintiff did not prevail. Plaintiff prevailed at trial only on her Title VII national-origin discrimination claim, but not on her claims of discrimination under 42 U.S.C. § 1981/1983, due to her failure to prove the involvement of a policymaker or the existence of a widespread custom or usage, nor on her claim of retaliation for complaining about discrimination or her state-law claims of invasion of privacy, intrusion upon seclusion, or violation of the Illinois Eavesdropping Act. According to defendant, the Court should not award plaintiff fees for any work that was unrelated to national-origin discrimination, and to the extent that plaintiff's counsel's time records are too vague to permit the Court to discern what claim a particular task pertains to, defendant argues, the Court should disallow the fees for that work.

Plaintiff has voluntarily eliminated from her petition certain time records that pertained on their face *only* to claims on which she did not prevail, including, for example, records of legal research on gender or sex-stereotype discrimination claims. But she maintains her position as to most of the other time records defendant has marked as "unrelated" and "vague," arguing that even her unsuccessful claims had a common core of facts or a factual nexus with the claim on which she prevailed, and the Court can therefore award her fees for all of that time.

The Court agrees with plaintiff. Although a "'plaintiff who fails to prevail on a claim distinct from her other claims is not entitled to remuneration for unsuccessful work," *Merriweather v. Family Dollar Stores of Indiana, Inc.,* 103 F.3d 576, 583 (7th Cir. 1996) (citing *Kurowski v. Krajewski,* 848 F.2d 767, 776 (7th Cir. 1988)), even claims that are "not *per se* related" may have such substantial overlap or be so "closely linked" that "'time spent pursuing an unsuccessful claim

may be compensable if it also contributed to the success of other claims.'" *Flanagan v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 663 F. Supp. 2d 662, 668 (N.D. Ill. 2009) (quoting *Jaffee v. Redmond*, 142 F.3d 409, 413 (7th Cir. 1998))). This Court has previously recognized that a successful Title VII discrimination claim and unsuccessful retaliation and overlapping state-law claims may be sufficiently "closely linked" in that sense, particularly where "all of the relevant events occurred in a very short period of time," and evidence on the unsuccessful claims may have "provided context for the jury regarding [plaintiff's] entire experience" as one of the defendant's employees. *See* R. & R. at 21-22, *Masud v. Rohr-Grove Motors, Inc.*, No. 13 C 6419 (N.D. Ill. Aug. 14, 2018), ECF No. 227 (citing *Flanagan*), *approved and adopted at* ECF No. 232. Here, plaintiff's unsuccessful claims and her successful national-origin discrimination claim were all bound up together in the same essential course of events consisting of the investigation of plaintiff's timesheets and her ultimate termination. *See, e.g.*, *Vega v. Chicago Park Dist.*, 165 F. Supp. 3d 693, 702 (N.D. Ill. 2016) (reasoning that plaintiff's retaliation claim survived summary judgment based "on the suspiciously short period of time between her complaint and her termination"). As in *Masud*, this Court is "not persuaded that it is feasible or appropriate to segregate the time spent on the unsuccessful retaliation claims" or any other unsuccessful claims and "deduct that time from the lodestar." R. & R. at 22, No. 13 C 6419 (N.D. Ill. Aug. 14, 2018), ECF No. 227. Thus, the Court will not deduct the time that defendant has marked as "unrelated" merely because it appears to be attributable to a claim on which plaintiff did not prevail. It follows that the Court need not deduct time as "vague" merely because the corresponding billing narrative does not make clear which claim it pertains to; the claims have enough overlap that it is not "feasible or appropriate to segregate" plaintiff's counsel's time in that way.

14

It also follows from this reasoning that defendant's motion for sanctions under 28 U.S.C. § 1927 must be denied. Defendant argues that it is entitled to the fees it expended defending against plaintiff's unsuccessful claims, but "[v]exatious-litigation sanctions under § 1927 require a showing of either subjective or objective bad faith." *4SEMO.com Inc. v. S. Ill. Storm Shelters, Inc.*, 939 F.3d 905, 913 (7th Cir. 2019). Objective bad faith "consists of reckless indifference to the law." *Id.* Defendant has not shown that plaintiff's counsel acted with subjective bad faith or reckless indifference to the law. Plaintiff's counsel litigated a genuine grievance arising out of plaintiff's wrongful termination by asserting all the legal theories of recovery that seemed to apply, as any conscientious lawyer would do, and the fact that she only succeeded in proving one of them at trial hardly shows that she was recklessly indifferent to the law or that she engaged in vexatious behavior, particularly when she survived a motion for summary judgment on the other theories. *See Duran*, 2012 WL 1279903, at *23 (declining to shift fees to prevailing defendant under 42 U.S.C. § 1988 when plaintiff survived a motion for directed verdict). Defendant has not described any case in which a court sanctioned a prevailing plaintiff for failing to prevail at trial on all her claims, as defendant asks the Court to do here, and this Court is not inclined to break new ground. The motion for sanctions is denied.

### b. "Excessive," "Duplicative," and "Clerical"

Defendant also argues that many of plaintiff's counsel's billing entries are excessive (*i.e.*, counsel billed too much time for particular tasks), or duplicative (*i.e.*, counsel billed for the same work twice). As its principal example of excessive billing, defendant objects to the amount of time plaintiff's counsel spent responding to defendant's motion for summary judgment, calculating that plaintiff's counsel billed over 500 hours for work by several timekeepers, including hours upon hours of cite-checking by associates and clerks. Further, defendant argues that plaintiff's counsel

billed for hours of at least partially clerical work, which should have been billed at a paralegal's billing rate or, to the extent it was purely clerical, not at all.

The Court has some sympathy for plaintiff's argument in response that defendant merely reaps what it has sown here—it was in significant part defendant's litigation tactics that forced plaintiff to spend so much time on this case. To begin with defendant's own example, the motion for summary judgment, defendant's memorandum in support of the motion was approximately forty pages and its Local Rule 56.1 statement more than fifty, which necessitated similarly lengthy responses. Then, in reply, defendant filed a massive brief of approximately sixty pages, which necessitated a sur-reply. It is no wonder that plaintiff's attorneys spent more time on the motion for summary judgment than they might have in another case. Further, as plaintiff argues, and as the Court has independently perceived, defendant has taken something of a scorched-earth-litigation approach to this case, raising objections even to seemingly innocuous requests, refusing to stipulate or make meaningful efforts to resolve issues by agreement, and generally challenging everything without being willing to compromise, and those litigation tactics played a role in inflating the time plaintiff's counsel spent on this case. *See Cuff v. Trans States Holdings, Inc.*, 768 F.3d 605, 611 (7th Cir. 2014) ("[H]yperaggressive defendants who drive up the expense of litigation must pay the full costs, even if legal fees seem excessive in retrospect.")

Defendant's response to plaintiff's fee petition typifies its uncompromising approach throughout this litigation. It seems that defendant would have the Court reduce plaintiff's fees to the paltry sum of $41,783.88, which is of course a non-starter. Plaintiff's counsel successfully litigated this case since 2012 from the pre-complaint stage all the way to trial and through the post-trial equitable stage to final judgment, obtaining an outstanding result for plaintiff that was upheld on appeal; counsel is entitled to a reasonable fee, and whatever that amount is, anyone with a

passing familiarity with the economics of civil rights litigation recognizes that it is much more than $41,783.88.

Still, the Court suspects that there may be some truth in defendant's arguments. Even plaintiff's self-reduced lodestar sum of $1,014,125.00 for the pre-November 16, 2018 work is a massive amount for a single-plaintiff employment discrimination case. Although the Court is hardly in a position to examine plaintiff's approximately two-hundred-page invoice line by line and identify which entries it should allow or disallow based only on plaintiff's narratives and defendant's one-word objections, *see Wells v. City of Chicago*, 925 F. Supp. 2d 1036, 1049 (N.D. Ill. 2013) ("As a general rule, a court does not go through a prevailing party's time and expenses line-by-line to see whether each hour of time and each dollar of expense represented a successful effort in and of itself."), and the Court is "not obliged to scour the invoices to decipher [defendant's] objections," *see Bd. of Trustees of the Health & Welfare Dep't of the Constr. & Gen. Laborers' Dist. Council of Chicago & Vicinity v. Allison Enterprises, Inc.,* No. 12 C 4097, 2016 WL 4397972, at *6 (N.D. Ill. Aug. 18, 2016), it has nevertheless endeavored to do so. Following its review of plaintiff's invoice, the total amount strikes the Court as excessive because many of the time records do seem hopelessly vague (often due to redactions),[2] excessive, potentially duplicative, or at least partially clerical.

---

[2] Plaintiff's invoice, originally submitted prior to final judgment and in the expectation that defendant would appeal (as it did), is redacted in places to avoid disclosing information that is protected by privilege or that would have revealed plaintiff's litigation strategy. Plaintiff attempted to submit an unredacted invoice for the Court's *in camera* review, but defendant objected, and in the face of the objection, plaintiff withdrew the unredacted invoice. The Court has not reviewed the unredacted invoice or given it any consideration.

The Court has identified a relatively few entries that are so plainly deficient on their face that the Court agrees with defendant's objections without reservation.[3] But for many others, based only on the minimal level of detail in plaintiff's counsel's billing narratives, the court cannot say for sure whether they are deficient, and it cannot determine with any precision which entries to disallow and which to allow. On some occasions, for example, it appears that one of plaintiff's attorneys billed for a task that was partially clerical but that also partially involved the exercise of some legal judgment, but the Court has no means of ascertaining how much time was clerical and how much legal, so it cannot determine how to partition the award for that task in order to compensate plaintiff's counsel for the legal work without improperly compensating her also for the clerical work. To put it differently, plaintiff's counsel sometimes block-billed for work that was partially compensable and partially noncompensable. The Court recognizes that plaintiff's counsel performed much of this work through associates and law clerks billed at lower rates, which goes some way toward offsetting any harm inflicted by duplicative or wasteful efforts, but the Court is not convinced that it goes far enough, given the enormous number of hours plaintiff's counsel billed for certain tasks, including those related to the motion for summary judgment, the Hester deposition, and abstracting depositions and other transcripts.

Defendant argues that plaintiff bears the burden of establishing the reasonableness of her counsel's hours worked, so the Court should resolve any doubt over a particular time record by simply disallowing recovery for it, but the suggestion is facile. For the most part, plaintiff's

---

[3] The Court has reproduced these time records, representing work for which plaintiff's counsel billed $19,566.25, in Appendix 1 following this Opinion. Some entries have been altered: where defendant objected to an entry for a deposition on the basis that the deposition took less time than plaintiff had billed for it, the Court reduced the hours to the length of the deposition, and Appendix 1 reflects only the amount reduced.

counsel's billing narratives contain a level of detail that paying clients would be likely to find acceptable, and it does not follow from the mere fact that plaintiff bears an initial burden that anything short of surgical precision in her counsel's billing narratives requires the Court to reject entirely the claimed fee for the tasks they describe. In a case defendant cites, another court in this district has recently explained as much:

> Both parties have a duty to explain their position as to each time record. Objectors to fee petitions should not shift "to the court . . . the objector's responsibility . . . to meaningfully explain why each item claimed to be unreasonable or otherwise noncompensable should be disallowed." *Constr. & Gen. Laborers' Dist. Council of Chicago*, 2016 WL 4397972, at *5. Thus, "one-word notations on . . . attorney invoices" such as "vague," "block," "redundant," "excessive," or "unnecessary," are inappropriate. *Id*. at *6.

*Nichols*, 2019 WL 157915, at *6 (internal citation altered). Defendant's objections are little more than "one-word notations," to the extent that defendant has not connected its general arguments in its brief to particular time records, and the Court might be within its rights to overrule its objections on this basis alone.

Fortunately, *Nichols* recognizes another solution: "'when a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage.'" *Id.* (quoting *Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000)). In *Nichols*, the court explained that because of the "voluminous time records" the plaintiff had submitted, the Court would proceed primarily by reducing the lodestar hours "by a reasonable percentage as a result of the excessive billing . . . rather than addressing each problematic entry," but "to the extent the Court [could] identify specific hours to reduce," it did so. 2019 WL 157915, at *6. The court reduced the invoices by eliminating specific problematic entries where feasible, but then it reduced the remainder by 10% to account for clerical

work billed as attorney time, without identifying each offensive entry, and then it similarly reduced what was left by another 20% to account for "significant excessive, unnecessary, and vague billing." *Id.* at *8, 11.

The Court finds that a similar approach is appropriate here, although the circumstances warrant a smaller reduction. First, the Court deducts from plaintiff's lodestar the amounts represented in the specific problematic entries identified in Appendix 1 below; the Court agrees with defendant that these fees are patently and inappropriately vague, excessive, or duplicative or they inappropriately seek recovery of fees for clerical work.

That still leaves what the Court considers to be a slightly bloated invoice for a case that, aside from defendant's uncompromising litigation tactics, was not inordinately complex. Even accounting for defendant's tactics, and even recognizing that more than half of the work plaintiff's counsel billed in this case was performed by associates and law clerks at relatively low billing rates, the Court is still troubled by many of plaintiff's counsel's time records. Although in most cases the Court (like defendant) cannot put its finger on which time records to disallow rather than others, many of them describe work that, if not entirely excessive, vague, duplicative, or clerical, falls at least partly into those categories.

In her motion for fees, plaintiff's counsel has billed separately for in-court time and out-of-court time, billing for in-court time at a slightly higher rate for each timekeeper. The Court sees no need to reduce plaintiff's in-court time, which does not suffer from the potential defects identified above; however, weighing all of the factors and interests the Court has described, the Court concludes that a modest reduction of 5% of all the fees sought for plaintiff's counsel and her associates and staff members' out-of-court work is appropriate. *See Nichols*, 2019 WL 157915, at *11 (citing cases in which courts have imposed across-the-board reductions of between 5% and

20

50% for "excessive billing"); *Fields v. City of Chicago*, No. 10 C 1168, 2018 WL 253716, at *9 (N.D. Ill. 2018) ("But the combination of these factors—the number of attorneys from the . . . firm involved in the case as a whole . . . , the number of entries . . . , and the fact that block-billed time entries largely do not enable the Court to determine the amount of time spent on these tasks—lead the Court to conclude that a modest percentage reduction in the overall time claimed is appropriate, to account for the likelihood of undue duplication of effort. The Court will reduce the overall attorney time claimed . . . by 5 percent after other reductions are applied."). This reduction of the fees sought for out-of-court work by Catherine Simmons-Gill, Bernadette Coppola,[4] Matthew Douglas, Kyle Aurand, Pawel Fraczek, Ross Drath, Ryan Estes, Geneva Gorgo, and Maria Rosario, as represented in the table in paragraph 18 of plaintiff's motion for fees (ECF No. 313 at 5-6) amounts to $46,721.25.

Thus, from plaintiff's total claimed amount of fees of $1,014,125 for work performed prior to the Court's decision on equitable relief on November 16, 2018, the Court deducts $19,566.25 for the specific problematic entries in Appendix 1 and $46,721.25 as a 5% across-the-board reduction in fees charged for out-of-court work by plaintiff's timekeepers. The remaining figure is $947,836.50.

Plaintiff also seeks $59,776.25 in fees for counsel's time spent seeking fees following the November 16, 2018 opinion. With regard to this time, the Court finds that no across-the-board reduction is warranted. The amounts claimed and the hours worked are reasonable in relation to

---

[4] Ms. Coppola became licensed as an attorney only in 2013, and plaintiff's counsel billed for work she performed prior to that point at a paralegal rate of $150 per hour, rather than the attorney out-of-court rate of $225 per hour. The Court reduces only the fees for her work billed at the attorney rate of $225 per hour. Plaintiff's counsel has already substantially reduced Ms. Coppola's hours voluntarily, and cutting them more would punish plaintiff doubly.

the work performed, given defendant's apparent unwillingness to engage in serious attempts at compromise. The Court makes a few minor deductions for work that is apparently clerical or unsubstantiated, amounting only to $1020, reflected in Appendix 2. That leaves the remaining figure of $58,756.25, which the Court adds to the $947,836.50 figure to create a final lodestar amount of $1,006,592.75.

Neither party argues for adjusting this lodestar figure up or down based on the result of the case, but for completeness the Court addresses the issue anyway. "In setting a reasonable fee, the district court must determine whether 'the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.'" *Montanez*, 755 F.3d at 556 (quoting *Hensley,* 461 U.S. at 434). "A plaintiff who achieves 'excellent results' should receive the entire lodestar," *Montanez*, 755 F.3d at 556 (quoting *Hensley*, 461 U.S. at 435), or "indeed in some cases of exceptional success an enhanced award may be justified," *Hensley*, 461 U.S. at 435. But where "'a plaintiff has achieved only partial or limited success,' the lodestar 'may be an excessive amount.'" *Montanez*, 755 F.3d at 556 (quoting *Hensley*, 461 U.S. at 436). In this case, no adjustment in either direction is necessary. Even the reduced lodestar amount is an extraordinary recovery for this relatively simple single-plaintiff discriminatory discharge case, but if there were any doubt as to its reasonableness in relation to the work performed, it is removed by the extraordinary recovery plaintiff's counsel achieved for plaintiff. Although the evidence of intentional discrimination was hardly overwhelming at first glance, plaintiff will receive approximately $500,000 in damages, back pay, and the above-described tax-component award, and she has been ordered to be reinstated by her employer, with all the benefits (financial and otherwise) that that entails. Such extraordinary success deserves an extraordinary reward.

Thus, the Court awards plaintiff her attorneys' fees for work performed through the submission of the present motion for fees, in the amount of $1,006,592.75.

### B. Costs

Plaintiff has also filed a bill of costs and expenses of $30,745.27. (ECF No. 323.) Defendant objects to certain costs related to deposition transcripts and copying.

Rule 54(d)(1) provides that "costs—other than attorney's fees—should be allowed to the prevailing party." 28 U.S.C. § 1920 enumerates the sorts of costs that are recoverable under this rule, which include "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case; . . . [f]ees and disbursements for printing and witnesses; [and] [f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case."

"Taxing costs against the non-prevailing party requires two inquiries—whether the cost is recoverable and whether the amount assessed is reasonable." *Artunduaga v. Univ. of Chicago Med. Ctr.*, No. 12 C 8733, 2017 WL 1355873, at *1 (N.D. Ill. Apr. 13, 2017). "Any party seeking an award of costs carries the burden of showing that the requested costs were necessarily incurred and reasonable." *Trs. of Chi. Plastering Inst. Pension Tr. v. Cork Plastering Co.*, 570 F.3d 890, 906 (7th Cir. 2009). Provided the prevailing party succeeds in carrying its burden, Rule 54(d)(1) "creates a presumption in favor of awarding costs to the prevailing party," *Myrick v. WellPoint, Inc.*, 764 F.3d 662, 666 (7th Cir. 2014), although the district court retains "discretion to decide whether an award of costs is appropriate." *Chesemore v. Fenkell*, 829 F.3d 803, 816 (7th Cir. 2016).

23

### 1. *Deposition Transcripts*

First, defendant argues that the depositions of Maria Casteneda and Jacqueline Payne were "unnecessary to trial or otherwise" and should be disallowed. This argument is perfunctory and unsupported by authority, which is reason enough to reject it. Additionally, the Court notes that, in considering whether a deposition was reasonably necessary, the Court must focus on whether it seemed reasonably necessary "'at the time it was taken, not whether it was [later] used in a motion or in court.'" *Youngman v. Kouri*, No. 16-CV-1005, 2018 WL 3769845, at *2 (C.D. Ill. Aug. 9, 2018) (quoting *Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 455 (7th Cir. 1998)). The Court does not ask whether the evidence gleaned from the depositions was ultimately essential to the Court's reasoning or its judgment in this case; it asks whether the depositions were reasonably necessary at the time they were taken based on what the parties knew at the time. Defendant provides no basis for finding that the Casteneda and Payne depositions were not properly considered reasonably necessary at the time they were taken.

Next, defendant argues that plaintiff seeks recovery of court reporter attendance fees in excess of the maximum permitted under the Court's local rules. Under Local Rule 54.1, "court reporter appearance fees may be awarded in addition to the per page limit, but the fees shall not exceed the published rates on the Court website," which are "$110 for one half day (4 hours or less), and $220 for a full day attendance fee."[5] It is true that the court reporters plaintiff engaged charged appearance fees well in excess of this rate, but a spreadsheet plaintiff has provided to track her calculations shows that she reduced the amount she seeks by the amount of the excessive appearance fees, as reflected by the invoices plaintiff has submitted as backup, and then added an

---

[5] https://www.ilnd.uscourts.gov/Pages.aspx?rsp2kxYIAI6Z3skP0PESA+q3bXKkfRyo

allowable appearance fee amount of $110 or $220 as appropriate. (*See* Pl.'s Reply Mem. in Supp. of Mot. for Fees and Costs, Ex. C, ECF No. 322-4 at 3-4 and accompanying invoices.) The Court finds that plaintiff calculated the costs of the deposition transcripts correctly and seeks an amount that is permissible under Local Rule 54.1, so it allows these costs.

Finally, defendant argues that plaintiff improperly seeks $446.70 charged by the court reporters for scanning deposition exhibits. It is true, as defendant argues, that some courts have refused to permit recovery of the costs of scanning deposition exhibits if the exhibits had been otherwise produced in the case, reasoning that in such cases the scanning was not reasonably necessary, but merely for attorney convenience, because the documents were nothing more than extra copies of documents already in both parties' possession. *See, e.g., Williams v. Schwarz*, No. 15 C 1691, 2018 WL 4705558, at *2 (N.D. Ill. Oct. 1, 2018) (citing cases). The Court finds that reasoning unpersuasive, at least in the circumstances of this case, where the expense is practically *de minimis* in the larger context of the case. Another court in this district has allowed costs for scanning exhibits without any special showing of case-specific necessity, reasoning as follows:

> "[I]t is not unreasonable to request copies of the exhibits used during a deposition, for even if the exhibits have been produced in discovery . . . exhibits are often authenticated during a deposition, and it may be necessary for attorneys to use the marked exhibit in order to benefit from that authentication." *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 856 (N.D. Ill. 2015). The same rationale applies more generally to any effective use of a deposition exhibit at trial or on summary judgment, not just authentication: because documents are usually referred to in depositions by their assigned exhibit numbers, litigants need to use the exhibit-stamped version of a document in order to benefit from a witness's deposition testimony about the document. In addition, "it could be that the deponent, attorney, or both marked on the exhibit during the deposition, making the deposition copy unique." *Id.*

*Hillmann v. City of Chicago*, No. 04 C 6671, 2017 WL 3521098, at *3 (N.D. Ill. Aug. 16, 2017). The amount plaintiff seeks for the cost of scanned deposition exhibits is reasonable, and the Court allows it.

## 2. *Copying and Video*

Plaintiff seeks $10,524.27 for copying and exemplification costs. Defendant argues that plaintiff has not sufficiently substantiated these costs or established their necessity, but again the Court has little trouble understanding the spreadsheet and invoices that plaintiff has submitted, which describe what the copying and exemplification costs were for. (*See* Pl.'s Reply Mem. in Supp. of Mot. for Fees and Costs, Ex. D, ECF No. 322-5 at 3-4 and accompanying invoices.) To the extent the argument is that the costs are unreasonable or unnecessary, it is perfunctory and not supported by the citation to authority, and therefore waived. Additionally, the Court notes that approximately $10,000 in copying and exemplification costs for a case of this duration in which voluminous documents were exchanged is hardly unreasonable. Even if one or two entries are questionable, the questionable amounts are *de minimis*.

Plaintiff also states in her reply memorandum that she seeks approximately $3,196.25 in additional deposition expenses, over and above those included in the bill of costs, which she admits are non-taxable. She does not describe these expenses in any detail and cites no authority permitting the Court to award expenses that are admittedly non-taxable. The Court declines this perfunctory request. However, it finds the expenses described in plaintiff's bill of costs, both those it has discussed above and those to which defendant has not objected, to be reasonably and necessarily incurred, and it taxes costs against defendant and in favor of plaintiff in the amount sought.

## CONCLUSION

The Court awards plaintiff a tax-component award of $49,224.30. Plaintiff's motion for attorney fees [313] is granted in part: the Court awards plaintiff $1,006,592.75 in attorneys' fees. Plaintiff's bill of costs [323] is granted, and the Court taxes costs against defendant and in favor of plaintiff in the amount of $30,745.27. Defendant's motion for sanctions [318] is denied. Defendant's motion to strike plaintiff's *ex parte* submission of an unredacted invoice [324] is denied as moot. Schedule [371] remains set for submission of plaintiff's supplemental fee petition and associated briefing. The parties are directed to exhaust settlement prospects.

**SO ORDERED.**                                    **ENTERED:   July 20, 2020**

_____
**HON. JORGE ALONSO**
**United States District Judge**

27

**Appendix 1**

| | | | | | |
|---|---|---|---|---|---|
| 1/22/2013 | BC | draft summons for complaint | 0.50 | 75.00 | Excessive; clerical |
| 1/23/2013 | MR | request issuance of summons and receive back; place with process server | 0.20 | 15.00 | Clerical |
| 2/19/2013 | CSG | receive and review Defendant's Motion to Dismiss Complaint (Dkt #7] | 0.50 | 212.50 | Duplicative; portions unrelated |
| 3/13/2013 | CSG | research briefly applicability REDACTED | 0.20 | 85.00 | Vague |
| 3/18/2013 | CSG | redraft amended complaint | 5.50 | 2,337.50 | Vague; unrelated; excessive; duplicative of 3/6, 3/7 and 3/10 |
| 4/25/2013 | CSG | research cases of REDACTED | 0.50 | 212.50 | Vague |
| 4/25/2013 | CSG | continue to research REDACTED | 0.50 | 212.50 | Vague |
| 6/11/2013 | CSG | receive and review e-mail from Mr. Brown regarding court date and his agreement not to object to appearance by supervised student, Ms. Coppola, in court in Catherine Simmons-Gill absence | 0.20 | 85.00 | Excessive |
| 6/24/2013 | BC | e-mail to Judge Zagel's clerk regarding permission for Ms. Coppola to appear as | 0.25 | 37.50 | |
| 3/14/2014 | RD | draft litigation hold letter based on templates provided and information supplied by Catherine Simmons-Gill | 0.50 | 100.00 | Vague |
| 3/14/2014 | CSG | review litigation hold letter prepared by associate, revise and send to Chicago Park District | 0.40 | 170.00 | Excessive; vague; |
| 4/28/2014 | MR | prepare final hard copy documents for delivery of courtesy copy to Judge Zagel: Motion to Compel | 4.00 | 300.00 | Excessive; vague; clerical |
| 12/22/2014 | CSG | receive and review order from Judge regarding new time for status on 1/27/15 | 0.10 | 42.50 | Excessive |
| 1/12/2015 | CSG | receive and review documents sent to copy service and plan organization of same in war room | 0.50 | 212.50 | Vague; clerical |
| 2/5/2015 | CSG | prepare amended notices for several depositions; serve on Chicago Park District; cancel and reschedule court reporter | 0.50 | 212.50 | Vague; clerical |

| 2/19/2015 | CSG | prepare for and take deposition of Ms. Gilkey | 2.30 | 977.50 | Excessive; vague; deposition was 6.2 hours long |
|---|---|---|---|---|---|
| 2/26/2015 | MD | review and assemble exhibits for deposition | 0.50 | 125.00 | Clerical |
| 2/26/2015 | CSG | prepare for and take deposition of Officer Hester | 1.00 | 425.00 | Vague; excessive; deposition was less than 8 hours. |
| 3/2/2015 | MD | assemble exhibits for Catlin deposition | 0.50 | 125.00 | Vague; clerical |
| 3/11/2015 | CSG | prepare for and take the deposition of Ms. Saieva | 2.50 | 1,062.50 | Excessive; duplicative; vague; deposition was less than 8.5 hours. |
| 3/16/2015 | MD | research salary figures for various Chicago Park District employees from web sites: Open the Books and Chicago Park District | 0.80 | 200.00 | Unrelated; unnecessary |
| 5/14/2015 | MD | review and prepare a list of various production requests made of Chicago Park District during prior depositions | 0.70 | 175.00 | Clerical |
| 5/14/2015 | MD | review and prepare a list of various production requests made of Chicago Park District during prior depositions | 0.70 | 175.00 | Clerical |
| 5/18/2015 | MD | prepare list of top four tiers of Chicago Park District employees by race | 0.60 | 150.00 | Clerical |
| 6/11/2015 | MD | prepare and print large volume and size charts for use at Rule 30(b)(6) deposition | 0.50 | 125.00 | Clerical |
| 6/16/2015 | MD | conference with Catherine Simmons-Gill regarding pulling various documents for deposition; review multiple files | 0.60 | 150.00 | Vague; clerical |
| 6/16/2015 | MD | e-mail Mr. Brown regarding bringing exhibits made in prior Rule 30(b)(6) depositions | 0.20 | 50.00 | Vague; clerical |
| 7/15/2015 | CSG | review all recent correspondence with Mr. Brown for documents still missing from deposition requests | 0.20 | 85.00 | Clerical; duplicative of MD 7/14 |
| 7/17/2015 | CSG | revise Ms. Anderson's declaration; snail mail and email | 0.75 | 318.75 | Vague; clerical |
| 7/28/2015 | MD | continue legal research: REDACTED; review REDACTED | 2.50 | 625.00 | Vague |
| 7/29/2015 | MD | continue legal research: REDACTED | 0.80 | 200.00 | Vague |

| | | | | | |
|---|---|---|---|---|---|
| 9/16/2015 | MD | review REDACTED brief | 0.80 | 200.00 | Vague |
| 9/16/2015 | MD | listen on line to oral argument in REDACTED before Seventh Circuit | 0.70 | 175.00 | Vague; unrelated |
| 10/24/2015 | CSG | work with team on all documents to be filed; marking all deposition excerpts and citing | 11.0 0 | 4,675.00 | Excessive; duplicative; vague clerical |
| 10/25/2015 | PF | cross checking of summary list to collected exhibits and assigning exhibit numbers | 9.50 | 1,425.00 | Excessive; duplicative; vague; clerical |
| 10/29/2015 | MD | compile all cases and authorities in brief for table of authorities | 0.40 | 100.00 | Excessive; duplicative; vague; clerical |
| 11/2/2015 | MR | prepare disk of exhibits for plaintiff Response to Motion for Summary Judgment and deliver to Clerk of the Court in lieu of electronic filing; prepare copy and cover letter for same for delivery to defendant | 3.25 | 243.75 | Excessive; vague; clerical |
| 11/2/2015 | CSG | final filing and service of exhibits to response to Motion for Summary Judgment, response to Statement of Facts and Rule 56.1 Statement of Additional Facts; cover letter for courtesy copies | 2.00 | 850.00 | Excessive; duplicative; vague; clerical |
| 5/23/2016 | MD | complete write up of REDACTED; review and write up  REDACTED; REDACTED  skim  other cases | 0.40 | 100.00 | Vague |
| 1/31/2017 | CSG | draft trial subpoena | 0.75 | 318.75 | Vague; excessive; clerical |
| 2/2/2017 | CSG | prepare individualized cover letters with varying dates and subpoenas for Hester, Catlin, Childs, Keil, Lee, Harper, Gilkey, Millan, Skerrett, Simpkins, Reierson, Drumm, Saieva | 3.00 | 1,275.00 | Excessive; clerical |
| 2/21/2017 | CSG | after no response or contact from either Officer Hester or Catlin, prepare third trial subpoena for each and place with Stern Process servers for personal service, with specific directions for both | 1.00 | 425.00 | Excessive; clerical |
| 2/28/2017 | CSG | telephone conferences with Chicago Police Department subpoena acceptance area regarding non-receipt of all three subpoenas sent previously for Officer Hester; fax additional copy | 0.50 | 212.50 | Clerical |
| 4/25/2017 | MR | deliver and pick up Response sent to Fedex for binding; deliver to Court | 1.00 | 75.00 | Clerical |

| 9/14/2017 | CSG | prepare exhibits for response to Motion in Limine | 0.50 | 212.50 | Clerical |
|---|---|---|---|---|---|
| 9/22/2017 | CSG | begin to pull items needed as exhibits at damages trial | 0.50 | 212.50 | Clerical |
| 12/11/2017 | CSG | review all PX for selection of exhibits most likely to be used at second phase of trial; prepare draft list of selected exhibits by category: admitted, not objected to but not admitted; objected to | 2.00 | 850.00 | Excessive; duplicative entry |
| 12/18/2017 | BC | prepare exhibit binders for trial | 1.00 | 225.00 | Clerical |
| 12/19/2017 | MR | complete exhibit binders for trial | 1.00 | 75.00 | Duplicative |
| 1/9/2018 | BC | after review Chicago Park District Pre- trial Order Schedule L-2 regarding Simpkins likely areas of testimony, begin review Simpkins March 2017 and deposition testimony for impeachment of L-2 statements of fact | 2.50 | 562.50 | Vague; duplicative; excessive |
| 1/14/2018 | BC | organize exhibits for testimony of each witness | 0.30 | 67.50 | Clerical |
| 1/22/2018 | MR | order trial transcript through N.D. IL new system; filling out from; deliver check to Ms. LaBella | 0.75 | 56.25 | Excessive; clerical |
| 2/28/2018 | BC | continue to translate all damages calculation charts from Excel format to Word charts with all evidentiary citations: front pay, back pay, pension, etc. | 6.00 | 1,350.00 | Clerical; excessive |
| 3/1/2018 | BC | prepare damages calculations charts in Excel format with evidentiary citations; update charts for inclusion as Word charts within brief | 6.00 | 1,350.00 | Clerical; duplicative; excessive |

**Appendix 2**

| 11/19/2018 | CSG | e-mail Annette McGarry regarding proposal on notice for reinstatement and Fee Petition schedule | 0.20 | 85.00 | Referenced email does not exist |
|---|---|---|---|---|---|
| 1/1/2019 | CSG | send Robin Potter reminder | 0.10 | 42.50 | Duplicative of 12/24/2018, clerical, vague |
| 2/2/2019 | CSG | receive and review additional e-mail from Marianne Holzhall with additional back up for defendant's objections: McGarry and McGarry invoices, two Catherine Simmons-Gill motions for sanctions with fees from 2012 | 0.50 | 212.50 | Referenced e-mail does not exist |
| 2/5/2019 | CSG | exchange e-mails with Annette McGarry regarding meet and confer regarding submitting a joint proposal on scheduling | 0.30 | 127.50 | Referenced e-mails do not exist; A. McGarry received no emails from CSG on given date. |
| 2/24/2019 | CSG | receive and respond to e-mail from Annette McGarry regarding need for draft order on petition scheduling; refer same to J. Bryan Wood | 0.20 | 0 | No emails received by A. McGarry from CSC on given date. |
| 3/19/2019 | CSG | receive and review transcript of May 17, 2016 Status call before Judge Zagel | 0.30 | 127.50 | Unrelated |
| 3/19/2019 | CSG | review various documents and select possible | 1.00 | 425.00 | Vague |